# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

JOHN DOE, JANE DOE, and JACK DOE,

      Plaintiffs,

    v.

UNLOCK HEALTH, INC., MEDICOM
DIGITAL, INC. d/b/a MEDICOM HEALTH       Case No. 3:26-cv-00289
INTERACTIVE and MEDICOM HEALTH,

      Defendants.

---

## DEFENDANTS' MOTION AND MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS THE PUTATIVE CLASS ACTION COMPLAINT, OR IN THE ALTERNATIVE, MOTION TO STRIKE THE PUTATIVE CLASS ALLEGATIONS

Unlock Health Inc. ("Unlock Health") and Medicom Health Digital, Inc. d/b/a Medicom Health Interactive and Medicom Health ("Medicom Health", together with Unlock Health, the "Defendants"), by their counsel, respectfully move for an ordering dismissing the complaint in its entirety, pursuant to Fed. R. Civ. P. 12(b)(1) and (6), because John Doe, Jane Doe, and Jack Doe (collectively, "Plaintiffs") lack Article III standing to sue and fail to state a claim upon which relief can be granted. Alternatively, Medicom Health moves for an order dismissing the complaint in its entirety, pursuant to Fed. R. Civ. P. 12(b)(2), because Plaintiffs fail to allege that it has minimum contacts in Tennessee. Alternatively, Defendants respectfully move for an order striking the putative class allegations, pursuant to Fed. R. Civ. P. 12(f), because the putative class definition is overly broad, includes uninjured putative class members that lack Article III standing, and fails to satisfy Fed. R. Civ. P. 23. The grounds for this motion are more fully set forth in the brief filed with this motion.

i

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION & SUMMARY OF ARGUMENTS........................................................1

II.   LEGAL STANDARD................................................................................................1

III.  STATEMENT OF FACTS........................................................................................2

IV.   THE LAWSUIT MUST BE DISMISSED PURSUANT TO RULE 12(B)(1) FOR LACK OF SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFFS LACK ARTICLE III STANDING TO SUE. ...................................................................5

V.    ALTERNATIVELY, THE COMPLAINT MUST BE DISMISSED AS TO MEDICOM HEALTH PURSUANT TO RULE 12(B)(2) FOR LACK OF PERSONAL JURISDICTION BECAUSE NO MINIMUM CONTACTS EXIST IN TENNESSEE..................................................................................................7

VI.   ALTERNATIVELY, THE COMPLAINT MUST BE DISMISSED PURSUANT TO RULE 12(B)(6) BECAUSE PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED. ...................................................9

    A.   The ECPA claim is legally deficient because (i) Plaintiffs fail to allege that Defendants acquired electronic communications; and (ii) Defendants did not deploy the Google source code within the HRAs..............................................9

    B.   The CIPA claim based on Cal. Penal Code § 631 is legally deficient because (i) Plaintiffs fail to allege that Defendants acquired electronic communications; and (ii) Defendants did not deploy the Google source code within the HRAs. ...........................................................................11

    C.   The CMIA claims are legally deficient because (i) Defendants are not regulated by the CMIA; (ii) Plaintiffs do not allege that their medical information was viewed by an unauthorized third party; and (iii) Defendants did not deploy the Google source code within the HRAs. .................11

        *1.*   *Defendants are not regulated by the CMIA.* ...............................................12

        *2.*   *Plaintiffs do not allege that their medical information was viewed by an unauthorized third party.* ...............................................14

    D.   The invasion of privacy claim is legally deficient because (i) the California Constitution does not confer on a litigant a private right of action for damages; (ii) Plaintiffs fail to allege actual and imminent future injury for injunctive relief; and (iii) Defendants did not deploy the Google source code within the HRAs. ...............................................15

    E.   The Cal. Civil Code § 1709 claim is legally deficient because (i) Defendants did not conceal or suppress a material fact; (ii) Defendants did not deploy the Google source code within the HRAs; and (iii) Plaintiffs fail to allege damages caused by Defendants' conduct .........................................16

    F.   The CIPA claim based on Cal. Penal Code § 638.51 is legally deficient because (i) the statute does not address the privacy rights of internet users;

(ii) Defendants did not deploy the Google source code within the HRAs; and (iii) Plaintiffs allege in their Cal. Penal Code § 632 claim that the Google source code transmitted the contents of their electronic communications. .................................................................................................18

G. The unjust enrichment claim is legally deficient because (i) Plaintiffs did not confer a benefit upon Defendants; and (ii) Defendants did not deploy the Google source code within the HRAs. ...........................................................19

H. The FWA claim is legally deficient because (i) there is no private right of action for a violation of 18 U.S.C. § 2512; and (ii) Defendants did not deploy the Google source code within the HRAs. ................................................20

I. The negligence claim is legally deficient because Plaintiffs fail to allege breach of duty or resulting damages proximately caused by Defendants' conduct. ..................................................................................................21

J. The UCL claim is legally deficient because (i) Defendants did not deploy the Google source code within the HRAs; (ii) Plaintiffs fail to allege that they lack an adequate remedy at law; and (iii) Plaintiffs fail to allege an economic injury. ......................................................................................22

VII. ALTERNATIVELY, THE PUTATIVE CLASS ALLEGATIONS MUST BE STRICKEN PURSUANT TO RULE 12(F) BECAUSE THE CLASS DEFINITION IS OVERLY BROAD AND FAILS TO COMPLY WITH RULE 23...............................................................................................................23

VIII. CONCLUSION.........................................................................................25

# TABLE OF AUTHORITIES

**Page**

**Case**

*Allen v. Quicken Loans Inc.*,
No. CV1712352ESMAH, 2018 WL 5874088 (D.N.J. Nov. 9, 2018) ...................................20

*AMB Media, LLC v. OneMB, LLC*,
No. 23-5607, 2024 WL 2052151 (6th Cir. May 8, 2024) .....................................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)......................................................................................................1,13

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) .........................................................................................19

*Barbour v. John Muir Health*,
No. C22-01693, 2023 WL 2618967 (Cal.Super. Jan. 05, 2023) ...........................................16

*Baskerville v. Sketchers, USA, Inc.*,
No. 2:24-CV-10464-MEMF-JPR, 2026 WL 1670859 (C.D. Cal. June 4, 2026) .................22

*Baton v. Ledger SAS*,
740 F. Supp. 3d 847 (N.D. Cal. 2024) ........................................................................21,22

*Beluca Ventures LLC v. Aktiebolag*,
622 F. Supp. 3d 806 (N.D. Cal. 2022) ..............................................................................2

*Carrico v. Uponor, Inc.*,
No. 3:23-CV-00497, 2025 WL 967542 (M.D. Tenn. Mar. 31, 2025) .................................24

*Casillas v. Transitions Optical, Inc.*,
2024 WL 4873370 (Cal. Super. Sept. 9, 2024)...................................................................18

*Cherkin v. PowerSchool Holdings, Inc.*,
No. 24-CV-02706-JD, 2025 WL 844378 (N.D. Cal. Mar. 17, 2025)...................................17

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)........................................................................................................5

*Clark v. Stone,*
998 F.3d 287 (6th Cir. 2021) ............................................................................................6

*Cole v. Solairus Aviation LLC,*
No. 25-CV-03035-RFL, 2025 WL 2249740 (N.D. Cal. Aug. 6, 2025)...............................19

