**UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE (NASHVILLE)**

| | |
|---|---|
| JOHN DOE, et al., individually and on behalf of all others similarly situated, | |
| *Plaintiffs,* | Case No. 3:26-cv-00289 |
| v. | Judge Waverly D. Crenshaw, Jr. Magistrate Barbara D. Holmes |
| UNLOCK HEALTH, INC. MEDICOM DIGITAL, INC. d/b/a MEDICOM HEALTH INTERACTIVE and MEDICOM HEALTH, | |
| *Defendants.* | |

## <u>DEFENDANTS' MOTION FOR ENTRY OF A PROTECTIVE ORDER</u>

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure and this Court's inherent authority to manage discovery, Defendants Unlock Health, Inc. Medicom Digital, Inc. d/b/a Medicom Health Interactive and Medicom Health (collectively, "Defendants" or "Unlock Health"), respectfully move for entry of a protective order (i) prohibiting the service and enforcement of subpoenas directed to eighteen of Defendants' clients; (ii) protecting Defendants and their clients from financial and reputational harm that would result from the disclosure of sensitive, confidential, and competitively valuable business information; and (iii) preventing harassment and undue burden on non-parties who are Defendants' clients with no connection to this instant litigation. Plaintiffs' subpoenas are not only an improper fishing expedition, but a transparent attempt to exert pressure on Defendants to settle this and to explore litigation against other non-parties. Good cause exists for this relief to safeguard proprietary information, preserve the confidentiality of client identities, and prevent abuse of the discovery process.

1

Defendants anticipate discovery may involve confidential, proprietary, and commercially sensitive information and seeks to protect against public disclosure, including by: (i) safeguarding its clients' identities; and (2) preventing irreparable financial and reputational harm to Defendants. Counsel for Defendants conferred with Plaintiffs on July 8, 2026 and informed them that they intend to file a motion for entry of a protective order unless Plaintiffs' counsel paused all current and forthcoming subpoenas. Plaintiffs' counsel noted they could not pause the current subpoenas, and in fact informed them they are considering issuing additional subpoenas to other Unlock clients. Given the impending harm Defendants will face, Defendants now seek judicial intervention.

## I.      INTRODUCTION

Plaintiffs filed a class action complaint against Defendants alleging improper collection of their personal data by using Health Risk Assessments ("HRAs") on health care entity websites. On June 22, 2026, Defendants filed a motion to dismiss pointing out Plaintiffs' concession that it was actually the three healthcare entities identified in the Complaint who allegedly violated the Health Insurance Portability and Accountability Act ("HIPAA") by allegedly deploying Google source code within the HRAs, not Defendants. Instead of dismissing the instant action against Defendants, Plaintiffs are using the instant litigation as a springboard from which to issue burdensome and harassing subpoenas (*190 pages each!*) on 18 non-party healthcare entities who are all current or former clients of Unlock —threatening to inflict substantial financial and reputational harm on Defendants by disrupting confidential client relationships and forcing non-parties into burdensome discovery.

2

## II.    ARGUMENT

### A.    Legal Standard

A party may request production of documents or other intangible items as long as the information sought is within the scope of discovery. Fed. R. Civ. P. 34(a); Fed R. Civ. P. 26(b)(1). Generally, the scope of discovery extends to nonprivileged information that is relevant to any party's claim or defense, regardless of whether the information sought is admissible, that is "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The following factors are relevant to a consideration of whether the scope of discovery is proportional:

(1) the importance of the issues at stake in the action,
(2) the amount in controversy,
(3) the parties' relative access to relevant information,
(4) the parties' resources,
(5) the importance of the discovery in resolving the issues, and
(6) whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1) (numbering added). A motion for a protective order is available to "a party or any person from whom discovery is sought." Fed. R. Civ. P. 26(c). The court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1)(G). Good cause for the issuance of a protective order is established with "specific facts showing 'clearly and defined and serious injury' resulting from the discovery sought and cannot rely on merely conclusory statements." *Nix. v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001) (quoting *Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C. 1987)).

