**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

---

JOHN DOE, JANE DOE, and JACK DOE,

Plaintiffs,

v.

UNLOCK HEALTH, INC., MEDICOM DIGITAL, INC. d/b/a MEDICOM HEALTH INTERACTIVE and MEDICOM HEALTH,

Defendants.

Case No. 3:26-cv-00289

**CLASS ACTION**

---

# [PROPOSED] STIPULATED ORDER ON ESI PROTOCOL

---

Before the Court is a stipulation for the entry of an Order governing the discovery of electronically stored information ("ESI") in the above-referenced matter. The Court having reviewed the stipulation, hereby orders the following:

## 1) PURPOSE

This Stipulated Order will govern discovery of ESI in this case as a supplement to the Federal Rules of Civil Procedure, the Local Rules of this Court, the Rules of Professional Conduct, and any other applicable orders and rules (the "Rules").

## 2) GENERAL PRINCIPLES

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter.

Nothing in this Stipulated Order shall be interpreted to require disclosure of information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. Except as expressly provided herein, the parties do not waive any objections as to

the production, discoverability, authenticity, admissibility, or confidentiality of any particular documents or ESI.

This Stipulated Order may be modified in the Court's discretion or by agreement of the parties for good cause shown. If the parties cannot resolve their disagreements regarding these modifications, the parties shall seek a resolution pursuant to the Federal Rules of Civil Procedure and this Court's Local Rules governing discovery disputes.

This Stipulated Order may only apply to the Parties in this matter.

**3) DEFINITIONS**

a. "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in the Federal Rules of Civil Procedure. The term "Document" shall include Hard-Copy Documents and ESI, as defined herein.

b. "Electronically Stored Information" or "ESI" means Documents or data existing in electronic form at the time of collection, including but not limited to: e-mail or other means of electronic communications, word processing files (e.g. Microsoft Word), computer presentations (e.g. PowerPoint slides), spreadsheets (e.g. Excel), image files (e.g. PDF), chat applications, text messages, and other ephemeral data sources.

c. "Hard-Copy Document" means Documents existing in paper form at the time of collection.

d. "Metadata" means (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage, and/or validity of the electronic file; (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system, (iii) information, such as Bates numbers, created during the course of processing documents or ESI for production, and (iv) information collected during the course of collecting documents or ESI, such as file names, file paths, system dates, name of the

media device on which it was stored, or the custodian or noncustodial data source from which it was collected.

e. “Native Format” means and refers to the format of ESI in which it was generated and/or as used by the producing party in the usual course of its business and in its regularly conducted activities. For example, the native format of an Excel workbook is .xls or .xlsx.

f. “Near-Native Format” means and refers to the format of ESI that preserves the functionality, searchability, and integrity of a Native Format item when it is infeasible or unduly burdensome to produce the item in Native Format, including where redactions to an otherwise Native Format item are made. For example, an MBOX is a suitable near-native format for production of Gmail, an Excel spreadsheet is a suitable near-native format for production of Google Sheets, and EML or MSG files may be suitable near-native formats for production of individual e-mail messages. Static images are not near-native formats for production of any form except Hard-Copy Documents.

g. “Optical Character Recognition” or “OCR” means the process of recognizing and creating a file containing visible text within an image.

**4) PRESERVATION**

The Parties have discussed their preservation obligations and preservation needs, and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the Parties agree that:

a. The Parties shall abide by their common law obligations to preserve relevant documents and information;

b. Pursuant to section 5 below, the parties will exchange a list of the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, e.g., “Compliance head,” “IT manager,” and “marketing manager.” The Parties may add or remove proposed custodians;

c. The Parties will meet and confer regarding the custodians for whom ESI will be preserved;

d. The Parties will disclose any data sources that are not reasonably accessible because of undue burden or cost pursuant to the Rules and whether ESI from these sources will be preserved but not searched, reviewed, or produced.

