**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

---

JOHN DOE, JANE DOE, and JACK DOE,
Individually and on behalf of all others
similarly situated,

Case No. 3:26-cv-00289

Plaintiffs,

v.

UNLOCK HEALTH, INC., MEDICOM
DIGITAL, INC. d/b/a MEDICOM HEALTH
INTERACTIVE and MEDICOM HEALTH,

Defendants.

---

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE PUTATIVE CLASS ACTION COMPLAINT, OR IN THE ALTERNATIVE, MOTION TO STRIKE THE PUTATIVE CLASS ALLEGATIONS**

---

TABLE OF CONTENTS

TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

RELEVANT FACTS ALLEGED IN THE COMPLAINT ........ 2

I. Unlock Health is obligated to protect patients' PHI against unauthorized disclosures. ..... 2

II. Unlock Health violated patients' privacy rights by sharing their PHI with Google. .......... 4

ARGUMENT ........ 5

I. Unlock Health's standing argument ignores the Complaint's allegations. ........ 5

II. Medicom is subject to personal jurisdiction under Sixth Circuit precedent. ........ 7

III. Plaintiffs' allegations are more than sufficient to satisfy Rule 12(b)(6). ........ 9

A. Plaintiffs sufficiently pled their ECPA claim. ........ 9

B. Plaintiffs have stated a valid CIPA claim under California law. ........ 12

C. Plaintiffs have stated a valid CMIA claim under California law. ........ 13

1. Defendants are healthcare providers under the CMIA. ........ 13

2. Plaintiffs properly alleged that third parties viewed, accessed, and used their data. ........ 15

D. Plaintiffs have validly stated claims both common law invasion of privacy and invasion of privacy claim under the California constitution. ........ 16

E. Plaintiffs have stated a valid claim for willful deceit under §§ 1709 & 1710. .......... 18

F. Plaintiffs have pled a valid § 638.51 claim. ........ 19

G. Plaintiffs have pled a valid unjust enrichment claim. ........ 20

H. Plaintiffs have pled a valid claim under § 18 U.S.C. 2512. ........ 21

I. Plaintiffs have stated a valid negligence claim. ........ 22

IV. Unlock Health's request to strike the class allegations is baseless and premature. .......... 23

CONCLUSION ........ 25

# TABLE OF AUTHORITIES

Cases

*AMB Media, LLC v. OneMB*, LLC,
2024 WL 2052151 (6th Cir. May 8, 2024) .......... 8

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) .......... 23

*Barbour v. John Muir Health*,
2023 WL 2618967 (Cal. Super. Jan. 05, 2023) .......... 15

*Bird v. Parsons*,
289 F.3d 865 (6th Cir. 2002) .......... 7, 8

*Carrico v. Uponor, Inc.*,
2025 WL 967542 (M.D. Tenn. Mar. 31, 2025) .......... 25

*Collins v. Toledo Blade*,
720 F. Supp. 3d 543 (N.D. Ohio 2024) .......... 6

*Cooper v. Mount Sinai Health Sys., Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024) .......... 9

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) .......... 19

*Coulter-Owens v. Time Inc.*,
695 Fed. Appx. 117 (6th Cir. 2017) .......... 5

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) .......... 15

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) .......... 16, 17

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) .......... 9, 21

*E.H. v. Meta Platforms, Inc.*,
2024 WL 557728 (N.D. Cal. Feb. 12, 2024) .......... 9

*Eight Mile Style, LLC v. Spotify USA Inc.*,
2020 WL 1640425 (M.D. Tenn. Apr. 2, 2020) .......... 7

*Fishon v. Mars Petcare US, Inc.*,
501 F. Supp. 3d 555 (M.D. Tenn. 2020) .......... 24, 25

*Foster v. Health Recovery Services, Inc.*,
493 F. Supp. 3d 622 (S.D. Ohio 2020)....... 6

*Gabrielli v. Haleon US Inc.*,
815 F. Supp. 3d 852 (N.D. Cal. 2025) ....... 20

*Gay v. Garnet Health*,
2024 WL 4203263 (S.D.N.Y. Sept. 16, 2024) .......11

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023)....... 19

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*,
61 Cal. 4th 988, 353 P.3d 319 (2015) ....... 20

*Clausing v. San Francisco Unified School Dist*rict
221 Cal. App. 3d 1224 (1990)....... 17

*In re Accellion, Inc. Data Breach Litig.*,
713 F. Supp. 3d 623 (N.D. Cal. 2024) ....... 14

*In re Am. Med. Sys., Inc.*,
75 F.3d 1069 (6th Cir. 1996)....... 24

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020).......11, 17, 20

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) ....... 23

*In re Meta Pixel Tax Filing Cases*,
793 F. Supp. 3d 1147 (N.D. Cal. 2025)....... 19, 20

*J.M. v. Illuminate Educ., Inc.*,
588 P.3d 611 (Cal. 2026)....... 15

*Jarrell v. Adena Health Sys.*,
2025 WL 81305 (S.D. Ohio Jan. 13, 2025) ....... 9, 12

*Katzberg v. Regents of Univ. of California*,
29 Cal. 4th 300, 58 P.3d 339 (2002) ....... 17

*Luis v. Zang*,
833 F.3d 619 (6th Cir. 2016)....... 21, 22

*M.G. v. Therapymatch, Inc.*,
2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) ....... 12

*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024) ....................11

*Neogen Corp. v. Neo Gen Screening, Inc.*,
282 F.3d 883 (6th Cir. 2002) .................... 9

*Oaks v. Largo Bioscience, Inc.*,
2022 WL 765506 (M.D. Tenn. Mar. 11, 2022) .................... 8

*Oddei v. Optum, Inc.*,
2021 WL 6333467 (C.D. Cal. Dec. 3, 2021) .................... 14

*Operating Eng'rs Loc. 324 Health Care Plan v. G & W Const. Co.*,
783 F.3d 1045 (6th Cir. 2015) .................... 24

*Porten v. University of San Francisco*,
64 Cal. App. 3d 825 (1976) .................... 17

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) .................... 17, 20, 21

*Regents of U. of California v. Super. Ct.*,
163 Cal. Rptr. 3d 205 (Cal. App. 2d Dist. 2013) .................... 15

*Rodriguez v. Google LLC*,
772 F. Supp. 3d 1093 (N.D. Cal. 2025) .................... 17

*Roe v. Amgen Inc.*,
2024 WL 2873482 (C.D. Cal. June 5, 2024) .................... 15

*S.D. v. Hytto Ltd.*,
2019 WL 8333519 (N.D. Cal. May 15, 2019) .................... 12

*Salazar v. Nat'l Basketball Ass'n*,
118 F.4th 533 (2d Cir. 2024) .................... 6

*Salazar v. Paramount Glob.*,
133 F.4th 642 (6th Cir. 2025) .................... 5, 6

*Sanders v. Apple Inc.*,
672 F. Supp. 2d 978 (N.D. Cal. 2009) .................... 25

*Schneider v. Hardesty*,
669 F.3d 693 (6th Cir. 2012) .................... 9

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) .................... 16

*Stein v. Edward-Elmhurst Health*,
2025 WL 580556 (N.D. Ill. Feb. 21, 2025)........................................................................ 12