Case 3:26-cv-00289   Document 23   Filed 06/22/26   Page 4 of 35 PageID #: 226

*Cottle v. Plaid Inc.,*
536 F. Supp. 3d 461 (N.D. Cal. 2021) ...................................................................................17

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023)..............................................................................14,16

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)...................................................................................................................8

*D'Angelo v. Penny OpCo, LLC*,
No. 23-CV-0981-BAS-DDL, 2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) ......................16,17

*DeBellis v. Woodit*,
728 F. Supp. 3d 330 (D. Md. 2024)..........................................................................................9

*Dellasala v. Samba TV, Inc.,*
No. 3:25-CV-03470-JSC, 2026 WL 1138358 (N.D. Cal. Apr. 21, 2026) .............................23

*DirecTV, Inc. v. Robson*,
420 F.3d 532 (5th Cir. 2005) ..................................................................................................20

*DirecTV, Inc. v. Treworgy*,
373 F.3d 1124 (11th Cir. 2004) ...............................................................................................20

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ....................................................................................16

*Graham v. Noom, Inc.,*
533 F. Supp. 3d 823 (N.D. Cal. 2021) ....................................................................................17

*Guzman v. Polaris Indus. Inc.*,
49 F.4th 1308 (9th Cir. 2022) .................................................................................................19

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ..................................................................................17

*Harrill v. Emanuel Med. Ctr.,*
No. 2:23-CV-01672-DC-CKD, 2025 WL 1635428 (E.D. Cal. June 9, 2025)......................11

*Herzman v. Smile Brands Inc.,*
No. 25-CV-03400-H-BLM, 2026 WL 1110698 (S.D. Cal. Apr. 23, 2026) ..........................6,7

*Hughes v. Apple, Inc.*,
723 F. Supp. 3d 693 (N.D. Cal. 2024) ....................................................................................21

*In re Accellion, Inc. Data Breach Litig.*,
713 F. Supp. 3d 623 (N.D. Cal. 2024) ...................................................................*passim*

*In re Apple Data Priv. Litig.*,
No. 5:22-CV-07069-EJD, 2026 WL 146025 (N.D. Cal. Jan. 20, 2026)................................19

*In re Cupertino Electric Inc. Litigation*,
Case 5:23-cv-04007-BLF, ECF No. 69 (N.D. Cal. Aug. 14, 2024) ......................................24

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ..................................................................................17

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ....................................................................................15

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945)................................................................................................................7

*James v. Wilkinson,*
No. CIV.A. 89-0139-P(CS), 1991 WL 626750 (W.D. Ky. May 20, 1991)..........................24,25

*Jones v. Peloton Interactive, Inc.*,
720 F. Supp. 3d 940 (S.D. Cal. 2024)...................................................................................16

*Kasalo v. Harris & Harris, Ltd.*,
656 F.3d 557 (7th Cir. 2011) ................................................................................................24

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-CV-01473-NW, 2025 WL 1745726 (N.D. Cal. June 24, 2025)...............................19

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)................................................................................................................6

*Lueras v. BAC Home Loans Servicing, LP,*
221 Cal. App. 4th 49 (2013) ................................................................................................21

*Lyngaas v. Curaden Ag*,
992 F.3d 412 (6th Cir. 2021) ................................................................................................24

*Maloney v. Scottsdale Ins. Co.*,
256 F. App'x 29 (9th Cir. 2007)...........................................................................................19

*Manier v. Triple Lift Inc,*
No. 5:25-CV-03223-SSS-DTBX, 2026 WL 1295546 (C.D. Cal. Apr. 15, 2026)................22,23

*McHenry v. Renne*,
84 F.3d 1172 (9th Cir. 1996) ................................................................................2

*Mitchener v. CuriosityStream, Inc.,*
815 F. Supp. 3d 845 (N.D. Cal. 2025) .................................................................19

*Oddei v. Optum, Inc.*,
No. 2:21-CV-03974-SB-MRW, 2021 WL 6333467 (C.D. Cal. Dec. 3, 2021),
*aff'd sub nom. Oddei v. ScanSTAT Techs., LLC*, No. 22-55035,
2022 WL 17538747 (9th Cir. Dec. 8, 2022) ......................................................13,14

*Operating Eng'rs Local 324 Health Care Plan v. G&W Constr. Co.*,
783 F.3d 1045 (6th Cir. 2015) .............................................................................24

*Ortiz v. Foris Dax, Inc.,*
No. 25-CV-08950-EMC, 2026 WL 1430720 (N.D. Cal. May 21, 2026)..............................18

*PetConnect Rescue, Inc. v. Salinas*,
656 F. Supp. 3d 1131 (S.D. Cal. 2023)...............................................................17

*Pruchnicki v. Envision Healthcare Corp.*,
845 F. App'x 613 (9th Cir. 2021).........................................................................23

*Quinalty v. FocusIT LLC,*
No. CV-23-00207-PHX-JJT, 2024 WL 342454 (D. Ariz. Jan. 30, 2024) ...........................24

*Ramirez v. LasikMD USA, Inc.,*
No. 24-CV-2221-CAB-DDL, 2026 WL 194855 (S.D. Cal. Jan. 26, 2026) ........................15,16

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) .............................................................................7

*Roe v. Amgen Inc.,*
No. 2:23-CV-07448-MCS-SSC, 2024 WL 2873482 (C.D. Cal. June 5, 2024).....................15

*Rounds v. Dev. Dimensions Int'l, Inc.,*
No. 8:25-CV-01975-DOC-ADS, 2026 WL 746291 (C.D. Cal. Mar. 11, 2026)....................18

*Ross v. Robinson, Hoover & Fudge, PLLC*,
173 F.4th 745 (6th Cir. 2026) .............................................................................7

*Saleh v. Nike, Inc.,*
562 F. Supp. 3d 503 (C.D. Cal. 2021) ................................................................20,21

*Sanchez v. Cars.com Inc.*,
2025 WL 487194 (Cal. Super. Jan. 27, 2025) ....................................................18,19

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ........................................................................................7

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ....................................................................21,23

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ....................................................................................20,22

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (May 24, 2016) ........................................................................................5,6

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)........................................................................................................5,6

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016).........................................................................................................6

*U.S. Med. Instruments, Inc. v. CFS N. Am., Inc.*,
2013 WL 6055387 (S.D. Cal. Nov. 13, 2013) ...................................................................19

*Vigil v. Muir Med. Grp. IPA, Inc.*,
84 Cal. App. 5th 197 (2022) ..........................................................................................14

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011)...................................................................................................25

## **Rule**

Federal Rule of Civil Procedure 8(a)..............................................................................1,2

Federal Rule of Civil Procedure 12(b)..........................................................................*passim*

Federal Rule of Civil Procedure 12(f) ..........................................................................*passim*

Federal Rule of Civil Procedure 23(c)..............................................................................24

Federal Rule of Civil Procedure 23(d)..............................................................................24

Federal Rule of Evidence 201...........................................................................................7

## **Statute**

18 U.S.C. §§ 2511 ........................................................................................................9,10

Case 3:26-cv-00289     Document 23     Filed 06/22/26     Page 8 of 35 PageID #: 230

18 U.S.C. § 2512 ....................................................................................................20

18 U.S.C. § 2520 ....................................................................................................20

42 U.S.C. § 1320d-6 .............................................................................................10

California Business & Professions Code § 17200 .................................................22

California Business & Professions Code § 17204 .................................................22

California Civil Code § 56.06 .............................................................................12,13

California Civil Code § 56.101 ...............................................................................11

California Civil Code § 56.10 .............................................................................11,12

California Civil Code § 1709 ..............................................................................17,18

California Penal Code § 631 ..............................................................................10,11

California Penal Code § 632 ...................................................................................11

California Penal Code § 638.50 ..............................................................................18

California Penal Code § 638.51 ..............................................................................18

# I.     INTRODUCTION & SUMMARY OF ARGUMENTS

Plaintiffs filed a class action complaint against Defendants despite conceding it was Defendants' healthcare clients who allegedly violated the Health Insurance Portability and Accountability Act ("HIPAA") by allegedly deploying Google source code within Health Risk Assessments ("HRAs") that Plaintiffs' completed, which allegedly disclosed Plaintiffs' protected health information ("PHI") to Google without their consent (the "Complaint"). Accordingly, the Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b). Alternatively, the putative class allegations must be stricken pursuant to Fed. R. Civ. P. 12(f).