Tennessee federal courts have granted protective orders where a company demonstrated specific, concrete financial harm from disclosure. *See Westgate Resorts, Ltd. v. Wesley Financial Group, LLC,* No. 3:20-cv-00599, 2021 WL 679293 at *1-2 (M.D. Tenn. Feb. 22, 2021) (granting protective order where disclosure of customer identities would contain sensitive commercial information that would cause competitive injury); *Diamond Resorts U.S. Collection Development,*

3

*LLC, v. Wesley Financial Group, LLC*, No. 3:20-CV-251-DCLC-DCP, 2021 WL 8443797 at *3 (E.D. Tenn. July 20 2021) (granting protective order where the information at issue would be "extremely valuable" to both competitors and developers); *Steede v. General Motors*, LLC No. 11-2351-STA-dkv, 2012 WL 2098 at *3 (W.D. Tenn. June 8, 2012) (granting protective order where "Defendant would suffer serious economic injury if the information was obtained by competitors" and was not "generally known" or "readily ascertainable by others[.]").

**B.      Good Cause Exists Under Rule 26(c) to Protect Unlock Health's Confidential Client Identities and Related Commercial Information.**

Unlock Health operates in a highly specialized segment of the U.S. healthcare marketing and communications sector and derives competitive value from the confidentiality of its client base and the stability of those relationships and client-specific HRA implementations. Client identities and details of the services provided are core competitively sensitive information that competitors can—and do—use to poach businesses, undercut pricing and infer strategy. Courts routinely recognize that customer lists, client identities, and related commercially sensitive data may constitute commercial information warranting protection from disclosure under Federal Rule of Civil Procedure 26(c). *See supra, Sec. I.A.*

Plaintiffs have issued subpoenas to some of Unlock Health's clients seeking Google Analytics and related technical materials. As served, these demands would necessarily expose the identities of Unlock Health's clients and reveal specific implementations, tagging strategies, and other commercially sensitive details. Disclosure of this information risks immediate competitive harm by revealing the roster of clients with whom Unlock Health has invested to build confidential relationships. *See* Declaration of Courtney Maul ("Maul Decl.") attached as Exhibit A at ¶ 4.

Unlock Health's client identities and related implementation details are a blueprint to its competitive strategy. Maul Decl. at ¶ 5. If disclosed, competitors could directly target those

4

relationships and reverse-engineer Unlock Health's market positioning. *Id.* The concrete and foreseeable resulting harms could consist of, but are not limited to, the following: (1) loss of renewal cycles and immediate revenue loss; (2) loss of prospective business; (3) pricing pressure; and (4) reputational harm in a regulated space. Maul Decl. at ¶ 6. These harms are not speculative. Plaintiffs' subpoenas by design, would compel disclosure of precisely the information that competitors value most: who Unlock Health's clients are and how Unlock Health executes on their behalf.

Further, proportionality and burden weigh in favor of protection for at least three reasons. First, Plaintiffs can and should obtain relevant information from party discovery, including from Unlock Health, in a tailored manner that avoids broadcasting client identities. Second, exploring certain technical aspects can be done through anonymized, aggregated, or sampled data that removes client-identifying information. Third, any incremental relevance of naming specific clients is substantially outweighed by the competitive and reputational harms Unlock Health will face should this information be revealed. However, since Unlock has a pending motion to dismiss and to strike the class allegations, Unlock will be seeking a stay of party and non-party discovery pending resolution of that motion.

Reasonable, less intrusive alternatives exist and should be ordered before any nonparty client disclosure is contemplated: anonymization of client names, redaction of client-identifying information, production under an Attorney's Eyes Only designation, and/or targeted sampling across a specified time frame. These measures preserve probative value, if any, while materially reducing the risk and burden.

Defendant respectfully requests this Honorable Court issue a protective order regarding the disclosure of such information—which is burdensome and disproportional to this litigation—and,

5

for the foregoing reasons, grant its motion for entry of a protective order and any other relief this

Court deems just and proper.

Dated: Knoxville, Tennessee
July 10, 2026

**WOOD, SMITH, HENNING & BERMAN, LLP**

By: */s/ Christopher J. Seusing*
Christopher J. Seusing, Esq. (Admitted *Pro Hac Vice*)
Sean V. Patel, Esq. (Admitted *Pro Hac Vice*)
William J. Roe, Esq.
800 S. Gay Street, Ste. 700
Knoxville, TN 37929
Tel.:  865-267-8050
Fax.:  865-267-8051
wroe@wshblaw.com
cseusing@wshblaw.com
spatel@wshblaw.com

*Counsel for Defendants Unlock Health, Inc. Medicom Digital, Inc. d/b/a Medicom Health Interactive And Medicom Health*

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2026, a copy of the foregoing was filed through the Court's CM/ECF system, which will send notification to all counsel of record registered to receive electronic service.

*/s/ Christopher J. Seusing*
Christopher J. Seusing

6