**5) ESI DISCLOSURES**

Per Administrative Order 174-1, each party shall disclose within 30 days of being served discovery demands:

a. **Data Custodians.** A list of the most likely custodians of discoverable electronically stored information (ESI) (including individual parties), together with each person's employer and job title.

b. **Non-Custodial Data Sources**. A list of any non-custodial data sources (e.g., shared drives, internal servers, enterprise databases or applications) over whom the party has authority likely to contain discoverable ESI.

c. **Non-Party Data Sources.** A list of any non-party data sources likely to contain discoverable ESI (e.g., third-party email and/or mobile device providers, vendors, contractors, ISPs, customers, social media providers).

d. **Inaccessible Data.** A list of any data sources likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2). ESI not reasonably accessible may include data created or stored in electronic media no longer in normal use, maintained in redundant electronic storage media, or for which retrieval involves disproportionate cost.

e. Notice of any known problems with electronic discovery.

Parties have a continuing obligation to identify any other custodial and non-custodial data sources likely to contain discoverable ESI and preserve them.

## 6) SEARCH METHODOLOGY

The Parties agree that in responding to an initial request pursuant to Fed. R. Civ. P. 34, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery, such as whether to use search terms.

If search terms are requested by the requesting party, the Parties must meet and confer in good faith regarding search terms and queries, file types and date restrictions, data sources and custodians. The Parties shall continue to cooperate in revising the appropriateness of the search methodology, such as by the producing party providing hit count reports. The producing party may identify each search term or query returning overbroad results demonstrating the overbroad results and provide a counter proposal as to revised searches or queries. In the event the Parties are unable to reach agreement on search terms, including as to the breadth of proportional document review efforts, the parties shall consider in good faith the possibility of a phased approach to document review and production efforts.

This Order does not preclude a requesting party from seeking information pertaining to a producing party's network design, types of databases, database dictionaries, access control lists and security access logs and rights of individuals to access systems and specific files and applications, the ESI document retention policy, organizational chart for information systems personnel, or the backup and systems recovery routines, including, but not limited to, tape rotation and destruction/overwrite policy.

If a party elects to use technology-assisted review ("TAR"), continuous-active learning, or other advanced technology-based analytics to cull unstructured ESI, that party will share the proposed parameters that will apply with opposing counsel, and the Parties will meet and confer regarding the appropriate parameters that will be utilized during the ESI review process. No party may employ technology-assisted review without agreement regarding the appropriate parameters from opposing counsel.

A producing party may always conduct a manual review for responsiveness and privilege, whether or not search terms or technology-aided review is also utilized.

To the extent a response to discovery requires production of discoverable ESI contained in a structured database, the parties shall meet and confer in an attempt to agree upon an appropriate form of production and potential methods of generating a report in a reasonably usable and exportable electronic file format for review by the requesting party. Upon review of the exported electronic file(s), the requesting party may make reasonable requests for additional information to explain the database schema, codes, abbreviations, and different report formats or to request specific data from identified fields. A potential approach to discovery involving structured database materials may involve the Parties meeting and conferring upon a set of queries to be made for discoverable information within the database.

**7) PRODUCTION FORMATS**

**Principles applicable to all productions of ESI and hard-copy documents**

a. The Parties agree to make rolling productions.

b. Documents will be produced to the requesting party in the formats addressed below under "Principles applicable to ESI" and "Principles applicable to hard-copy documents."

c. Each document file shall be named with a unique number (Bates Number). File names should not be more than twenty characters long or contain spaces.

d. **Parent-Child Relationships.** Entire Document families must be produced. Documents withheld for privilege or work product shall be replaced with a slipsheet or redacted. Producing parties reserve the right to meet and confer prior to a production if the production of non-responsive family documents requires extensive redaction and/or privilege review. If any part (parent or child) of a document family is responsive, then the Producing Party shall produce the entire family, except to the extent that any document in the family must be withheld or redacted on the basis of privilege or work-product protection. The Parties shall take reasonable steps to ensure that parent-child relationships within a document family (the association between an attachment and its parent document) are preserved, including any attachments to emails subsumed

within an email thread, files shared within chat or messaging threads, or comments to cloud document services (e.g., GSuite/Google Docs, Sharepoint, etc.). The child-document(s) should be consecutively produced immediately after the parent-document. Each document shall be produced with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family.