*Strong v. LifeStance Health Grp. Inc.*,
2025 WL 317552 (D. Ariz. Jan. 28, 2025)......................................................................... 12

*Stuart v. Cnty. of Riverside*,
2024 WL 3086634 (C.D. Cal. June 14, 2024) .................................................................... 18

*Sutter Health v. Superior Ct.*,
227 Cal. App. 4th 1546, 174 Cal. Rptr. 3d 653 (2014) ........................................................ 15

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)............................................................................................................ 5

*User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ................................................................................ 23

*Vigil v. Muir Med. Group IPA, Inc.*,
84 Cal. App. 5th 197 (2022)................................................................................................ 15

*Wesley v. Campbell*,
779 F.3d 421 (6th Cir. 2015) ............................................................................................... 10

Statutes

18 U.S.C. § 2511 ................................................................................................................ 10
18 U.S.C. § 2512.................................................................................................................. 21
18 U.S.C. § 2520.................................................................................................................. 21
18 U.S.C. § 2520(a) ............................................................................................................. 10
18 U.S.C. §§ 2511(b) and 2520(a) ......................................................................................11
42 U.S.C. § 1320d-6 ............................................................................................................ 12
42 U.S.C. § 1320d-6(a)-(b) .................................................................................................... 3
Cal. Bus. & Prof. Code §§ 17200 ........................................................................................ 25
CAL. CIV. CODE § 56.06(a)(b)....................................................................................... 13, 14
CAL. CIV. CODE § 1709 ....................................................................................................... 19
Cal. Penal Code § 631(a) ..................................................................................................... 13
Cal. Penal Code § 638.51 ............................................................................................... 19, 20
California Constitution, article I, section I..................................................................... 17, 18
28 U.S.C. § 2512(1)(b) ........................................................................................................ 21

Regulations

45 CFR § 160.103 ................................................................................................................. 3
45 CFR § 160.502(a).............................................................................................................. 3
45 CFR § 160.502(a)(3).......................................................................................................... 3
45 CFR § 164.508(3) ............................................................................................................. 3

45 CFR § 164.514(b)(2)(i) .......... 3

## INTRODUCTION

Unlock Health's motion to dismiss begins with an egregious falsehood and goes downhill from there.[1] Unlock Health claims that Plaintiffs concede it was solely "Defendants' healthcare clients who allegedly violated the Health Insurance Portability and Accountability Act ('HIPAA') by allegedly deploying Google Analytics source code within Health Risk Assessments ('HRA's) that Plaintiffs' completed." Mot. 1. Most of Unlock Health's arguments are premised on this fiction. But nothing could be further from the truth.

What Plaintiffs allege is that *Unlock Health* deployed Google Analytics inside the HRAs it offered the public. *See* Compl. ¶ 55 ("Unlock Health intentionally incorporated numerous analytics tracking tools into its HRA forms, including Google Analytics and Google Double Click."). As a consequence, patients' names, email addresses, their health conditions, their patient status, their HRA scores, and other protected health information ("PHI") were routinely disclosed to Google without patients' consent. *Id.* ¶¶ 22, 76-78, 173, 188, 391. Plaintiffs allege that Unlock Health violated HIPAA (as well as numerous federal and state privacy laws) by sharing patients' PHI with Google. *Id*. ¶¶ 10-14; 268-287; 296.

Plaintiffs further allege that "Unlock Health *also* actively encouraged its healthcare clients to deploy their own Google Analytics and other tracking technologies on the online Unlock Health HRAs." *Id.* ¶ 49, ¶ 204. That Unlock Health assisted clients in violating HIPAA, however, does not negate Unlock Health's liability for deploying its own Google Analytics tracking pixels on the HRAs it offered the public. Unlock Health is equally culpable for both.

[1] For purposes of convenience, Defendants Unlock Health, Inc., Medicom Digital, Inc., and Medicom Health are collectively referred to as "Unlock Health," except where expressly noted.

Unlock Health promised it would ensure the "secure handling of data with HIPAA compliance," *Id.* ¶ 8, then did the opposite. The tracking technologies Unlock Health deployed inside its HRAs shared patients' medical conditions and HRA scores with Google, along with data that allowed Google to identify them. Worse, Unlock Health disclosed this data *knowing* that Google would misuse patients' health data for advertising purposes. *Id.* ¶ 65.

Rather than address the substance of Plaintiffs' claims, Unlock Health's motion relies on its own version of the facts. But Unlock Health cannot dispute Plaintiffs' well-pled allegations in a motion to dismiss. And its legal arguments, which substantively misstate the relevant case law, are without merit. Accordingly, the Court should deny Unlock Health's motion to dismiss.

## RELEVANT FACTS ALLEGED IN THE COMPLAINT

### I. Unlock Health is obligated to protect patients' PHI against unauthorized disclosures.

Unlock Health, Inc. and its subsidiary, Medicom Health, Inc. (collectively, "Unlock Health") are healthcare-focused digital marketing agencies, who specialize in patient acquisition and engagement. *Id.* ¶¶ 4, 34. They provide services for healthcare systems across the United States, including in Tennessee. *Id.* Both companies are owned by hedge funds. *Id.* ¶¶ 3, 25.

Defendants' flagship products are health risk assessment forms that patients are encouraged to fill out online. *Id.* ¶ 5. These include assessments for many of the most sensitive health conditions imaginable, including anxiety, depression, substance abuse, cancer, and bladder control. *Id.* Defendants' clients encourage patients to fill out these forms, which require patients to enter detailed medical histories. *Id.* ¶¶ 5, 161-171. After completing the HRAs, patients receive a health risk "score," which typically evaluates a patient's potential risk for a medical condition such as lung cancer as "high," "medium," or "low." *Id.* ¶ 6. Patients who complete HRAs are then contacted by marketing employees, who encourage them to become paying customers. *Id.*

Under HIPAA, PHI means individually identifiable information that relates to (1) a patient's past, present, or future health condition or (2) the provision of healthcare to an individual. 45 CFR § 160.103. Information such as an individual's patient status, the fact that they completed a specific HRA like "Heart Health," and their HRA score are textbook examples of PHI. Compl. ¶ 39. HIPAA likewise prohibits sharing such information without consent when the data contains identifiers such as patients' names, email addresses, URLs, IP addresses, or other electronic identifiers (such as a patients' Google account ID). 45 CFR § 164.514(b)(2)(i). Companies like Unlock Health are criminally liable for disclosing PHI without authorization for "commercial advantage" or "personal gain." 42 U.S.C. § 1320d-6(a)-(b).

As companies who provide "data transmission services" to healthcare providers, Defendants operate as "business associates" under HIPAA, which requires them to maintain the confidentiality of patients' PHI. 45 CFR § 160.103; 45 CFR § 160.502(a). Business associates like Unlock Health are liable under HIPAA for impermissible uses and disclosures of PHI. 45 CFR § 160.502(a)(3). Such impermissible uses include sharing health data for "marketing" purposes without patients' express written consent. 45 CFR § 164.508(3).