# II.     LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Id*. "Rule 8…demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* "Nor does a complaint suffice if it tenders naked assertion devoid of further factual enhancement." *Id.* Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter…to state a claim to relief that is plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops

1

short of the line between possibility and plausibility of entitlement to relief." *Id.* Applying this standard, the Complaint must be dismissed for the reasons set forth below.[1]

## III.    STATEMENT OF FACTS

The Complaint alleges that Defendants provide "health information technology", including "Health Risk Assessments", to "hospitals and healthcare systems across the United States." *Id.,* ¶¶ 3-5. The Complaint alleges that Defendants' "healthcare clients" "offer [these] online Health Risk Assessments to patients" and "encourage patients to fill out these forms[.]" *Id.*, ¶¶ 5, 40, 68, 161. The Complaint alleges that "[p]atients who fill out these forms are subsequently contacted by the marketing intake departments at hospitals and healthcare systems, who use the risk assessments to encourage individuals to becoming paying customers at their healthcare facilities." *Id.*, ¶ 7. The Complaint alleges that "John Doe is a resident of Riverside County, California," and was encouraged to fill out an online Heart Health Risk Assessment by his healthcare provider, Temecula Valley Hospital, in connection with treatment that he was receiving at the hospital." *Id.*, ¶¶ 21, 165. The Complaint alleges that "Plaintiff John Doe filled the online Heart Health Risk Assessment…using his cell phone's web browser to access the Temecula Valley Hospital website[2] that provided access to the HRAs[.]" *Id.* The Complaint alleges that "Plaintiff Jane Doe is a resident of Spotsylvania County, Virginia, who is a patient at Inova Health" and "was encouraged to fill

---

[1] While Unlock Health and Medicom Health are both named as Defendants, the Complaint collectively refers to them as "Unlock Health." *Id.*, ¶¶ 1, 42. Such pleading deprives Defendants of proper notice under Fed. R. Civ. P. 8, further warranting dismissal of the Complaint. *See Beluca Ventures LLC v. Aktiebolag*, 622 F. Supp. 3d 806, 816 (N.D. Cal. 2022) (A complaint cannot "engage[] in undifferentiated pleading that fails to make clear what allegations are being made against" each defendant); *see also McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996) (a complaint must clearly indicate "which defendants are liable to plaintiffs for which wrongs").

[2] The Complaint contains screenshots of the HRA Plaintiff John Doe allegedly completed. *Id.* ¶¶166-171. Notably, the screenshots do not reference Defendants. Rather, they state that the "Heart Health Assessment" was provided by "Temecula Valley Hospital."

out a Heart Disease Risk Assessment by her healthcare provider[3] in connection with ongoing treatment she has been receiving from Inova Health." *Id.*, ¶¶ 22, 178. The Complaint alleges that "Plaintiff Jack Doe is a resident of Jefferson Parish, Louisiana, who is a longstanding patient at Ochsner Health in Louisiana" who "was encouraged by Ochsner Health to fill out a Diabetes Health Risk Assessment that Ochsner Health…ma[d]e available[4] to the public." *Id.*, ¶¶ 23, 191. The Complaint alleges that Defendants violated HIPAA because the "HRAs…*permitted the deployment* of custom analytics scripts within online HRAs, including…Google Analytics, Google Ads, and Google DoubleClick source code (collectively, 'Google source code' ), through which patient identifiers and communications content were divulged to Google while patients [were] exchanging communications with their healthcare providers[.]" *Id.*, ¶ 72. Notwithstanding, the Complaint alleges Plaintiffs' healthcare providers (e.g. Defendants' healthcare clients) were the ones that *actually deployed* the Google source code within online HRAs. Indeed, the Complaint alleges that:

- The "healthcare clients…deploy[ed] surreptitious tracking technologies on HRAs for the express purpose of illegally sharing patients' Protected Health Information with a variety of tech companies, including…Google[.]" *Id.*, ¶ 10;

- The "healthcare clients…deploy[ed] their own Google Analytics and other tracking technologies on the online Unlock Health HRAs[.]" *Id.*, ¶ 49;

---

[3] The Complaint notably alleges that "Inova Health offer[ed]" Plaintiff Jane Doe the Heart Disease Risk Assessment, rather than Defendants. *Id.*, ¶ 22.

[4] While the Complaint contains screenshots of the HRA Plaintiff Jack Doe allegedly completed, they notably do not reference Defendants. *Id.* ¶¶ 192, 194. Rather, they state that the Diabetes Health Assessment was provided by "Oschner Health."

3

- The "healthcare clients…add[ed] their own tracking technologies to the HRA forms." *Id*., ¶ 52;

- "The tracking tools that…its clients use on HRAs…" *Id*., ¶ 56;

- The healthcare "clients bartered [patients'] Protected Health Information to Google[.]" *Id*., ¶ 60;

- "Google source code that…its clients placed…on the HRAs will deposit first-party cookies…on the patient's computing device." *Id*., ¶ 70;

- The "healthcare "clients…deploy[ed] their own tracking technologies within these HRA forms[.]" *Id*., ¶ 73;

- The "healthcare clients…deploy[ed] Google marketing tools to drive patient engagement." *Id*., ¶ 74;

- The healthcare "clients continue to deploy analytics tracking technologies on online HRA forms[.]" *Id*., ¶ 94;

- The healthcare "clients re-directed the precise content of the patients' communication and patients' identifiers to Google[.]" *Id*., ¶ 95;

- The healthcare "clients use the same tools and source code throughout their HRAs." *Id*., ¶ 103;

- The healthcare "clients intentionally shared the Protected Health Information of Plaintiffs…with Google…in order to gain access to the benefits of Google Analytics[.]" *Id*., ¶ 155;

- The "healthcare clients such as Temecula Valley Hospital and Inova Health…surreptitiously disclose[d] Plaintiffs'…Protected Health Information to Google[.]" *Id*., ¶ 159;

4

- The healthcare "client had configured and deployed surreptitious tracking technologies on the Heart Health Risk Assessment form." *Id*., ¶ 173;

- "In real-time, surreptitious tracking technologies that…its client deployed and configured collected and shared Plaintiff John Doe's communications with Google[.]" *Id*., ¶ 175;

- The healthcare "client had configured and deployed surreptitious tracking technologies on the Heart Disease Risk Assessment form." *Id*., ¶ 186.

- "In real-time, the surreptitious tracking technologies that…its client deployed and configured collected and shared Plaintiff Jane Doe's communications with Google[.]" *Id*., ¶ 188.