e. The producing party will determine, consistent with its common-law preservation obligations, whether hyperlinked documents are used by the proposed or actual custodians. If they are, the producing party will make reasonable efforts to preserve the hyperlinked documents for production. The parties will meet and confer in good faith regarding the preservation, collection, and/or search of hyperlinked documents.

f. The full text of each electronic document shall be extracted or OCRed ("Extracted Text") and produced in a text file. Document level extracted text or OCR for documents without extracted text will be provided by the producing party for every record, including for scanned hard copy documents as described above. Extracted text will not be provided for ESI that has been redacted because the extracted text would reveal the redacted information. Instead, these files will be OCRed to capture the visible text and those results will be provided in lieu of the original extracted text. The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with a unique Bates Number (e.g., the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

g. The parties are not obligated to populate manually any of the metadata fields set forth below if such fields cannot be reasonably extracted from a document with the exception of the following fields: (a) ProdBeg, (b) ProdEnd, (c) ProdBegAttach, (d) ProdEndAttach, and (e) AllCustodian, which should be populated regardless of whether the fields can be populated pursuant to an automated process. The parties reserve the right to request additional metadata fields should the party show good cause for the necessity of such additional metadata.

h. The parties agree that this Stipulated Order does not preclude a party from requesting the production of documents by inspection of hard copy documents as they are kept in the ordinary course of business.

i. Confidentiality: The parties have entered into a protective order in this matter which specifies various confidentiality treatment levels for use in this case. The confidentiality treatment level for any item will be provided with the created data for that item, in the field entitled "Confidentiality Treatment." For items with no confidentiality requirements, the field will be left blank. The producing party will brand any confidentiality endorsement in a corner on any image file representing the produced item. Those endorsements must be in a consistent font type and size and must not obscure any part of the underlying image or Bates number.

**Principles applicable to ESI.**

j. The Parties agree that, except as provided herein or otherwise agreed upon by the parties, ESI shall be produced in PDF or native format. If not feasible to produce in PDF or native, single-page Group IV TIFF, 300-dpi is another acceptable format. No matter the format, such productions shall be accompanied by Opticon and IPRO load files (or other generally acceptable load file format) that contains metadata fields identifying natural document breaks and also includes companion OCT and/or extracted text files. Each PDF, native, or TIFF file shall be given a unique file name that matches the Bates number label on first page of the document.

k. **Hidden Text.** Documents with hidden content, such as spreadsheets or presentations, shall be produced in native format with all content unhidden and notes displayed. If any such document must be produced in image file format, it shall be processed with all content unhidden and any notes displayed on the image. The Parties reserve all rights to meet and confer to request production of documents with hidden content in an alternate format.

l. If a document is more than one page, the Parties shall make reasonable efforts, consistent with reasonable industry practices, to provide the logical unitization of the document, any attachments, and/or affixed notes as they exist in the original document.

m. The Parties agree to produce documents using the Central Standard Time Zone.

n. **De-Duplication.** A producing party may de-duplicate electronic documents and is not obligated to extract or produce entirely duplicate ESI. Removal of duplicate documents shall only be done on either (1) exact duplicate documents based on MD5 hash values across custodians, or (2) emails that contain the same content, sender and recipients as other messages despite not having matching MD5 hash values such that they would be identified as "email duplicate spare messages" by the Relativity document review platform or an equivalent designation in an alternative document review platform. However, family relationships will be maintained and only exact email family groups, including email duplicate spare messages or equivalents, will be de-duplicated. No email attachment will be de-duplicated against a loose file. Global de-duplication across the entire collection will be employed. This eliminates duplicates to retain only one copy of each document per case. For example, if an identical document resides with three custodians, only the first custodian's copy will be included in the review set. The custodian field will list each custodian, separated by a semicolon, who was a source of that document, or alternatively the Producing Party may utilize a separate "All Custodians" field which identifies all custodians of the subject document.