In 2022, the United States Department of Health and Human Services issued a bulletin cautioning both hospitals and business associates alike that they could not share health information with "tracking technology vendors" like Google unless the vendor had signed a "business associate agreement" (BAA) to ensure that health information is protected in accordance with HIPAA. Compl. ¶ 13. Google, however, not only refuses to sign BAAs, but expressly warned Unlock Health that Google Analytics should never be deployed on online forms like HRAs "in any way that implicates Google's access to, or collection of, PHI" and that customers "may only use Google Analytics on pages that are not HIPAA-covered." *Id.* ¶ 14

## II. Unlock Health violated patients' privacy rights by sharing their PHI with Google.

Unlock Health promised the public that it "partners" with healthcare providers to ensure "secure handling of data with HIPAA compliance." *Id.* ¶ 8. That representation was false. Despite promising to protect patients' health information, Unlock Health routinely disclosed patients' HRA data to Google. *Id.* ¶¶ 9-11, 47-48. It did so by deploying Google tracking technologies on its online HRA forms, including Google Analytics and Google Double Click. *Id.* ¶¶ 55, 202. By embedding these technologies in online HRAs, Unlock Health captured and transmitted patients' health communications in "real time," giving advertisers the data they needed to identify patients and their health conditions for purpose of selling targeting advertising. *Id.* ¶¶ 10-12, 51, 175-176.

The PHI Defendants shared with Google included data such as patients' names, email addresses, IP addresses, cookies identifying patients' Google account, the hospitals where they were being treated, the specific HRA forms patients accessed and filled out, and patients' HRA scores. *Id.* ¶¶ 21-23, 97, 175-175, 186, 196, 198. Defendants deployed tracking technologies on their HRAs knowing that Google would use patient data for advertising. *Id.* ¶¶ 10, 51, 158, 328-329. In return, Unlock Health received advertising and analytics benefits. *Id.* ¶¶ 118, 328, 461.

Defendants *also* encouraged its healthcare clients to deploy their own tracking technologies on HRA forms. ¶ 49. Defendants configured their HRA forms to enable clients to deploy these technologies via Google Tag Manger, allowing clients to share patients' PHI with a variety of tech companies, including Facebook, Tik Tok, LinkedIn, and Google. ¶¶ 10, 204. Defendants also provided detailed guidance and assistance to clients regarding how they could deploy additional tracking pixels on its HRAs. ¶¶ 204, 380. Those clients who did so included, for example, Temecula Valley Hospital, Inova Health, and Ochsner Health. ¶¶ 21-23; 159-197.

Plaintiffs are patients who filled out Unlock Health HRAs as part of the treatment provided by their doctors. ¶¶ 159-97. When they did so, tracking technologies deployed by Unlock Health

and its clients shared their PHI with Google, including their names, email addresses, health conditions, Google accounts identifiers, and their HRA scores. *Id.* After Unlock Health shared this information with Google, Plaintiffs began receiving advertising targeted to their specific medical conditions. *Id.* ¶¶ 177, 190, 197. For example, Plaintiff John Doe filled out a Heart Health Risk Assessment offered by Temecula Valley Hospital. *Id.* ¶ 164. Afterwards, he began receiving targeted ads on his social media accounts, including advertisements for blood pressure medications, cholesterol medications, and stroke prevention treatments. *Id.* ¶ 177.

Plaintiffs were never told that their PHI was being shared with Google. *Id.* ¶¶ 173, 186, 196. Their PHI is now in the hands of multiple tech companies, who continue to sell and resell this information for advertising purposes. *Id.* ¶¶ 211-252, 384, 406.

## **ARGUMENT**

### I. Unlock Health's standing argument ignores the Complaint's allegations.

To establish Article III standing, "a plaintiff must plead an injury in fact attributable to the defendant's conduct and redressable by the court." *Salazar v. Paramount Glob.*, 133 F.4th 642, 646 (6th Cir. 2025). Intangible "harms" such as the privacy violations alleged here constitute injuries because they have "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021).

Unlock Health's standing challenge rests on the fiction that it was only Unlock Health's *clients* "who deployed the Google source code within the HRAs." Mot. 7. Not so. Plaintiffs allege that Defendants themselves "knowingly and secretly deployed Google source code inside its HRAs" and thereby "betrayed patients' fundamental privacy rights." Compl. ¶¶ 73, 158, 9-11, 55. Such allegations are sufficient to confer Article III standing. *See Salazar*, 133 F.4th at 647; *accord Coulter-Owens v. Time Inc.*, 695 Fed. Appx. 117, 121 (6th Cir. 2017) ("[T]he disclosure of [protected private] information is a cognizable injury in fact for purposes of Article III standing").

*Salazar* and *Coulter-Owens* are consistent with rulings from district courts in this Circuit, as well as rulings from sister circuits in similar cases. *See Foster v. Health Recovery Services, Inc.*, 493 F. Supp. 3d 622, 633–34 (S.D. Ohio 2020) (finding plaintiff alleged an Article III injury by pleading a statutory violation "through the disclosure of his sensitive medical information to a third party."); *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 542 (2d Cir. 2024), ("allegation[s] . . . that [plaintiff's] personally identifiable information was exposed to an unauthorized third party" via pixel tracking was sufficient to confer Article III standing); *Collins v. Toledo Blade*, 720 F. Supp. 3d 543, 550-51 (N.D. Ohio 2024) (same).

As in *Salazar*, Plaintiffs allege that "the tracking technologies Unlock Health configured and deployed in the HRA forms intercepted and shared patients' and prospective patients' Personal Health Information with a host of third parties, including Facebook, Google, and Tik Tok." Compl. ¶ 198. Indeed, the data Unlock Health shared includes highly sensitive information such as patients' health risk assessment scores, their specific medical conditions, their patient status, identifying information such as their names, email addresses, IP addresses, browser fingerprints, and information sufficient to show specific Google user accounts. *Id.* Plaintiffs' health information is far more sensitive than video-viewing history, the sharing of which was deemed sufficient to constitute a cognizable injury in *Salazar*. And, like *Salazar*, Plaintiffs also allege that Unlock Health installed these trackers on its HRA forms, which satisfies Article III's traceability requirement. *Compare Salazar*, 133 F.4th at 647 *with* Compl. ¶¶ 9-11, 55 63, 73, 75-44, 96, 158. Finally, as in *Salazar*, an award of damages would redress Plaintiffs' injuries. 133 F.4th at 647-48.

Contrary to Defendants' argument, (Mot. 7), the Complaint contains substantial detailed factual allegations regarding specific data Defendants disclosed from each Plaintiff, the specific webpages from which Defendants disclosed it, and the specific methods Defendants used to collect

and share this data with third parties. Compl. ¶¶ 165–204. Because each of Article III's elements are satisfied, Defendants' motion should therefore be denied.

## II. Medicom is subject to personal jurisdiction under Sixth Circuit precedent.

Medicom argues that it is not subject to personal jurisdiction because it is headquartered in Minneapolis and Plaintiffs are from Virginia, Louisiana, and California. Mot. 8-9. That argument ignores both Plaintiffs' allegations and binding Sixth Circuit precedent.

As the Sixth Circuit explained in *Bird v. Parsons*, 289 F.3d 865, 874-75 (6th Cir. 2002), an out-of-state defendant like Medicom is subject to personal jurisdiction where (1) the defendant "purposely availed" itself of the privilege of acting in the forum state, (2) the "defendant's contacts with the forum state are related to the operative facts of the controversy," and (3) the exercise of personal jurisdiction is reasonable. All three factors are met here.