- The healthcare "client had configured and deployed surreptitious tracking technologies on the Diabetes Risk Assessment form." *Id*., ¶ 196.

- The "healthcare clients…deploy[ed] their own surreptitious tracking technologies on Unlock Health's HRAs, despite multiple warnings from Google[.]" *Id*., ¶ 365.

## IV. THE LAWSUIT MUST BE DISMISSED PURSUANT TO RULE 12(B)(1) FOR LACK OF SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFFS LACK ARTICLE III STANDING TO SUE.

Fed. R. Civ. P. 12(b)(1) authorizes a court to dismiss a complaint for lack of subject matter jurisdiction. *Id*. The United States Constitution limits the jurisdiction of federal courts to "cases" and "controversies." U.S. Const. Art. III, § 2. "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). To establish standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion*

Case 3:26-cv-00289    Document 23    Filed 06/22/26    Page 14 of 35 PageID #: 236

*LLC v. Ramirez*, 594 U.S. 413, 423 (2021). As to the first element, an injury in fact cannot be "conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (May 24, 2016). Rather, "[f]or an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id*. Additionally, "[a] concrete injury must be de facto; that is, it must actually exist." *Id*. Furthermore, "Article III standing requires a concrete injury even in the context of a statutory violation." *TransUnion,* 594 U.S. 413, 426. The United States Supreme Court "has rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id*. As to the second element, "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly…trace[able] to the challenged action of the defendant, and not...th[e] result [of] the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). As to the third element, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id*. "[P]laintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo,* 578 U.S. 330, 338. "Where…a case is at the pleading stage, the plaintiff must [still] clearly…allege facts demonstrating each element." *Id*. "That a suit may be a class action…adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Id*., fn. 6. "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016).

Applying this standard, the Complaint must be dismissed because as explained above, Plaintiffs concede that it was Defendants' healthcare clients who deployed the Google source code

within the HRAs.[5] Furthermore, "[the] complaint is devoid of specific factual allegations explaining what was actually disclosed to Defendant[s] and what Defendant[s] then allegedly disclosed to Google." *Herzman v. Smile Brands Inc.,* No. 25-CV-03400-H-BLM, 2026 WL 1110698, at *4 (S.D. Cal. Apr. 23, 2026). Indeed, "Plaintiff[s] bare allegations that protected health information and personally identifiable information were disclosed to Google is nothing more than legal conclusions cast in the form of factual allegations, and the Court need not accept them as true in deciding this motion to dismiss." *Id*.

## V. ALTERNATIVELY, THE COMPLAINT MUST BE DISMISSED AS TO MEDICOM HEALTH PURSUANT TO RULE 12(B)(2) FOR LACK OF PERSONAL JURISDICTION BECAUSE NO MINIMUM CONTACTS EXIST IN TENNESSEE.

Fed. R. Civ. P. 12(b)(2) authorizes a court to dismiss a complaint for lack of personal jurisdiction. *Id*. "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). "For the exercise of personal jurisdiction over a defendant, due process requires that the defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Ranza v. Nike, Inc*., 793 F.3d 1059, 1068 (9th Cir.

---

[5] A separate lawsuit was filed in the United States District Court for the Eastern District of Virginia against Inova Health based on its alleged deployment of tracking technologies. *See Lugo v. Inova Health Care Services*, Case No. 1:24-CV-00700-PTG-WEF. The parties in that matter recently reached a class-wide settlement agreement. *See id*.; *see also* https://www.healthpixelsettlement.com/. Defendants request the Court take judicial notice of the aforementioned, as it provides further support that Defendants are improperly named as defendants in this matter. *See Clark v. Stone,* 998 F.3d 287, 297 (6th Cir. 2021) ("Courts may take judicial notice of the proceedings of other courts of record."); *see also* Fed. R. Evid. 201.

7

2015); *see also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "The strength of contacts required depends on which of the two categories of personal jurisdiction a litigant invokes: specific jurisdiction or general jurisdiction." *Id*. "[G]eneral jurisdiction…permits a forum to hear any and all claims against a defendant if the defendant's affiliations with the State are so continuous and systematic as to render [the defendant] essentially at home in the forum State." *Ross v. Robinson, Hoover & Fudge, PLLC*, 173 F.4th 745, 752 (6th Cir. 2026). "The paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014).

Here, Plaintiffs allege that Medicom Health "was founded in Minneapolis" and has its "principal place of business…located [in] Minneapolis, MN[.]" Complaint, ¶ 29. Accordingly, Plaintiffs fail to allege the Court has general personal jurisdiction over Medicom Health. "[S]pecific jurisdiction…focuses on the relationship among the defendant, the forum, and the litigation[.]" *Ross,* 173 F.4th 745, 752. The Sixth Circuit "has developed a three-part standard…to assess specific personal jurisdiction." *AMB Media, LLC v. OneMB, LLC*, No. 23-5607, 2024 WL 2052151, at \*3 (6th Cir. May 8, 2024). "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state." *Id*. "Second, the claims must arise out of or relate to the defendant's contacts with the forum." *Id*. "Third, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Id*. "Each part of the standard represents an independent requirement, and failure to meet any one of the three means that personal jurisdiction may not be invoked." *Id*.

Here, Plaintiffs do not allege that the court has specific personal jurisdiction over Medicom Health. Rather, Plaintiffs allege that they and their healthcare providers (Temecula Valley

8

Hospital, Inova Health, and Ochsner Health)[6] are located in California, Virginia, and Louisiana. Complaint, ¶¶ 21-23, 165, 178, 191. Simply put, this case "involve[s] non-resident [P]laintiffs suing a non-resident [D]efendant [Medicom Health] based on an [alleged] injury that occurred outside the forum state. *DeBellis v. Woodit*, 728 F. Supp. 3d 330, 343 (D. Md. 2024). "The interstate federalism considerations…weigh against the exercise of jurisdiction." *Id*. Accordingly, the Complaint must be dismissed against Medicom Health for lack of personal jurisdiction.

## VI. ALTERNATIVELY, THE COMPLAINT MUST BE DISMISSED PURSUANT TO RULE 12(B)(6) BECAUSE PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Fed. R. Civ. P. 12(b)(6) authorizes a court to dismiss a complaint for failure to state a claim upon which relief can be granted. *Id*. Accordingly, in addition to the above legal deficiencies, each of the twelve causes of action[7] must alternatively be dismissed for the reasons set forth below.

### A. The ECPA claim is legally deficient because (i) Plaintiffs fail to allege that Defendants acquired electronic communications; and (ii) Defendants did not deploy the Google source code within the HRAs.

The Electronic Communications Privacy Act ("ECPA") provides recourse to any person who:

> intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any…electronic communication; [or]
>
> [ ]
>
> intentionally discloses, or endeavors to disclose, to any other person the contents of any…electronic communication, knowing or having reason to know that the information was obtained through the interception of a[n]…electronic communication in violation of this subsection; [or]

---

[6] Plaintiffs also allege that this Court has personal jurisdiction over Medicom Health because they "offer[ ] to citizens of this District [HRAs] in connection with TriStar Health." Complaint, ¶¶ 34, 45. However, Plaintiffs do not provide any factual allegations to support this, and Plaintiffs do not allege they are patients of TriStar Health. *See id*., *generally*.

[7] The California statutory claims and common law claims are brought on behalf of Plaintiff John Doe and the California subclass. The Complaint alleges that the Court should apply California law when analyzing these claims.