o. **Email Threading.** In order to reduce the volume of entirely duplicative content within email threads, the Parties may utilize threading or "email thread suppression." As used in this Protocol, email thread suppression means employing commercially acceptable methods to reduce production of duplicative email threads by producing only the inclusive email messages and their attachments from each email thread. An email message is inclusive when it contains any non-duplicative content or has a document or set of documents attached that does not appear elsewhere within the email thread. Typically, an inclusive email will be either the longest, most recent in time email message containing all of the text from previous, earlier in time email messages within that same thread or an email message with attachments not otherwise attached to a later in time email within that same thread, but an email will be treated as inclusive when it contains non-duplicative content. Accordingly, exact duplicates of emails as well as email messages comprised of text identical to text contained within an inclusive email in the same

conversation will be suppressed and not produced, however responsive, non-duplicative attachments will be produced along with their conveying email message even when the text of that parent email message is fully represented in a longer, later in time email thread. The Parties will meet and confer about the production of lesser-included threads.

p. The Parties agree that the fields of metadata in Exhibit A shall be preserved, collected, and produced, only to the extent it is reasonably accessible and non-privileged. This list of metadata is intended to be flexible and may be changed by agreement of the parties, particularly in light of advances and changes in technology, vendor, and business practices.

q. Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheet, database, and audio or video, will be produced in native format, or near-native format. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents.

r. **Native Format.** The processed native for all spreadsheets (i.e. MS Excel, .CSF, or similar) and electronic information containing audio or video components should be produced and l inked to the database by the Metadata field "NativeLink." Where native files are produced in lieu of TIFF images, each native file will be assigned a unique Bates number. The Producing Party will produce a placeholder (a single-page TIFF slip sheet indicating that the native item was produced) along with the file itself in Native Format. The placeholder will be branded with the production number in the lower right hand corner and the phrase "PRODUCED IN NATIVE ONLY" branded in the center of the page. The Producing Party will also brand any confidentiality or similar endorsements in the lower left hand corner of the placeholder, and any confidentiality or other designations branded on the placeholder for such a document shall apply to the entire native file and its contents. For documents whose native format is MS Power Point, the original native files shall be produced with any comments and color preserved. If particular documents warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents. The relative path to the native file should be included in the

delimited text file and the produced files should be organized in a "Natives" folder in the production media.

s. The relative path to the native file should be included in the delimited text file and the produced files should be organized in a "NATIVES" folder in the production media.

t. All documents, native ESI, photographs, and video shall be produced in color if stored in color. Documents produced in color shall be produced as JPEG images, 300 dpi or higher and 24-bit color depth. Except as already specified herein, the parties agree to make a good faith effort to comply with reasonable and specific requests for the production of higher resolution or color images. Nothing in this order shall preclude a producing party from objecting to such requests as unreasonable in number, timing or scope, provided that a producing party shall not object if the document as originally produced is illegible or difficult to read. The producing party shall have the option of responding by producing a native-file version of the document. If a dispute arises with regard to requests for higher resolution or color images, the parties will meet and confer in good faith to try to resolve it.

u. **Custodian or Originating Source.** The Custodian shall be identified in the Custodian field of the database load files. Documents collected from a natural person that are within the Producing Party's possession, custody, and control should be produced in such fashion as to identify the natural person. Documents collected from non-custodial sources, such as corporate shared files, storage locations, or drives, not associated with an individual should be produced in such a fashion as to identify the department, group, entity, or facility from which the documents were collected. A Producing Party shall make reasonable efforts to use a uniform description of a particular Custodian across productions.

**Principles applicable to hard-copy documents.**

v. The parties agree that documents existing in hard copy form should be produced as PDF (or, if PDF is unavailable, in single-page Group IV, 300-dpi TIFF) format and accompanied by an Opticon and IPRO load file (or other generally acceptable load file format). Each PDF file will be given a unique file name that matches the Bates number label on the corresponding page.