**First**, in the Sixth Circuit, the "operation of an internet website" satisfies "the purposeful availment" factor, if "the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Bird,* 289 F.3d 874; *Eight Mile Style, LLC v. Spotify USA Inc*., 2020 WL 1640425, at *6 (M.D. Tenn. Apr. 2, 2020) ("[O]peration of an internet website can constitute… purposeful availment."). Here, Plaintiffs specifically allege that Medicom has operated and marketed its services "throughout this District," including via Evalia-branded HRAs that Medicom has offered to citizens of this District," including patients' of TriStar Health. Compl. ⁋ 34. The Complaint further provides that Medicom made its HRAs available to Tennessee residents via its evailahealth.com website, including the client portal located at http://portal.evaliahealth.com, *Id.* ¶¶ 5, 30-31, 72, 165, 172, and that patients who filled out HRAs were emailed their scores "from no-reply@evailiahealth.com." *Id.* ¶ 46.

There is no dispute that Medicom's website is interactive. Medicom describes its HRA product as an "evidence-based HRA platform" that can "collect actionable data[,]" which is "made

available to clients via a powerful backend so marketers can make the most out of every HRA completion." *Id.* ¶ 29. The Complaint details at length the interactive process by which Medicom gathers patient data via its online HRAs. *Id.* ¶¶ 165-172. Nothing more is required to demonstrate "purposeful availment." *Oaks v. Largo Bioscience, Inc*., 2022 WL 765506, at *7 (M.D. Tenn. Mar. 11, 2022) (interactive website sufficient to satisfy personal jurisdiction standard for out-of-state defendant). Having targeted Tennessee citizens with its online HRAs, Medicom cannot complain that it is subject to personal jurisdiction in a Tennessee court. *AMB Media, LLC v. OneMB*, LLC, 2024 WL 2052151, at *6 (6th Cir. May 8, 2024) (serving Tennessee customers via website sufficient for specific personal jurisdiction).

**Second,** the test for whether Plaintiffs' claims "relate" to Medicom's contacts with Tennessee is a remarkably "lenient standard." *Bird*, 289 F.3d at 875. The test provides that, "[i]f a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contracts." *Id.* (quotation omitted). The operative facts in this case include Plaintiffs' allegations that Medicom illegally shared their PHI with Google via tracking technologies deployed on HRAs made available on Medicom-hosted websites. Compl. ¶¶ 1, 9-10, 45-46, 294, 477. Both Medicom's contacts with Tennessee and Plaintiffs' privacy claims arise from Medicom's provision of HRAs on its evaliahealth.com websites and its emailing of HRA scores via its no-reply@evaliahealth.com email address. What's more, Medicom is owned by Unlock Health, Inc., a Tennessee corporation (Compl. ¶ 30), has been fully integrated into Unlock's Eruptr and DECODE product lines, (Compl. ¶ 30), and publicly states it has combined its "capabilities with Eruptr and DECODE" to take "the guesswork out of growth." (Compl. ¶ 29). Accordingly, as in *Bird,* "the operative facts are at least marginally related to the alleged contacts between [Medicom] and [Tennessee]." *Bird*, 289 F.3d at 875.

**Third**, this Court's exercise of personal jurisdiction over Medicom is reasonable. *Schneider v. Hardesty*, 669 F.3d 693, 703 (6th Cir. 2012) (holding that an "inference of reasonableness arises" when the first two personal jurisdiction factors are met). Medicom's parent and co-defendant, Unlock Health, Inc., is headquartered in Tennessee. Medicom directly targets Tennessee residents with online HRAs, could therefore reasonably anticipate being haled into court there, and has not claimed to be unduly burdened by litigating in Tennessee. Accordingly, because the Court must "draw all reasonable inferences" in Plaintiffs' favor, while disregarding any "facts proffered by the defendant that conflict," *Neogen Corp. v. Neo Gen Screening, Inc*., 282 F.3d 883, 887 (6th Cir. 2002), the Court should deny Medicom's motion to dismiss.

## III. Plaintiffs' allegations are more than sufficient to satisfy Rule 12(b)(6).

Plaintiffs' allegations are sufficient for all their claims to survive Rule 12(b)(6). Courts considering analogous claims under Federal and California law have consistently ruled against defendants at the motion to dismiss stage. *See Jarrell v. Adena Health Sys*., 2025 WL 81305, at *1 (S.D. Ohio Jan. 13, 2025) (denying motion to dismiss ECPA claim); *Cooper v. Mount Sinai Health Sys., Inc*., 742 F. Supp. 3d 369, 383 (S.D.N.Y. 2024) (same); *E.H. v. Meta Platforms, Inc*., 2024 WL 557728, at *10 (N.D. Cal. Feb. 12, 2024) (denying motion to dismiss California claims); *Doe v. Tenet Healthcare Corp*., 789 F. Supp. 3d 814 (E.D. Cal. 2025) (same).

### A. Plaintiffs sufficiently pled their ECPA claim.

Defendants make two arguments for dismissal of Plaintiffs' ECPA claim: (1) that Defendants did not deploy Google source code within their HRAs and (2) that Plaintiffs fail to allege that Defendants acquired electronic communications. Mot. 9. Both arguments ignore Plaintiffs' well-pled allegations. Neither has merit.

**First,** contrary to Defendants' motion, Plaintiffs specifically pled that Defendants deployed their own Google Analytics and Google Double Click tracking pixels inside the HRAs. Compl. ¶

55 ("Unlock Health intentionally incorporated numerous analytics tracking tools into its HRA forms, including Google Analytics and Google Double Click."); *see also Id.* ¶¶ 9-11, 48, 62-63, 70, 73, 75-77, 96, 158, 189, 202-204 (same). Because the Court "must construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff," *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015), Unlock Health cannot substitute its own facts as the basis for its motion to dismiss.

**Second,** Unlock Health misunderstands how the federal wiretap statute works. Under the ECPA, "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation." 18 U.S.C. § 2520(a); *see also* 18 U.S.C. § 2511 (interception and disclosure of electronic communications prohibited).

Plaintiffs allege that Unlock Health surreptitiously installed source code on the websites hosting its online HRAs that intercepted and disclosed the contents of every communication that Plaintiffs made with their healthcare providers to Google. Compl. ¶ 327 ("Whenever Plaintiffs and Class Members interacted with Unlock HRAs, Unlock Health, through source code it embedded on its HRAs, intentionally intercepted and divulged the contents of Plaintiffs' and Class Members' electronic communications while those communications were in transmission to persons or entities other than the addressee or intended recipient of such communication, including Google."). The information Unlock Health intercepted and disclosed included patients' HRA scores, the specific HRA they completed, their healthcare providers, along with Plaintiffs' names, email addresses, IP addresses, Google account identifiers. *Id.* ¶¶ 21-23, 97, 159-198.