9

intentionally uses, or endeavors to use, the contents of any…electronic communication, knowing or having reason to know that the information was obtained through the interception of a[n]…electronic communication in violation of this subsection…

18 U.S.C. §§ 2511(1)(a), (c)-(d). The ECPA further provides that:

It shall not be unlawful…for a person not acting under color of law to intercept a[n] electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(2)(d). Here, Plaintiffs fail to allege how Defendants violated the ECPA. Indeed, Plaintiffs allege (i) "[t]he transmissions of data [were] between [themselves] and their healthcare providers"; (ii) "Unlock Health was not a party to the communications between patients and their healthcare providers; and (iii) "[w]hen Plaintiffs…filled out HRAs they were communicating with their healthcare providers—not with Unlock Health." Complaint, ¶¶ 322, 333, 337. Accordingly, Plaintiffs fail to allege *how* Defendants acquired the alleged electronic communications. Even assuming, *arguendo*, Defendants acquired the alleged electronic communications, as explained above, Plaintiffs concede that it was Unlock Health's healthcare clients who deployed the Google source code within the HRAs. Alternatively, Plaintiffs allege that "even if Unlock Health was a party to the communications, Unlock Health is still liable under the ECPA because it acted with the purpose of committing criminal and tortious acts", including by allegedly violating 42 U.S.C. § 1320d-6 of HIPAA. Complaint, ¶¶ 338-339. However, even under this alternative theory, Plaintiffs fail to explain how Defendant violated HIPAA. Again, Plaintiffs conceded it was Unlock Health's healthcare clients who deployed the Google source code within the HRAs. Accordingly, the ECPA claim must be dismissed.

10

**B.** **The CIPA claim based on Cal. Penal Code § 631 is legally deficient because (i) Plaintiffs fail to allege that Defendants acquired electronic communications; and (ii) Defendants did not deploy the Google source code within the HRAs.**

The California Invasion of Privacy Act ("CIPA") provides liability to:

> Any person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section…

Cal. Penal Code § 631(a). The CIPA further provides liability to:

> A person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication.…

Cal. Penal Code § 632(a). "A violation of [the] CIPA is analyzed under the same standards applied to a violation of the…ECPA[.]" *Harrill v. Emanuel Med. Ctr.,* No. 2:23-CV-01672-DC-CKD, 2025 WL 1635428, at *9 (E.D. Cal. June 9, 2025). Accordingly, for the same reasons explained above, the CIPA claim is legally deficient, warranting dismissal.

**C.** **The CMIA claims are legally deficient because (i) Defendants are not regulated by the CMIA; (ii) Plaintiffs do not allege that their medical information was viewed by an unauthorized third party; and (iii) Defendants did not deploy the Google source code within the HRAs.**

The California Confidentiality of Medical Information Act ("CMIA") requires "[e]very provider of health care…who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information [to] do so in a manner that preserves the confidentiality of the information contained therein." Cal. Civil Code § 56.101. The CMIA further prohibits "[a] provider of health

11

care…[from disclosing] medical information regarding a patient[8] of the provider of health care…without first obtaining an authorization." Cal. Civil Code § 56.10. As discussed below, Plaintiffs fail to satisfy each of these elements, warranting dismissal of their CMIA claims.

### 1. Defendants are not regulated by the CMIA.

The CMIA deems certain "business" entities to be a "provider of health care", which in turn requires it to "maintain the same standards of confidentiality required of a provider of health care with respect to medical information disclosed to the business." Cal. Civil Code § 56.10(f). Notably, the CMIA states that "[a]ny business organized for the purpose of maintaining medical information in order to make the information available to an individual or to a provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manage the individual's information, or for the diagnosis and treatment of the individual, shall be deemed to be a provider of health care." Cal. Civil Code § 56.06(a). The CMIA similarly states that "[a]ny business that offers software or hardware to consumers, including a mobile application or other related device that is designed to maintain medical information in order to make the information available to an individual or a provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manage the individual's information, or for the diagnosis, treatment, or management of a medical condition of the individual, shall be deemed to be a provider of health care[.]" Cal. Civil Code § 56.06(b).

Here, Plaintiffs conclusorily allege "Unlock Health is a provider of health care" by reciting the language within Cal. Civil Code § 56.06 (a) and (b). *See* Complaint, ¶¶ 388-389. However, as

---

[8] As discussed below in the motion to strike analysis, the definition of the California subclass is overly broad as it, *inter alia*, includes "all California citizens", regardless of their patient status. Accordingly, the California subclass cannot pursue CMIA claims for those putative class members who are not patients.

12

explained above, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. 662, 678; *see also Oddei v. Optum, Inc.*, No. 2:21-CV-03974-SB-MRW, 2021 WL 6333467 (C.D. Cal. Dec. 3, 2021), *aff'd sub nom. Oddei v. ScanSTAT Techs., LLC*, No. 22-55035, 2022 WL 17538747, at *1 (9th Cir. Dec. 8, 2022) ("[Plaintiff] does not plausibly allege that [defendant] is liable under the CMIA. [The complaint] does not include any specific factual allegations that would establish [defendant] is a provider of health care…[The complaint] includes no allegation that [defendant] was organized for the purpose of maintaining medical information…And it includes only the conclusory statement that [defendant] provides software or hardware for consumers. Conclusory statements are not specific factual allegations that we assume to be true, and such statements, standing alone, do not make the factual showing required under our pleading standards."); *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 643 (N.D. Cal. 2024) (dismissing CMIA claim where the plaintiffs failed to allege the defendant "[was] a business organized for the purpose of maintaining medical information.").

In addition to above, the CMIA claims are further deficient because "§ 56.06(a) requires more than an allegation that [defendant] maintained or even presently maintains medical information; [defendant] must have been organized for the purpose of maintaining medical information." *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 644. "Here, [Plaintiffs] cannot infer from a single website statement advertising its breadth of clients that [Unlock Health] is a company organized for the purpose of maintaining medical information." *Id*. Additionally, Defendants do not fall within the framework of Cal. Civil Code § 56.06(b) because they do not "offer software or hardware to consumers." Rather Plaintiffs concede that "[t]hey provide the[ir] services to…hospitals and healthcare systems across the United States." Complaint ¶ 4. *See also*

13

*Oddei,* 2021 WL 6333467, at *2 ("Plaintiff argues…that individuals request records from [defendant] through its website, which necessarily involves the use of hardware and software…But such use refers to the individual's own hardware and software (i.e., a computer and its programs) needed to access any website—it does not demonstrate that [defendant] itself offers hardware or software to consumers for one of the statute's enumerated purposes."); *In re Accellion, Inc. Data Breach Litig.,* 713 F. Supp. 3d 623, 643 ("As a preliminary matter…[defendant's] software was not offered directly to individual consumers…However, Plaintiffs contend that [defendant] nonetheless falls within this category because its institutional customers (*e.g.*, government agencies, private business, and universities…) should also be considered consumers as purchasers of [defendant's] software…This is a tenuous interpretation that threatens to read the consumers language out of the statute."). Lastly, even if Defendants were regulated by the CMIA, Plaintiffs fail to allege a violation because as explained above, Plaintiffs concede that it was Defendants' healthcare clients who deployed the Google source code within the HRAs. Accordingly, the CMIA claims must be dismissed.