The accompanying load file shall contain, at a minimum, (a) ProdBeg, (b) ProdEnd, (c) AttachProdBeg, (d) AttachProdEnd and (e) custodian name, to the extent available. The full extracted or OCR text should be included and produced at a document level and located in the same folder as their respective document image or OCR/TEXT folder.

v. The Parties agree that documents existing in hard copy form may be produced in searchable PDF if the parameters in paragraph (t) are unduly burdensome and not proportionate to the needs of the case. The Producing Party must meet and confer with the Requesting Party before producing in searchable PDF and present its position. Each PDF file will be given a unique file name that matches the Bates number label on the first page of the document.

w. The Parties will undertake best efforts to unitize documents correctly. In scanning hard-copy documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized).

x. Text of hard-copy documents shall be extracted using industry-standard OCR technology. Text files shall not contain the redacted portions of the documents. Each of the Metadata and coding fields set forth in Appendix A attached hereto shall be produced for that Hard Copy Document to the extent reasonably available.

y. Responsive hard copy documents shall not be eliminated as duplicates of responsive ESI.

z. **Parent-Child Relationship**. If any part of a Hard Copy Document or its attachments is responsive, the entire document and attachments must be produced, except for any attachments that may be withheld or redacted on the basis of any privilege or work-product or other protection. The Parties shall take reasonable steps to ensure that parent-child relationships within a document family (the association between an attachment and its parent document) are preserved, including attachments to any Hard Copy Documents. The child-document(s) should be consecutively produced immediately after the parent-document. Each document shall be produced with the production number for the first and last page of that document in the "BegBates" and

"EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family

**8) DOCUMENTS PROTECTED FROM DISCOVERY**

The obligation to provide a log of privileged or work product materials presumptively shall not apply to: (a) Attorney work product created by Outside Counsel for the Parties regarding this litigation created after notice of the claims identified in the first complaint; (b) Internal communications within Outside Counsel for the Parties regarding this litigation created after notice of the claims identified in the first complaint; (c) Communications between Outside Counsel and the party they represent regarding this litigation after notice of the claims identified in the first complaint. The Parties agree to confer regarding other categories of information that may be excluded from logging requirements.

The Parties agree that, except as provided herein regarding presumptively privileged documents and ESI, they will produce privilege logs and will exchange information regarding claims of privilege and/or work product protection within 30 days of a production. The Parties will meet and confer to determine a different timeline and/or format for production of a log, if necessary.

For documents and ESI that have been withheld or redacted as privileged, the withholding or redacting party shall provide a privilege log of such documents and ESI, providing the following objective metadata to the extent it is reasonably available: date, author(s), custodian(s), recipient(s), file type, and subject (to the extent the subject does not reveal protected content). In addition, the withholding or redacting party shall also provide for each document on their privilege log an identifier for the privilege being asserted (e.g., "ACP" for attorney client privilege, "WP" for work product, or other descriptions as necessary based on the specific privilege being claimed), the document's Bates numbers or other unique identifier, and a description of the nature of the privileged or protected material in such a way that will enable other parties to assess the claim.

Documents redacted for privilege need not be logged as long as the reason for the redaction is apparent on the face of the unredacted document.

The Parties reserve the right to request additional information regarding individual documents on the privilege log.

**a. Limitations and Non-Waiver**

**(i) No Waiver by Disclosure.** This Order is entered pursuant to Rule 502(d) of the Federal Rules of Evidence. Subject to the provisions of this Order, if a party (the "Producing Party") discloses information in connection with the pending litigation, that the Producing Party thereafter claims to be protected by the attorney-client privilege and/or trial preparation material protection ("Protected Information"), the disclosure of that Protected Information will not constitute or be deemed a waiver or forfeiture any other proceeding in this or any other federal, state, arbitration, or of any claim of privilege or protection as trial preparation material that the Producing Party would otherwise be entitled to assert with respect to the Protected Information and its subject matter. This Section shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d) with regard to Privileged Documents. The Parties agree that, unless expressly provided for herein, Fed. R. Evid. 502(b) shall not apply to any disputes regarding Privileged Documents that are produced in this litigation.