In essence, Unlock Health presented patients with the 21st-century version of a tapped device, "and once the HRA was loaded into a patient's browser, the software-based wiretap was

quietly waiting for private communications on the online HRA to trigger the tap, which intercept[ed] communications intended only for patients' doctors and transmits those communications to third parties," including Google. *Id.* ¶ 17. Contrary to Unlock Health's motion, Plaintiffs' Complaint explains in exhaustive detail how Unlock Health deployed surreptitious tracking technologies that intercepted and disclosed Plaintiffs' private communications to Google in violation of the ECPA. *Id.* ¶¶ 36-63; 67-103; 158-203. Plaintiffs' Complaint further details how Unlock Health "used" the intercepted communications in violation of 18 U.S.C. §§ 2511(b) and 2520(a) as part of scheme by which Unlock Health bartered patients' PHI to Google in return for advertising and analytics benefits. *Id.* ¶¶ 223, 328-331.

These allegations are sufficient to satisfy the pleading standard for a federal wiretap claim. *See, e.g.*, *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 926 (D. Minn. 2024) (patient sufficiently pleaded an "interception" based on allegations that hospital used hidden software on its websites that surreptitiously tracked, collected, and monetized patient's online activity); *Gay v. Garnet Health*, 2024 WL 4203263, at *4 (S.D.N.Y. Sept. 16, 2024) (same).

**Finally**, as Unlock Health concedes (Mot. 9), Unlock Health was not a party to the communications between Plaintiffs and their healthcare providers. Compl. ¶¶ 333 ("Unlock Health was not a party to the communications it intercepted and disclosed."). When Plaintiffs and Class Members filled out HRAs, they believed that "they were communicating with their healthcare providers—not with Unlock Health." *Id.* Accordingly, as a non-party to the communications, Unlock Health cannot shield itself from wiretap liability by arguing the ECPA's one-party consent rule found in 18 U.S.C. 2511 (2)(d). *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020) ("[S]imultaneous, unknown duplication and communication of [communications] do not exempt a defendant from liability under the party

exception."); *S.D. v. Hytto Ltd.*, 2019 WL 8333519, at *7 (N.D. Cal. May 15, 2019) (non-party app provider could not claim benefit of one-party consent rule because "[i]n the context of the Wiretap Act, "a party to the conversation is one who takes part in the conversation.").

Nor would it make a difference if Unlock Health was a party to the communications. Because it is a criminal offense to knowingly disclose health information without authorization, 42 U.S.C. § 1320d-6, even if Unlock Health *were a party* it would still be liable under the ECPA's crime-tort exception. Plaintiffs allege that Unlock Health knew that its conduct was illegal but nevertheless intentionally violated HIPAA by disclosing patients' PHI to Google for the purpose of obtaining marketing and analytics benefits. Compl. ¶¶ 340-347. It is well-established that parties to electronic communications (like healthcare systems and their business associates) cannot shield themselves from ECPA liability when they have disclosed patients' PHI to companies like Meta and Google for the "purpose" of obtaining commercial benefits. *See Jarrell v. Adena Health Sys.,* 2025 WL 81305, at *4 (S.D. Ohio Jan. 13, 2025) (crime-tort exception triggered by unlawful PHI disclosure); *Strong v. LifeStance Health Grp. Inc.*, 2025 WL 317552, at *5 (D. Ariz. Jan. 28, 2025) (same); *Stein v. Edward-Elmhurst Health*, 2025 WL 580556, at *6 (N.D. Ill. Feb. 21, 2025) (same). Accordingly, Unlock Health's motion should be denied.

**B. Plaintiffs have stated a valid CIPA claim under California law.**

Defendants raise no independent grounds to dismiss Plaintiffs' CIPA claim, resting instead on the same flawed arguments they raised against Plaintiffs' ECPA claim. Mot. 11. As explained above, Plaintiffs pled that Unlock Health improperly acquired their private health information by placing Google tracking tech inside HRA forms, allowing Google to intercept communications Plaintiffs intended only for their providers. Compl. ¶¶ 9-11, 62-63, 70, 73, 75-77, 158, 189, 202-204. Such allegations are sufficient to establish a CIPA claim under California law. *See M.G. v. Therapymatch, Inc.*, 2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) (denying motion to dismiss

CIPA claim where plaintiffs alleged Defendant, an online service that matched prospective patients to providers, embedded Google Analytics code in its website's provider search tool without patients' knowledge).

Defendants' argument also fails for a second reason—unlike the ECPA, CIPA is a two-party consent statute, requiring the consent of "***all*** parties to the communication." CAL. PENAL CODE § 631(a). Plaintiffs did not consent to Unlock's use of tracking technology to intercept their health data. *See* Compl. ¶¶ 173, 186, 196. Because Plaintiffs did not consent to Unlock Health's interception and disclosure of their communications, Unlock is liable under CIPA.

**C. Plaintiffs have stated a valid CMIA claim under California law.**

**1. Defendants are healthcare providers under the CMIA.**

Defendants argue that they are not subject to the CMIA because they are not "providers of healthcare." Mot. 12–13. But a business like Unlock Health is a "provider of healthcare" if it is "organized for the purpose of maintaining medical information" to facilitate diagnosis and treatment. CAL. CIV. CODE § 56.06(a). Likewise, a business is also subject to the statute if it "offers software or hardware to consumers ... that is designed to maintain medical information." CAL. CIV. CODE § 56.06(b). Plaintiffs allege both that Unlock is organized for the purpose of maintaining medical information for diagnosis and treatment and that it offers software to consumers for this purpose. *See* Compl. ¶¶ 388–90. Defendants ask the Court to ignore these allegations because they are made "conclusorily." Mot. 12. That argument ignores Plaintiffs' well-pled allegations.

Plaintiffs allege Unlock and Medicom are "healthcare-focused digital marketing agencies" whose flagship products are HRAs that collect medical information from patients and provide it to hospitals. Compl. ¶¶ 4-5. Indeed, Unlock describes itself as "a healthcare technology and services growth platform" and "the nation's premier healthcare marketing agency," touting that it "partners" with healthcare providers to ensure "secure handling of [medical] data." Compl. ¶¶ 3,

25. Likewise, Medicom describes itself as a "Patient Engagement, Acquisition, and Retention" company, whose HRA products are designed to "collect actionable data" for providers. Compl. ¶ 29. Defendants' HRA forms are used to facilitate diagnosis and treatment by providing HRA scores. Compl. ¶¶ 6. Taken as true, these facts allow a plausible inference under § 56.06(a) that Defendants are organized for the purpose of maintaining medical information to provide diagnosis and treatment information to patients.

The Complaint explains in detail how Defendants offered their online HRA forms to patients. Compl. ¶¶ 165, 178–80, 191. Plaintiffs interacted directly with Defendants' HRA software, which give a risk assessment score to facilitate treatment. Compl. ¶¶ 166–72, 181–88, 192–197. In some cases, Plaintiffs were directly offered a link to the form by Unlock Health itself. *Id.* ¶ 195. These facts support the plausible inference under § 56.06(b) that Defendants offered software to consumers to maintain information for diagnosis and treatment.

The cases Defendants cite are inapposite because they involve materially different allegations about the business and software involved. For instance, the defendant in *Accellion* was a "cloud-based software company that provides an enterprise content firewall" to hundreds of companies, only a handful of which were medical providers, and its software was never provided directly to consumers. *See In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 629 (N.D. Cal. 2024). So too, in *Oddei v. Optum, Inc.*, the plaintiff failed to allege any facts suggesting that the defendant offered any software or hardware at all. 2021 WL 6333467, at *2 (C.D. Cal. Dec. 3, 2021). By contrast, Plaintiffs allege that Defendants are health technology companies whose business model involves offering online health information tools directly to consumers. These allegations satisfy both prongs of the "provider" definition under CMIA.