> 2.      *Plaintiffs do not allege that their medical information was viewed by an unauthorized third party.*

"[A] breach of confidentiality under the CMIA requires a showing that an unauthorized party viewed the confidential information." *Vigil v. Muir Med. Grp. IPA, Inc.*, 84 Cal. App. 5th 197, 213 (2022). "[J]ust because medical information has been disclosed in an unauthorized manner does not mean that the information was viewed by an unauthorized person." *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1128 (S.D. Cal. 2023). "Here, Plaintiffs only allege that data was collected, stored, sent, delivered, shared, or disclosed to [Google.]" *Id.* "Plaintiffs do not allege that their medical information was viewed or otherwise accessed by [Google.]" *Id.*; *see also Roe v. Amgen Inc.,* No. 2:23-CV-07448-MCS-SSC, 2024 WL 2873482, at *5 (C.D. Cal. June 5,

14

Case 3:26-cv-00289     Document 23     Filed 06/22/26     Page 23 of 35 PageID #: 245

2024) ("Here, Plaintiffs allege Defendant shared their data with third parties, and that this data was used to create targeted advertisements…But absent factual allegations showing that an unauthorized party viewed the confidential information, Count III fails"); *Barbour v. John Muir Health*, No. C22-01693, 2023 WL 2618967, at *7–8 (Cal.Super. Jan. 05, 2023) ("Here, the information may be collected, analyzed, and used by a third party for its own benefit, all through the use of computers, without any human actually laying eyes on it. Plaintiffs have not alleged that the information was actually read…Plaintiffs conclude that someone must have viewed the data at Facebook in order to compile the datasets for advertisers, the complaint does not specifically allege this. It does allege that the information was used by a third party and used for its own benefit, i.e., for marketing purposes. However, in the absence of allegations that the information was actually read, Plaintiffs have failed to allege facts sufficient to state a violation of the CMIA."). Accordingly, the CMIA claims must be dismissed.

> **D.** **The invasion of privacy claim is legally deficient because (i) the California Constitution does not confer on a litigant a private right of action for damages; (ii) Plaintiffs fail to allege actual and imminent future injury for injunctive relief; and (iii) Defendants did not deploy the Google source code within the HRAs.**

"The California Constitution sets a high bar for establishing an invasion of privacy claim." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014). "To state a claim for invasion of privacy under the California Constitution, a plaintiff must plead (1) the nature of any intrusion upon reasonable expectation of privacy, and (2) the offensiveness or seriousness of the intrusion, including any justification and other relevant interests." *Ramirez v. LasikMD USA, Inc.,* No. 24-CV-2221-CAB-DDL, 2026 WL 194855, at *4 (S.D. Cal. Jan. 26, 2026). Here, the California Constitution claim is legally deficient because Plaintiffs fail to allege that Defendants intruded upon their privacy. Rather, as explained above, Plaintiffs concede that it was Defendants'

15

healthcare clients who deployed the Google source code within the HRAs; *see also Doe I v. Google LLC*, 741 F. Supp. 3d 828, 844 (N.D. Cal. 2024) ("Given the two flawed assumptions the plaintiffs make—about where Google source code is present on a given web property and about what features of Google's products the health care providers have enabled—there is no way to understand the nature of the intrusion, and thus no way to assess whether it rises to the level of being highly offensive. Moreover… the plaintiffs have not adequately alleged intent, which is a necessary element of an invasion of privacy claim."). Furthermore, "California's constitutional provision protecting the right of privacy…supports a cause of action for an injunction but it does not confer on a litigant a private right of action for damages." *Cousin,* 702 F. Supp. 3d 967, 974. Accordingly, Plaintiffs' California Constitution claim is also legally deficient because they only seek damages. *See* Complaint, ¶¶ 431-433. Additionally, "to establish standing for prospective injunctive relief, a plaintiff may not rely solely on past exposure to illegal conduct." *Ramirez*, 2026 WL 194855, at *4. Here, "Plaintiff[s] ha[ve] not demonstrated [they are] subject to the likelihood of actual and imminent future injury from [Defendants]." *Id.* "Specifically…Plaintiff[s] ha[ve] not pled sufficient facts to support a claim that [Defendants are] continuing to share [their] private data." *Id.*; *see also Jones v. Peloton Interactive, Inc.,* 720 F. Supp. 3d 940, 952 (S.D. Cal. 2024) ("Plaintiff has not pled sufficient facts to support her claim that [defendant] is continuing to use her data, particularly in light of the fact that…she has not asserted she will visit the…site and use the chat feature in the future."); *D'Angelo v. Penny OpCo, LLC*, No. 23-CV-0981-BAS-DDL, 2023 WL 7006793, at *4 (S.D. Cal. Oct. 24, 2023) (same); *Graham v. Noom, Inc.,* 533 F. Supp. 3d 823, 836 (N.D. Cal. 2021) (same). Accordingly, the California Constitution claim must be dismissed.

E.      **The Cal. Civil Code § 1709 claim is legally deficient because (i) Defendants did not conceal or suppress a material fact; (ii) Defendants did not deploy the Google source code within the HRAs; and (iii) Plaintiffs fail to allege damages caused by Defendants' conduct.**

16

"The California Civil Code recognizes causes of action for fraudulent deceit, a type of misrepresentation tort[.]" *PetConnect Rescue, Inc. v. Salinas*, 656 F. Supp. 3d 1131, 1178 (S.D. Cal. 2023); *see also* Cal. Civil Code § 1709 ("[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."). "[T]he elements of an action for fraud and deceit based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." *Cottle v. Plaid Inc.,* 536 F. Supp. 3d 461, 493 (N.D. Cal. 2021). "Because this claim sounds in fraud, the allegations are subject to Rule 9(b)'s heightened pleading standard[.]" *Cherkin v. PowerSchool Holdings, Inc.,* No. 24-CV-02706-JD, 2025 WL 844378, at *4 (N.D. Cal. Mar. 17, 2025); *see also Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1081 (N.D. Cal. 2022) (same); *In re Facebook, Inc., Consumer Priv. User Profile Litig.,* 402 F. Supp. 3d 767, 800 (N.D. Cal. 2019) (same). Here, Plaintiffs allege that "Unlock Health engaged in deceit by intentionally concealing and failing to disclose the true nature of its HRAs and conduct to patients[.]" Complaint, ¶ 441. However, the § 1709 claim is legally deficient because as explained above, Plaintiffs concede that it was Defendants' healthcare clients who deployed the Google source code within the HRAs. Accordingly, the § 1709 claim must be dismissed because even assuming, *arguend*o, a duty existed, Plaintiffs fail to allege breach or legally recognized damages caused by Defendants' conduct.