**(ii) Notification Requirements; Best Efforts of Receiving Party.** A Producing Party must promptly notify the party receiving the Protected Information (the "Receiving Party"), in writing that it has disclosed the Protected Information without intending a waiver by the disclosure. The notification by the Producing Party shall include as specific an explanation as possible why the Protected Information is covered by the attorney-client privilege and/or constitutes trial preparation material. Upon such notification, the Receiving Party must unless it contests the claim of attorney-client privilege or protection as trial preparation material in accordance with paragraph (3) promptly (a) notify the Producing Party that it will make best efforts to identify and return, sequester or destroy (or in the case of electronically stored information, delete) the Protected Information and any reasonably accessible copies it has and (b) provide a certification that it will cease further review, dissemination and use of the Protected Information. For purposes of this Order, Protected Information that has been stored on a source of ESI that is not reasonably

accessible, such as backup storage media, is sequestered. If such data is retrieved, the Receiving Party must promptly take steps to delete or sequester the restored Protected Information.

**(iii) Contesting Claims of Privilege or Protection as Trial Preparation Material.** If the Receiving Party contests the claim of attorney-client privilege or protection as trial preparation material, the Receiving Party must within 30 days of receipt of the notification referenced in Paragraph (ii) move the Court for an Order finding that the material referenced in the notification does not constitute Protected Information. This Motion must be filed (with Court approval) under seal and cannot assert the fact or circumstance of the disclosure as a ground for determining that the material does not constitute Protected Information. Pending resolution of the Motion, the Receiving Party must not use the challenged information in any way or disclose it to any person other than as required by law to be served with a copy of the sealed Motion.

**(iv) Stipulated Time Periods.** The Parties may stipulate to extend the time periods set forth in subparagraphs (ii) and (iii).

**(v) Burden of Proving Privilege or Protection as Trial Preparation Material.** The Disclosing Party retains the burden upon challenge pursuant to Paragraph (iii) the privileged or protected nature of the Protected Information.

**(vi) In Camera Review.** Nothing in this Order limits the right of any party to petition the Court for an in camera review of the Protected Information.

**(vii) Voluntary and Subject Matter Waiver.** This Order does not preclude a party from voluntarily waiving the attorney-client privilege or trial preparation material protection. The provisions of Federal Rule of Evidence 502(a) apply when the Disclosing Party uses or indicates that it may use information produced under this Order to support a claim or defense.

**(viii) Rule 502(b)(2).** The failure to take reasonable steps to prevent the disclosure shall not give rise to a waiver of the privilege.

**9) DISCOVERY FROM EXPERTS OR CONSULTANTS**

a. Drafts of reports of testifying Experts, and reports and other written materials, including drafts, of consulting Experts, shall not be discoverable.

b. Draft reports and materials exempt from the discovery under the foregoing Paragraph shall be treated as attorney work product for the purposes of this case and Protective Order.

**10) MODIFICATIONS**

a. Any practice or procedure set forth herein may be varied in the future by an agreement of the Parties, and first will be confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of electronic data or other covered discovery materials.

b. Should any Party subsequently determine in good faith that it cannot proceed as required by this Order or that the Order requires modification, the Parties will meet and confer to resolve any dispute before seeking Court intervention.

c. **Modification by Court.** This Order is subject to modification by the Court, and the Court may modify this Order *sua sponte* in the interests of justice. this Court is responsible for the interpretation and enforcement of this Order. All disputes concerning Protected Material, however designated, produced under the protection of this Order shall be resolved by the Court.