### 2. Plaintiffs properly alleged that third parties viewed, accessed, and used their data.

Defendants similarly argue that Plaintiffs' CMIA claim should be dismissed because Plaintiffs did not allege that a third party "viewed" their data. Mot. 14–15 (citing *Vigil v. Muir Med. Group IPA, Inc.*, 84 Cal. App. 5th 197, 213 (2022)). Defendants' argument misrepresents the pleadings and relies on caselaw that has been reversed by the California Supreme Court.

First, Plaintiffs expressly alleged that their data was viewed by third parties. Compl. ¶ 384 (Plaintiffs' "personal, private, and sensitive data has been collected, viewed, accessed, stored, and used by Unlock Health, Facebook, Google, and other third parties without their consent."); Compl. ¶ 393 ("It is undisputed that Google accessed, read, and analyzed the Protected Health Information that Unlock Health shared with Google."). Even if this were the correct legal standard (which it is not), Plaintiffs' allegations satisfy it.

Second, Defendants' argument is wrong as a matter of law. The standard for a breach of confidentiality under CMIA is ***not*** whether the information was "actually viewed." *J.M. v. Illuminate Educ., Inc.*, 588 P.3d 611, 621–22 (Cal. 2026). The correct inquiry is "whether the information is exposed to a significant risk of unauthorized access or use." *Id.* Defendants' cases to the contrary apply an obsolete standard that the California Supreme Court disavowed in *Illuminate*.[2]

[2] In *J.M.*, the Supreme Court disapproved *Vigil* and similar cases applying the "actually viewed" standard. *See* 588 P.3d at 622 (disapproving *Vigil*, 84 Cal. App. 5th 197, *Regents of U. of California v. Super. Ct.*, 163 Cal. Rptr. 3d 205 (Cal. App. 2d Dist. 2013), and *Sutter Health v. Superior Ct.*, 227 Cal. App. 4th 1546, 174 Cal. Rptr. 3d 653 (2014)). Defendant's cases all predate this ruling and rely on precisely the authorities it disavowed. *See Barbour v. John Muir Health*, 2023 WL 2618967 (Cal. Super. Jan. 05, 2023) (relying on *Sutter*); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1128 (S.D. Cal. 2023) ("*Cousin I*") (relying on *Sutter* and *Regents*); *Roe v. Amgen Inc.*, 2024 WL 2873482 (C.D. Cal. June 5, 2024) (relying on *Vigil* and *Cousin I*).

Applying the correct standard, Plaintiffs have alleged sufficient facts to establish a CMIA violation. Plaintiffs allege that Unlock Health permitted Google, Facebook, and third party advertisers to access and use Plaintiffs' data by placing Google tracking software in its HRA forms. *See* Compl. ¶ 90 ("Google consistently received throughout the Class Period the precise text of communications that Plaintiffs and Class Members made about specific health conditions, specific treaters, the Health Risk Assessment forms they filled out"); ¶ 92 ("This process resulted in Facebook and Google acquiring a vast repository of personal data about patients that was then used for marketing purposes."). The Complaint alleges that Google and Facebook then exploited this data to identify Plaintiffs and send them advertising through platforms such as Facebook. *Id.* ¶¶ 54–65, 79-89, 119–158, 101–118, 207–214 (explaining how Google's business model involves providing user data for advertisements, including through Facebook). Finally, Plaintiffs allege that they received targeted advertisements from third parties relating to the confidential information they had disclosed in Unlock's HRA forms. Compl. ¶¶ 177, 190, 197, 200. That is sufficient.

These allegations support a plausible inference that Google, Facebook, and other advertisers viewed, accessed, and used Plaintiffs' confidential health information disclosed in violation of the CMIA. *See St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *10–11 (N.D. Cal. Oct. 1, 2024) (finding Plaintiff sufficiently pled CMIA claim by alleging Meta used confidential health information received from Defendant to send targeted ads); *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 975 (S.D. Cal. 2023) ("*Cousin II*") (same).

### D. Plaintiffs have validly stated claims both common law invasion of privacy and invasion of privacy claim under the California constitution.

Plaintiffs allege both common law and California constitutional claims for invasion of privacy. Compl. ¶¶ 416-433. The common law tort of invasion of privacy is distinct from invasion of privacy under the California Constitution," but because of the similarity of the standards, courts

often "consider the claims together." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020).

With respect to invasion of privacy, Unlock Health challenges only Plaintiffs' claim under the California constitution. Mot. 15–16. There is therefore no dispute that Plaintiffs' common law invasion of privacy claim is valid under California law—nor should there be, as multiple courts have endorsed common law invasion of privacy claims in data privacy cases arising from online tracking technologies like those Unlock Health used here. *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 891 (C.D. Cal. 2024) (online pharmacy's use of online tracking technologies met all elements of common law invasion of privacy claim); *Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1104 (N.D. Cal. 2025) (same). Unlock Health does not even attempt to dispute that the elements of an invasion of privacy claim are met here. Nor could it. *See Walgreen*, 733 F. Supp. 3d at 888 (defendant invaded plaintiffs' privacy by disseminating confidential information).

Unlock Health's challenge to Plaintiffs' constitutional invasion of privacy claim also fails. Unlock Health again relies on the fiction that only its healthcare clients deployed tracking technology. But that argument contradicts the Complaint's well-pled facts. Compl. ¶¶ 9-11, 55, 73. Unlock next cites to *Cousin II*, 702 F. Supp. 3d at 974, to argue that a plaintiff may not recover damages in an action for invasion of privacy under the California Constitution, article I, section I. Mot. 16. But the challenge to the damages claim in *Cousin II* was granted unopposed, and the Court assumed *Clausing v. San Francisco Unified School Dist*rict controlled. *Id.* (citing 221 Cal. App. 3d 1224, 1238 (1990)). *Clausing* has been criticized by the California Supreme Court because it "overlooked" caselaw suggesting damages are available for a constitutional privacy claim. *See Katzberg v. Regents of Univ. of California*, 29 Cal. 4th 300, 317, 58 P.3d 339, 350 (2002) (citing *Porten v. University of San Francisco*, 64 Cal. App. 3d 825 (1976)). For just this reason, other

Federal courts have not followed *Clausing*. *See Stuart v. Cnty. of Riverside*, 2024 WL 3086634, at *5 (C.D. Cal. June 14, 2024) (holding plaintiffs could pursue damages for constitutional privacy violations). Accordingly, the Court should heed *Katzberg* and allow Plaintiffs to pursue damages under article I, section I.

Finally, Unlock Health argues that "Plaintiffs' California Constitution claim is also legally deficient because they only seek damages." Mot. 16. That argument ignores Plaintiffs' Complaint, whereby Plaintiffs "seek injunctive relief to prevent Unlock Health from continuing to collect, use, and sell Protected Health Information without consent." Compl. ¶ 427. Unlock Health's contention that the Complaint does not allege an imminent future injury is also inconsistent with allegations that "Unlock Health's improper disclosure . . . continues to this day." *Id.* ¶ 66; *see also* ¶¶ 94, 357, 374, 376. Because such allegations are sufficient to state an injunctive relief claim under the California Constitution. *Hart*, 526 F. Supp. 3d at 603, Unlock Health's motion should be denied.