17

**F.** **The CIPA claim based on Cal. Penal Code § 638.51 is legally deficient because (i) the statute does not address the privacy rights of internet users; (ii) Defendants did not deploy the Google source code within the HRAs; and (iii) Plaintiffs allege in their Cal. Penal Code § 632 claim that the Google source code transmitted the contents of their electronic communications.**

The CIPA prohibits any person from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order[.]" Cal. Penal Code § 638.51(a). The CIPA defines a "pen register" as a "device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a[n]…electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). The CIPA further defines a "trap and trace device" as a related device that "captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a[n]… electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50(c). Here Plaintiffs fail to allege a violation of § 638.51 by Defendants because as explained above, Plaintiffs concede that it was Defendants' healthcare clients who deployed the Google source code within the HRAs. Furthermore, applying the above statutory scheme, courts have held that "Section 638.50 does not address the privacy rights of Internet users." *Casillas v. Transitions Optical, Inc.*, 2024 WL 4873370, at *2 (Cal. Super. Sept. 9, 2024); *see also Rounds v. Dev. Dimensions Int'l, Inc.,* No. 8:25-CV-01975-DOC-ADS, 2026 WL 746291, at *2 (C.D. Cal. Mar. 11, 2026) ("allegations of the use of cookies does not suffice as a statutory violation of § 638.51"); *Sanchez v. Cars.com Inc.*, 2025 WL 487194, at *3 (Cal. Super. Jan. 27, 2025) (rejecting extension of CIPA's pen register provision to internet communications based on the statutes' "plain language and legislative intent"). Additionally, Plaintiffs allege in their § 632 claim that that the Google source code transmitted the contents of their electronic communications. Accordingly, "[c]ollection of the

18

same communications… cannot simultaneously violate both provisions." *In re Apple Data Priv. Litig.,* No. 5:22-CV-07069-EJD, 2026 WL 146025, at *4 (N.D. Cal. Jan. 20, 2026); *see also U.S. Med. Instruments, Inc. v. CFS N. Am., Inc.*, 2013 WL 6055387, at *9 (S.D. Cal. Nov. 13, 2013) ("The Ninth Circuit has held that where inconsistent allegations are not pled in the alternative, but are expressly incorporated into each cause of action, an allegation may constitute a judicial admission by the plaintiff which allows dismissal of the complaint."); *Maloney v. Scottsdale Ins. Co.*, 256 F. App'x 29, 31 (9th Cir. 2007); *Kishnani v. Royal Caribbean Cruises Ltd.,* No. 25-CV-01473-NW, 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025) ("Even if Plaintiff did allege that additional information about him was collected by the Website, the FAC still fails because, if that type of information is collected, the statute ceases to apply"); *Mitchener v. CuriosityStream, Inc.,* 815 F. Supp. 3d 845, 848 (N.D. Cal. 2025) (same). Accordingly, the CIPA claim must be dismissed.

      **G.**     **The unjust enrichment claim is legally deficient because (i) Plaintiffs did not confer a benefit upon Defendants; and (ii) Defendants did not deploy the Google source code within the HRAs.**

Under California law, "[t]o allege unjust enrichment…a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *Ortiz v. Foris Dax, Inc.,* No. 25-CV-08950-EMC, 2026 WL 1430720, at *8 (N.D. Cal. May 21, 2026). However, "California law does not recognize unjust enrichment as a standalone cause of action[.]" *Cole v. Solairus Aviation LLC,* No. 25-CV-03035-RFL, 2025 WL 2249740, at *4 (N.D. Cal. Aug. 6, 2025); *see also Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). Rather, "[t]he remedy for an unjust enrichment claim is equitable restitution." *In re Accellion,* 713 F. Supp. 3d 623, 648. Accordingly, "[f]or a district court to have equitable jurisdiction, [Plaintiffs] must [allege that they] have no adequate legal remedy", which they fail to do here. *Id.*; *see also Guzman*

19

*v. Polaris Indus. Inc.*, 49 F.4th 1308, 1313 (9th Cir. 2022); *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); Complaint, ¶¶ 454-470. Furthermore, Plaintiffs fail to allege how Defendants were unjustly enriched. Indeed, Plaintiffs do not allege that they paid Defendants for the HRAs. *See id.*, *generally*. Even assuming, *arguendo*, Plaintiffs provided a benefit, the recipients of that benefit would have been their healthcare providers (e.g. Defendants' healthcare clients). Indeed, Plaintiffs allege that "[p]atients who fill out these forms are subsequently contacted by the marketing intake departments at hospitals and healthcare systems, who use the risk assessments to encourage individuals to becoming paying customers at their healthcare facilities." *Id*., ¶ 7. Accordingly, the unjust enrichment claim must be dismissed.

**H.     The FWA claim is legally deficient because (i) there is no private right of action for a violation of 18 U.S.C. § 2512; and (ii) Defendants did not deploy the Google source code within the HRAs.**

The Federal Wiretap Act ("FWA") makes punishable any person who "intentionally…manufactures, assembles, possesses, or sells any electronic…device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of…electronic communications, and that such device or any component thereof has been or will be sent through the mail or transported in interstate…commerce." 18 U.S.C. § 2512(1)(b). The FWA further provides that "any person whose…electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the…entity….which engaged in that violation." 18 U.S.C. § 2520(a). Applying the aforementioned statutory scheme, "the Circuit Courts of Appeal that have addressed the issue agree that § 2520(a)…does not provide a private right action for…violation of § 2512." *Saleh v. Nike, Inc.,* 562 F. Supp. 3d 503, 522 (C.D. Cal. 2021); *see also DirecTV, Inc. v. Treworgy*, 373 F.3d 1124, 1127 (11th Cir. 2004); *DirecTV, Inc. v. Robson*, 420 F.3d 532, 539 & n.31 (5th Cir. 2005); *Allen v. Quicken Loans Inc.,* No. CV1712352ESMAH, 2018

20

WL 5874088, at *7 (D.N.J. Nov. 9, 2018) ("when drafting section 2520(a) Congress chose to omit any mention of an avenue to seek civil redress for manufacturing, possessing, distributing, or advertising a wiretap device"). Even if a private right of action existed, Plaintiffs fail to allege a violation of the FWA by Defendants because as explained above, Plaintiffs concede that it was Defendants' healthcare clients who deployed the Google source code within the HRAs. Similarly, "Plaintiff[s]…do[ ] not allege [Defendants] manufactured, marketed, or sold [the Google source] code." *Saleh,* 562 F. Supp. 3d 503, 523. Accordingly, the FWA claim must be dismissed.

### I.     The negligence claim is legally deficient because Plaintiffs fail to allege breach of duty or resulting damages proximately caused by Defendants' conduct.

Under California law, "[t]o state a cause of action for negligence, a plaintiff must allege (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, and (3) the breach proximately caused the plaintiff's damages or injuries." *Lueras v. BAC Home Loans Servicing, LP,* 221 Cal. App. 4th 49, 62 (2013)."When determining whether a valid duty exists, California courts turn to several factors, including the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and the consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." *Shah v. Cap. One Fin. Corp.,* 768 F. Supp. 3d 1033, 1045 (N.D. Cal. 2025). Similarly, "[t]he proximate cause inquiry bears a strong resemblance to the duty inquiry: courts are meant to consider the connection between the conduct and the injury, as well as any public policy reasons to limit liability." *Hughes v. Apple, Inc.*, 723 F. Supp. 3d 693, 707 (N.D. Cal. 2024). Proximate causation requires "a causal or logical relationship between events[.]" *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 909 (N.D.

21

Cal. 2024). Here, even assuming, *arguendo*, a duty existed, Plaintiffs fail to allege breach or legally recognized damages proximately caused by Defendants' conduct. Rather, Plaintiffs concede that it was Defendants' healthcare clients who deployed the Google source code within the HRAs. Accordingly, the negligence claim must be dismissed.