**11) MISCELLANEOUS**

a. **Burdens of Proof.** Notwithstanding anything to the contrary above, nothing in this Protective Order shall be construed to change the burdens of proof or legal standards applicable in disputes regarding whether Discovery Material is confidential, which level of confidentiality is appropriate, whether disclosures should be restricted, and if so, what restrictions should apply.

b. **Source Code.** In the event that Source Code discovery is sought, the Parties agree to reserve their respective positions. Any Source Code produced shall be subject to the terms of the Protective Order.

c. **Subpoenas and Third-Party Discovery.** In the event that Subpoenas are issued and Third-Party Discovery commences, and materials generated or produced shall be subject to the terms of the Protective Order.

**IT IS SO STIPULATED.**

Date: August 17, 2026

*/s/ J. Gerard Strach*
J. Gerard Stranch
Grayson Wells
**STRANCH, JENNINGS, & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Telephone: (615) 254-8801
Facsimile: (615) 255-5419
gstrach@strachlaw.com

Foster C. Johnson
Joseph Ahmad
**AHMAD, ZAVITSANOS, & MENSING, PLLC**
1221 McKinney, Suite 2500
Houston, Texas 77010
Telephone: (713) 655-1101
Facsimile: (713) 655-0062

*Counsel for Plaintiffs*

Date: August 17, 2026

*/s/ Christopher Brown*
Christopher Brown
**WOOD SMITH HENNING & BERMAN LLP**
800 S Gay St., Suite 700
Telephone: (865)-267-8050
crbown@wshblaw.com

*/s/ Christopher Seusing*
Christopher J. Seusing
Alesandra R. Greco
**WOOD SMITH HENNING & BERMAN LLP**
33 Riverside Avenue, Suite 502
Westport, CT 06880
Telephone: (475) 245-9880
spatel@wshblaw.com
agreco@wshblaw.com

*Counsel for Defendants*

**IT IS SO ORDERED.**

________________________________
LYNDA M. HILL
United States Magistrate Judge

# EXHIBIT A

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| DOCID/IMAGEFILENAME | Unique identifier |
| PRODBEG | First Page document number |
| PRODEND | Last Page document number |
| PRODBEGATT | First Page of Family group range number |
| PRODENDATT | Last Page of Family group range number |
| CUSTODIAN | All record owners of the file from whom the data was collected, including copies identified during global deduplication. |
| ALLCUSTODIAN | All custodians who were in possession of a de-duplicated document besides the individual identified in the Custodian field |
| HASH VALUE | A unique, identifying number of a file calculated by a hash algorithm, e.g. MD5. |
| FROM | Email Sender |
| TO | Email Recipient(s) |
| CC | Email Recipient(s) that were Copied |
| BCC | Email Recipient(s) that were Blind Copied |
| SUBJECT | Subject line of emails |
| THREADID | Identification of email threads |
| PARENTID | Identification of email parent relationships |
| FILENAME | Name of file |
| DATESENT | Email sent date |
| TIMESENT | Email sent time |

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| DATERECEIVED | Email received date |
| TIMERECEIVED | Email received time |
| DATESAVED | Save date |
| TIMESAVED | Save time |
| DATELASTPRINT | Date last printed |
| TIMELASTPRINT | Time last printed |
| FILEEXT | File extension of document |
| AUTHOR | Author information as derived from the properties of the document |
| COMPANY | Company that supplied the ESI in its raw format |
| TITLE | Title from document metadata (if applicable) |
| DATECREATED | Date document was created on non-emails |
| TIMECREATED | Time document was created on non-emails |
| DATEMODIFIED | Last date document was modified on non-emails |
| TIMEMODIFIED | Last time document was modified on non-emails |
| FILESIZE | Size of Native file |
| PGCOUNT | Number of pages in document |
| OCRPATH | Path to extracted text of native file or OCR |
| NATIVELINK | Path to email or native file document (if applicable) |
| ORIGINALPATHFOLDER | Path including filename |
| REDACTED | Whether the document contains redactions |

## CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2026, a copy of **[Proposed] Stipulated Order on ESI Protocol** was filed through the Court's CM/ECF system, which will send notification to all counsel of record registered to receive electronic service.

*/s/ Christopher J. Seusing*
Christopher J. Seusing