**E. Plaintiffs have stated a valid claim for willful deceit under §§ 1709 & 1710.**

Defendants offer three grounds for dismissal of Plaintiffs' "1709 claim" but provide no supporting argument for two of them. Mot. at 16–17. The third rests on a factual misrepresentation.

First, Defendants insist they "did not conceal or suppress a material fact" but offer no further explanation or argument. Mot. 16-17. By contrast, Plaintiffs pled that Defendants intentionally concealed and misrepresented their use of Tracking technologies (Compl. ¶¶ 8, 329, 343, 354), and failed to inform Plaintiffs they were using tracking technology (*Id.* ¶¶ 225, 439) despite having a duty to obtain Plaintiffs' informed consent. (*Id.* ¶¶ 7, 10–15, 299, 442.). Taken as true, these allegations establish that Defendants intentionally concealed and misrepresented the true nature of the HRA forms in violation of their duty to disclose, with sufficient specificity to satisfy the heightened pleading standard of Rule 9(b).

Second, Defendants assert that there are no "legally recognized damages caused by Defendant's conduct." Mot. 17. But Defendants once again fail to support or explain this theory in any way. The Complaint alleges damages including loss of privacy, loss of the value of Plaintiffs' private health information, and substantial remediation costs to scrub their PHI from data broker rolls. Compl. ¶¶ 215-255, 307, 430. These are recoverable damages in an action for willful deceit *See* CAL. CIV. CODE § 1709 ("One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for ***any damage*** which he thereby suffers"); *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 494 (N.D. Cal. 2021) (plaintiffs in information privacy claim properly pled damages under § 1709 by alleging an injury-in-fact).

Finally, Defendants reiterate the same baseless assertion that "Defendants did not deploy the Google source code within the HRAs." Mot. 17. Because that argument is contrary to the Complaint's allegations, Defendants' motion fails for this reason as well.

**F. Plaintiffs have pled a valid § 638.51 claim.**

Cal. Penal Code § 638.51 prohibits companies like Unlock Health from sharing consumers' addressing data—such as IP addresses—with third parties without consent via tracking pixels. *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1155 (N.D. Cal. 2025) ("[P]laintiffs are entitled to pursue a claim against Meta for its use of the pen register 'device' without a warrant."); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023) ("software" that captured and transmitted IP addresses without warrant violated § 638.51).

Unlock Health argues that Plaintiffs' § 638.51 claim should be dismissed because "it was Defendant's healthcare clients who deployed Google source code within the HRAs." (Mot. 18). That argument fails because it contradicts Plaintiffs' well-pled allegations. Compl. ¶ 55 ("Unlock Health intentionally incorporated numerous analytics tracking tools into its HRA forms.").

Unlock Health likewise suggests that Plaintiffs' § 638.51 claim should be dismissed because—in addition to sharing patients' IP addresses—Plaintiffs *also* allege that Unlock Health shared the "contents" of patients' communications (such as their HRA scores) with Google. (Mot. 18-19). That nonsensical argument has been rejected by multiple courts. California law does not permit defendants to use illegal pen registers simply because their wiretapping devices also illegally record the contents of users' communications. No such loophole exists. *See In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1154 (N.D. Cal. 2025) ("Because recognizing such a loophole would significantly limit the privacy protections offered by CIPA's pen register provisions, it is unsurprising that courts regularly allow both wiretap and pen register claims to proceed.") (collecting cases); *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 872 (N.D. Cal. 2025) ("[G]iven that CIPA's purpose to protect Californians' privacy, it seems very unlikely that the state Legislature meant to permit the installation and implementation of pen registers so long as those devices also record the contents of third party's communications.").

**G. Plaintiffs have pled a valid unjust enrichment claim.**

Under California law,"[a]n individual who has been unjustly enriched at the expense of another may be required to make restitution." *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 998, 353 P.3d 319, 326 (2015). What is more, "California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss." *R.C. v. Walgreen Co*., 733 F. Supp. 3d 876, 900 (C.D. Cal. 2024) (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020)).

Unlock Health argues that Plaintiffs' unjust enrichment claim should be dismissed because (1) Plaintiffs do not allege any benefit was conferred on Defendants and (2) Plaintiffs do not allege that their legal remedies are inadequate. Both arguments are incorrect. Plaintiffs allege that they conferred a benefit on Unlock Health in the form of their private health data, which they allege has

financial value, and that Unlock Health received financial benefits from sharing this data with Google in the form of enhanced advertising and analytics services. Compl. ¶¶ 215-255; 288-296. Nothing more is required to state a valid unjust enrichment claim. *Walgreen Co*., 733 F. Supp. 3d at 900 (denying motion to dismiss unjust enrichment claim where plaintiffs pled that "Defendant unjustly benefited by its collection and use of Plaintiffs' information without consent or compensation); *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 847 (E.D. Cal. 2025) (same). Likewise, Plaintiffs also pled that they have no adequate remedy at law. Compl. ¶ 384 ("Plaintiffs have no adequate remedy at law."), which was incorporated by reference into Plaintiffs' unjust enrichment claim. *Id.*¶ 454. Accordingly, Unlock Health's motion should be denied.

**H. Plaintiffs have pled a valid claim under § 18 U.S.C. 2512.**

18 U.S.C. § 2512 makes it illegal for a defendant to manufacture, assemble, possess, or sell any device "knowing or having reason to know" that the design of such device renders it primarily useful "for the purpose of surreptitious interception, of wire, oral, or electronic communications." 18 U.S.C. § 2512. Unlock Health argues that Plaintiffs' claim under § 2512 is deficient (1) because there is no private right of action under § 2512 and (2) because Unlock did not deploy Google source code within its HRAs. (Mot. 20). The first argument is contrary to binding Sixth Circuit precedent; the second is contrary to Plaintiffs' well-pled allegations.

Relying on out-of-circuit precedent, Unlock Health argues that § 2512 violations do not give rise to a private right of action under 18 U.S.C. § 2520, the section of the federal wiretap act authorizing civil claims. Mot. at 20–21. That argument, however, is contrary to binding Sixth Circuit precedent. *Luis v. Zang*, 833 F.3d 619, 637 (6th Cir. 2016). ("[W]e today hold that a defendant such as Awareness—which allegedly violates § 2512(1)(b) by manufacturing, marketing, and selling a violative device—is subject to a private suit under § 2520… when that

defendant also plays an active role in the use of the relevant device to intercept, disclose, or intentionally use a plaintiff's electronic communications").

Here, Plaintiffs allege that Unlock Health actively participated in the unauthorized wiretapping of its clients' patients by (1) knowingly designing its HRAs to incorporate online tracking technologies for the purpose of sharing patient communications with unauthorized third parties, (2) customizing its online forms to enable clients to deploy their own surreptitious tracking technologies inside HRAs via the placement of Google Tag Manager within the HRA's source code, (3) hosting the offending HRAs on its own servers, and (4) providing encouragement and technical assistance to clients wishing to deploy trackers such as the Meta Pixel, Google Analytics, Google Double Click, and Tik Tok pixels within their online HRAs. Compl. ¶¶ 49-52, 192, 159, 186, 204. Nothing more is required to trigger wiretapping liability. *Zang*, 833 F.3d at 637 (holding that "even though [defendant] did not initiate the specific action that 'intercepted, disclosed, or intentionally used' [plaintiff's] communications…," it is enough that defendant "actively manufactured, marketed, sold, and operated the device that *was used* to do so.)). Because Plaintiffs' well-pled allegations satisfy *Zang*, the Court should deny Unlock Health's motion.