**J.** **The UCL claim is legally deficient because (i) Defendants did not deploy the Google source code within the HRAs; (ii) Plaintiffs fail to allege that they lack an adequate remedy at law; and (iii) Plaintiffs fail to allege an economic injury.**

California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Here, Plaintiffs fail to allege a violation of the UCL because as explained above, Plaintiffs concede that it was Defendants' healthcare clients who deployed the Google source code within the HRAs. "Moreover, the UCL provides only equitable remedies—specifically restitution and injunctive relief." *Baskerville v. Sketchers, USA, Inc.*, No. 2:24-CV-10464-MEMF-JPR, 2026 WL 1670859, at *9 (C.D. Cal. June 4, 2026). Accordingly, as explained above, Plaintiffs "must establish that [they] lack[ ] an adequate remedy at law before securing equitable restitution", which they fail to allege. *Sonner,* 971 F.3d 834, 844; Complaint, ¶¶ 490-517. Furthermore, UCL claims may only be brought by "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. "Plaintiff, therefore, must demonstrate some form of economic injury, such as surrendering more or acquiring less in a transaction, having a present or future property interest diminished, being deprived of money or property, or entering a transaction costing money or property that would otherwise have been unnecessary." *Manier v. Triple Lift Inc,* No. 5:25-CV-03223-SSS-DTBX, 2026 WL 1295546, at *6 (C.D. Cal. Apr. 15, 2026).

Here, Plaintiffs first allege they suffered an economic injury because they "did not get the full value of the medical services for which they paid." Complaint, ¶ 498. However, "[t]his theory

22

of injury fails because the [Complaint] does not adequately allege that Plaintiff[s]…paid money" to Defendants. *Mainer,* 2026 WL 1295546, at *6. Indeed, "there are no factual allegations to suggest that Plaintiff[s] engaged in any transaction with Defendant[s]." In contrast, Plaintiffs conceded they entered into transactions with Defendants' healthcare clients. Plaintiffs next allege that "[b]y surreptitiously collecting and otherwise misusing [their] Protected Health Information, Unlock Health has taken property from [them] without providing just…compensation." Complaint, ¶ 502. Again, this is a false statement as Plaintiffs conceded it was Defendants' healthcare clients who deployed the Google source code within the HRAs. Additionally, "the mere misappropriation of personal information does not establish compensable damages." *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 615 (9th Cir. 2021). "Moreover, although Plaintiff[s] observe[ ] that [their] personal data was valuable to Defendant[s], [t]hat the information has external value, but no economic value to [P]laintiff[s], cannot serve to establish that [P]laintiff[s] ha[ve] personally lost money or property." *Mainer*, 2026 WL 1295546, at *7; *see also Dellasala v. Samba TV, Inc.,* No. 3:25-CV-03470-JSC, 2026 WL 1138358, at *10 (N.D. Cal. Apr. 21, 2026) (same). Furthermore, "[n]othing in the [Complaint] supports an inference that Plaintiff[s] monetized [their] data nor attributed economic value to it to warrant a UCL violation." *Id*.; *see also Shah,* 768 F. Supp. 3d 1033, 1048 (same); *Done,* 2025 WL 629613, at *4 ("Plaintiff describes the health information at issue as highly sensitive, such that its disclosure would be highly offensive, which suggests that Plaintiff would not have sold that information."). Accordingly, the UCL claim must be dismissed.

**VII.  ALTERNATIVELY, THE PUTATIVE CLASS ALLEGATIONS MUST BE STRICKEN PURSUANT TO RULE 12(F) BECAUSE THE CLASS DEFINITION IS OVERLY BROAD AND FAILS TO COMPLY WITH RULE 23.**

Fed. R. Civ. P. 12(f) authorizes the Court to "strike from a pleading…any redundant, immaterial, impertinent, or scandalous matter." *Id*. "The function of the motion [to strike] is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with them early in the case." *Operating Eng'rs Local 324 Health Care Plan v. G&W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015). Fed. R. Civ. P. 23(d)(1)(D) authorizes the Court to "require that the pleadings be amended to eliminate allegations about representation of absent persons." *Id*. Fed. R. Civ. P. 23(c)(1)(A) requires the Court to determine "[a]t an early practicable time…whether to certify the action as a class action." *Id*. "Read together, Rules 12(f), 23(d)(1)(D), and 23(c)(1)(A) grant the Court authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained." *Carrico v. Uponor, Inc.,* No. 3:23-CV-00497, 2025 WL 967542, at *7 (M.D. Tenn. Mar. 31, 2025); *see also Lyngaas v. Curaden Ag*, 992 F.3d 412, 445 (6th Cir. 2021) ("A court may grant a motion to strike class allegations before certification."). Applying the aforementioned framework in the context of data privacy litigation, courts have stricken putative class allegations at the pleading stages of litigation. *See In re Cupertino Electric Inc. Litigation*, Case 5:23-cv-04007-BLF, ECF No. 69 (N.D. Cal. Aug. 14, 2024); *Quinalty v. FocusIT LLC,* No. CV-23-00207-PHX-JJT, 2024 WL 342454, at *3 (D. Ariz. Jan. 30, 2024). Here, Plaintiffs define the nationwide class and California subclass to include "all patients in the United States" and "all California citizens" who "had data from Unlock Health HRAs they filled out shard with Google." Complaint, ¶ 303. However, "standing of the class members is required." *James v. Wilkinson,* No. CIV.A. 89-0139-P(CS), 1991 WL 626750, at *2 (W.D. Ky. May 20, 1991). "The definition of a class should not be so broad as to include individuals who are without standing to maintain the action on their own behalf." *Id*. Here, the putative class definitions are overly broad because they include members whose PHI was not

24

collected, including those who do not have a Google account. *See* Complaint, ¶ 303. Furthermore, a class action is not the superior method for adjudicating each putative class members' claims because commons questions do not predominate. Rather, each putative class member will be required to submit individualized proof, turning this class action lawsuit into mini-trials. For instance, each putative class member will need to prove that Defendants, rather than their healthcare clients, deployed the Google source code within the HRAs. As Plaintiffs allege that Defendants provided their HRA services "to more than a thousand hospitals and healthcare systems across the United States", the putative class members will not be able to resolve "each one of the claims in one stroke." Complaint, ¶ 4; *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2545 (2011).

## VIII.  CONCLUSION

WHEREFORE, Defendants respectfully move pursuant to Fed. R. Civ. Pro. 12(b)(1), (2) and (6) for an order dismissing this matter; or alternatively pursuant to Fed. R. Civ. Pro. 12(f) and 23 for an order striking the putative class allegations. Defendants seek such further relief as appears lawful, equitable, and just.

Dated: Knoxville, Tennessee
June 22, 2026

**WOOD, SMITH, HENNING & BERMAN, LLP**

By: */s/ Christopher J. Seusing*
Christopher J. Seusing, Esq. (Admitted Pro Hac Vice)
Sean V. Patel, Esq. (Admitted *Pro Hac Vice*)
William J. Roe, Esq.
800 S. Gay Street, Ste. 700
Knoxville, TN 37929
Tel.:  865-267-8050
Fax.:  865-267-8051
wroe@wshblaw.com
cseusing@wshblaw.com

*Counsel for Defendants Unlock Health, Inc. Medicom Digital, Inc. d/b/a Medicom Health Interactive And Medicom Health*

25

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2026, a copy of Defendants' MOTION AND MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS THE PUTATIVE CLASS ACTION COMPLAINT, OR IN THE ALTERNATIVE, MOTION TO STRIKE THE PUTATIVE CLASS ALLEGATIONS was filed through the Court's CM/ECF system, which will send notification to all counsel of record registered to receive electronic service.

/s/ *Christopher J. Seusing*
Christopher J. Seusing, Esq.