**I. Plaintiffs have stated a valid negligence claim.**

Defendants argue that Plaintiffs' negligence claim should be dismissed because "Plaintiffs concede that it was Defendants' healthcare clients who deployed Google source code within the HRAs." Mot. 22. Not so. Plaintiffs allege that *Defendants* deployed Google Analytics within their HRAs, resulting in their PHI being shared with Google without their consent. Compl. ¶¶ 10, 295-296. Plaintiffs further allege that Defendants owed them a common law duty of reasonable care to protect their confidential information against unauthorized disclosure, (Compl. ¶¶ 298-299, 442, 482-486), and that Defendants' violation of this duty resulted in significant damages, including loss of control over their health information and privacy harms that can only be

remediating by spending hundreds of dollars a year to pay third-party services to scrub their protected health information from data broker rolls. (Compl. ¶ 430). These privacy injuries are "sufficient to establish harm" under California law. *B.K. v. Desert Care Network*, 2024 WL 1343305, at *10 (C.D. Cal. Feb. 1, 2024) (denying motion to dismiss negligence claim); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 800 (N.D. Cal. 2019) (holding "present and non-speculative privacy injuries" satisfied injury element of negligence claim); *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1016–19 (N.D. Cal. 2024) (same).

## IV. Unlock Health's request to strike the class allegations is baseless and premature.

Unlock Health asks the Court to strike the class allegations as overbroad because "they include members whose PHI was not collected, including those who do not have a Google account." Mot. 24-25. But this misrepresents Plaintiffs' proposed class definitions: All patients in the United States and all California citizens "who had data from Unlock Health HRAs they filled out shared with Google." Compl. ¶ 303. As the Complaint alleges, and as this Court must accept as true, Unlock Health's HRAs "include online health evaluation forms for many of the most sensitive and private medical conditions imaginable" and "require patients to enter detailed medical histories and contact information." *Id.* ¶ 5. Consequently, "patients who filled out an HRA had their patient status, their health conditions, their names, their email addresses, and other Protected Health Information shared multiple times via [the challenged] tracking technologies." *Id.* ¶ 49. These allegations establish that individuals who filled out Defendants' HRAs had their "PHI from these HRAs . . . shared with internet marketing companies like Facebook and Google." *Id.* ¶ 52. The proposed class is limited to this same group of individuals, whose injuries raise common questions of law and fact. *See id.* ¶ 303. That is the opposite of an "overbroad" class.

Unlock Health's superiority challenge also fails. Unlock Health argues that Plaintiffs will need to submit individualized proof that "Defendants, rather than their healthcare clients, deployed

the Google source code within the HRAs." Mot. 25. But, once again, Defendants ignore Plaintiffs' actual allegations that *both* Defendants *and* their clients deployed the challenged trackers, ECF 1 ¶¶ 9-11, 55 63, 73, 75-44, 96, 158, 189, 198, 202, 298, 327, 334, and further, that Unlock Health "aggressively and routinely encouraged, abetted, and aided healthcare clients in deploying surreptitious tracking technologies on HRAs with the full knowledge that PHI from these HRAs would be shared with internet marketing companies like Facebook and Google," *id*. ¶ 52; *see also id.* ¶ 73. Accordingly, whether Unlock Health is liable for its own deployment of tracking technology or for aiding and abetting its client's deployment, liability will depend on the same facts: that Unlock Health's HRA forms were embedded with Google tracking technology, that the forms automatically collected and shared patients' protected health data, and that this data was shared with unauthorized third parties. Moreover, whether Unlock Health or its healthcare clients deployed the tracking technology is also a common question for all class members.

"Motions to strike are viewed with disfavor and are not frequently granted." *Operating Eng'rs Loc. 324 Health Care Plan v. G & W Const. Co*., 783 F.3d 1045, 1050 (6th Cir. 2015). The moving party has the burden of demonstrating from the face of the complaint that "it will be ***impossible*** to certify the class as alleged, regardless of the facts plaintiffs may be able to prove." *Fishon v. Mars Petcare US, Inc.*, 501 F. Supp. 3d 555, 575 (M.D. Tenn. 2020) (citation, quotation marks omitted) (emphasis added). Accordingly, courts "should defer decision on certification pending discovery if the existing record is inadequate for resolving the relevant issues,' unless the Court is 'convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim[s]' succeed in class action form." *Id.* (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1086 (6th Cir. 1996) and *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D.

Cal. 2009)). As shown above, Unlock Health has not come close to meeting the standard for striking Plaintiffs' class allegations.

Further, even if the proposed class definitions were overbroad (they are not), the appropriate remedy would be to narrow the class definitions to cure any defect, not to strike the class allegations completely. *See Carrico v. Uponor, Inc.*, 2025 WL 967542, at *26 (M.D. Tenn. Mar. 31, 2025).

This is not one of the infrequent cases in which "it will be impossible to certify the class as alleged" or where there is no set of circumstances in which the claims could succeed in class action form. *Fishon*, 501 F. Supp. 3d at 575. Consequently, the motion to strike should be denied.

## CONCLUSION

For all these reasons, the Court should deny Unlock Health's motion.[3]

Dated: August 24, 2026

Respectfully submitted,

*/s/ J. Gerard Stranch, IV*

J. Gerard Stranch, IV (TN BPR No. 23045)
Grayson Wells (TN BPR No. 039658)
John C. Roberts (TN BPR No. 042673)
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Telephone: (615) 254-8801
Facsimile: (615) 255-5419
gstranch@stranchlaw.com
gwells@stranchlaw.com
jroberts@stranchlaw.com

Foster C. Johnson *(admitted pro hac vice)*
Joseph Ahmad*
Mark Holden*
Hannah Price*
**AHMAD, ZAVITSANOS & MENSING, PLLC**

---

[3] Plaintiffs are voluntarily withdrawing Count XII, their claim under Cal. Bus. & Prof. Code §§ 17200, et seq.

1221 McKinney Street, Suite 2500
Houston, TX 77010
Telephone: (713) 655-1101
fjohnson@azalaw.com
ahmad@azalaw.com
mholden@azalaw.com
hprice@azalaw.com

Lynn A. Toops *(admitted pro hac vice)*
Lisa M. LaFornara *(admitted pro hac vice)*
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 636-6481
ltoops@cohenandmalad.com
llafornara@cohenmalad.com

*Counsel for Plaintiffs, individually and on behalf of all others similarly situated*

* *Pro hac vice* Pending

**CERTIFICATE OF SERVICE**

I hereby certify that on August 24, 2026, a copy of Plaintiffs' Opposition to Defendants' Motion to Dismiss was filed through the Court's CM/ECF system, which will send notification to all counsel of record registered to receive electronic service.

By: */s/ J. Gerard Stranch, IV*__________
J. Gerard Stranch, IV (TN BPR No. 23045)