**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| JOHN DOE, et al., individually and on behalf of all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>UNLOCK HEALTH, INC. MEDICOM DIGITAL, INC. d/b/a MEDICOM HEALTH INTERACTIVE and MEDICOM HEALTH,<br><br>*Defendants.* | Case No. 3:26-cv-00289<br><br>Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Lynda M. Hill |

**DEFENDANTS' MOTION AND MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO STAY, OR ALTERNATIVELY TO BIFURCATE, DISCOVERY**

Pursuant to Rules 26(c) and 26(d) of the Federal Rules of Civil Procedure, Defendants Unlock Health, Inc. Medicom Digital, Inc. d/b/a Medicom Health Interactive and Medicom Health (collectively, “Defendants” or "Unlock Health"), respectfully move for an order staying discovery pending the Court's ruling on Defendants' Motion to Dismiss or in the Alternative Motion to Strike the Putative Class Allegations ("Motion to Dismiss") (ECF No. 23), or, in the alternative, bifurcating and phasing discovery to address threshold issues first and defer merits and class discovery unless and until any claims survive.

## I. INTRODUCTION

Unlock Health seeks a stay of discovery because this case is at a threshold stage and is currently framed by a potentially dispositive Motion to Dismiss, which may eliminate claims, substantially narrow the case, or dispose of the action altogether. In light of this Motion to Dismiss, proceeding with broad discovery before the Court rules on the Motion would impose significant and potentially unnecessary burdens and costs on both the Parties and non-parties. The need for a stay is underscored by Plaintiffs' aggressive third-party discovery campaign aimed at harassing Unlock Health's clients while the Motion to Dismiss is pending. Specifically, as this Court is aware, Plaintiffs have engaged in sweeping, third-party discovery aimed at Unlock Health's current and former healthcare clients—serving ***21 subpoenas*** that run roughly **190 pages each**. The breadth and volume of these demands impose immediate, substantial burdens on non-parties and threaten to force costly, collateral disputes over sensitive information before the Court has determined whether Plaintiffs' claims and class theories can proceed. The Court has already recognized this risk by staying enforcement of the subpoenas (ECF No. 34), and the relief sought here would prevent that burden from reviving prematurely. At minimum, if the Court is not inclined to stay discovery entirely, discovery should be bifurcated and phased: any initial discovery should be narrowly limited to issues necessary to address threshold matters, with merits, class, and third-party discovery deferred unless and until the Court rules on the Motion to Dismiss.

## II. BACKGROUND

Plaintiffs bring a putative nationwide class action alleging Unlock Health surreptitiously disclosed patients' protected health information gathered through online Health Risk Assessment ("HRA") forms to third parties such as Google via analytics and marketing technologies, without patients' knowledge, authorization, or consent. *See generally,* Class Action Complaint (ECF No.

1). Plaintiffs allege Unlock Health's HRAs captured sensitive medical details, contact information, and risk "scores," and transmitted that information to Google and others through tools such as Google Analytics and related code. *Id.* The Complaint pleads federal and state claims, including violations of the Electronic Communications Privacy Act, California privacy statutes (CIPA and CMIA), invasion of privacy, fraud, unjust enrichment, negligence, and unfair competition on behalf of a nationwide class and a California subclass. *Id.*

On June 22, 2026, Unlock Health filed its Motion to Dismiss, or in the Alternative, Motion to Strike the Putative Class Allegations, raising threshold legal and jurisdictional issues apparent on the face of the Complaint and potentially dispositive of all claims. On July 7, 2026, Judge Crenshaw granted the Parties' Joint Motion to Establish a Briefing Schedule (ECF No. 29). That schedule was subsequently extended (ECF No. 38), Plaintiffs filed their opposition to the Motion to Dismiss on August 24, 2026 (ECF No. 43). Despite the pendency of that potentially case-dispositive motion, Plaintiffs have served 21 expansive subpoenas—approximately 190 pages each—on non-party healthcare entities that are current or former clients of Unlock Health. In response to this burdensome and harassing discovery tactic, Unlock Health filed a Motion for Entry of a Protective Order (ECF No. 32) and a Request for Oral Argument (ECF No. 33). As noted in the Motion for Entry of a Protective Order, Unlock Health also advised that it intended to seek a stay of discovery, or alternatively, bifurcation of discovery, pending the Court's ruling on the Motion to Dismiss—relief that Unlock Health now requests through this Motion. This motion is filed pursuant to the schedule set by the Court's Initial Case Management Order (ECF No. 42).

## III. LEGAL STANDARDS

### 1. Motion to Stay Discovery

Under Local Rule 16.01(g), discovery is not stayed unless specifically authorized by Fed. R. Civ. Pl 26 (d) or by order of the Court. Local Rule 16.01(g). Trial courts nonetheless have "broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." *Hahn v. Star Bank*, 190 F.3d 708, 719 (6th Cir. 1999). "The scope of discovery is within the sound discretion of the trial court[.]" *Kelley v. Harr*, No. 3:21-cv-00790, 2023 WL 9424958 at *1 (M.D. Tenn. Apr. 14, 2023) (quoting *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 451 (6th Cir. 2008)). Fed. R. Civ. P. 26(c)(1) authorizes protective orders "for good cause" to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense," which may include forbidding discovery, prescribing terms, or sequencing discovery to reduce burdens. *Kelley, supra*; Fed. R. Civ. P. 26(c)(1). In the Middle District of Tennessee, the Court "weigh[s] the burden of proceeding with discovery upon the party from whom discovery is sought against the hardship which would be worked by a denial of discovery," *Kelley*, 2023 WL 9424958, at *1, and a stay is "particularly appropriate" where, as here, the Court's jurisdiction is challenged. *Id.*

### 2. Motion to Bifurcate Discovery

"District courts have broad discretion in determining whether to bifurcate proceedings or divide a class action into subclasses." *Randleman v. Fid. Nat'l Title Ins. Co.*, 646 F.3d 347, 355 (6th Cir. 2011); *see also In re Copper Tubing Litig.*, No. 04-2771 DV, 2006 WL 8434911 at *5 (W.D. Tenn. Oct. 3, 2006) ("Copper Tubing") ("Whether to bifurcate class certification and merits discovery is within the discretion of the court."). Rule 23 of the Federal Rules of Civil Procedure mandates that a class certification decision be made "at an early practicable time" after

commencement of an action. Fed. R. Civ. P. 23(c)(1)(A). Numerous courts have recognized that allowing class-wide discovery on certification issues and postponing class-wide discovery on the merits is appropriate "to make early class determination practicable and to best serve the ends of fairness and efficiency." *Copper Tubing, supra*, at *5 (quoting *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1570-71 (11th Cir. 1992)).

Indeed, this Court has granted bifurcation of discovery in other class actions. *See, e.g., Isabel v. Velsicol Chem. Co.*, No. 04-2297-DV (W.D. Tenn. June 7, 2004) (Vescovo, M.J.) (limiting first phase of discovery to class certification issues), *aff'd*, 2004 U.S. Dist. LEXIS 18057 (W.D. Tenn. Aug. 12, 2004) (Donald, J.) (denying plaintiff's appeal of order bifurcating discovery and finding "substantial authority allows for pre-class certification discovery"); *Bostick v. St. Jude Med., Inc.*, No. 03-2636-BV (W.D. Tenn. Nov. 14, 2003) (Vescovo, M.J.) (limiting initial discovery to issues relevant to class certification). The primary considerations to determine whether bifurcation of class and merits discovery is fair and efficient are whether merits discovery is intermingled with class discovery and whether the litigation is likely to continue absent class certification. *Copper Tubing*, *supra*, at *5. Neither are the case here, which supports bifurcation of discovery.

## IV. ARGUMENT

### A. Good Cause Exists Under Rule 26(c) to Stay Discovery Pending Resolution of Unlock Health's Motion to Dismiss.

Discovery should be stayed pending a decision on the Motion to Dismiss and Motion to Strike Class Allegations because the Motion to Dismiss raises a threshold Article III standing challenge—a threshold jurisdictional question that, if resolved in Unlock Health's favor, could dispose of, or substantially narrow the action. Personal jurisdiction and venue are not in dispute, so the standing challenge is the operative threshold issue, and its resolution should precede

burdensome, case-wide discovery. On the face of the Complaint, Plaintiffs seek to prosecute a putative nationwide class and to test an expansive array of technical and third-party data flows across a large universe of hospitals and health systems, which would immediately trigger costly, expansive, and privacy-sensitive discovery well before threshold issues are resolved. Plaintiffs allege Defendants' HRA tools were used across "more than a thousand hospitals and healthcare systems" and "over 1,300" hospitals. Complaint at ¶¶ 4, 29. They assert: (i) use of multiple third-party analytics and advertising technologies, including Google Analytics, Google Ads/DoubleClick, and Google Tag Manager (¶ 204); (ii) granular technical allegations requiring review of cookies, URL parameters, redirects, JavaScript/source code, tag manager configurations, device identifiers, and server/client logs (¶¶ 73-75); and (iii) the implicated data include sensitive PHI/PII and alleged "risk scores" (¶ 90). Under Rule 26(b)(1)'s proportionality factors, forcing immediate merits and class discovery of this breadth and sensitivity—before the pleadings are settled—would impose severe cost and burden wholly disproportional to any likely benefit during the pendency of the Motion to Dismiss.

Further, the Complaint also demonstrates that most of the contemplated discovery would be third-party heavy, sprawling, and replete with protected health information of potentially thousands of individuals. Plaintiffs identify numerous non-party hospitals and health systems by name (e.g. Ochsner Health, Inova Health, TriStar Health) and posit that extensive information resides with those entities and with outside vendors. Complaint at ¶¶ 37, 40 and 159-160. They allege extensive third-party discovery of hospitals/health systems and vendors will be required. *See generally*, Complaint. Plaintiffs have already served 21 subpoenas on non-party entities who are current or former Unlock clients. Collecting, negotiating protective measures, reviewing and litigating privilege/PHI issues across scores of custodians and vendors nationwide would impose

extensive expense and substantial HIPAA-related risks long before the Court decides whether any claim, theory, or class allegation is legally viable. That front-loaded multi-party discovery effort cannot be unwound if the Motion to Dismiss is granted in whole or in part. Unlock Health seeks this relief based on the confidential client relationships and proprietary implementation details these subpoenas target—not merely the burden on the non-parties. A party has standing to seek such relief under Rule 26(c) even where it could not move to quash under Rule 45: "where a party's standing may fall short to quash a subpoena under Rule 45, Rule 26(c) affords parties the ability to move for a protective order." *Diamond Resorts Int'l, Inc. v. Phillips*, No. 3:17-CV-01124, 2018 WL 4328257, at *2 (M.D. Tenn. July 16, 2018); *accord Fusion Elite All Stars v. Varsity Brands, LLC*, 340 F.R.D. 255, 261 (W.D. Tenn. 2022). The Declaration of Courtney Maul (ECF No. 32-1) substantiates the competitive and reputational harm that unrestricted, front-loaded third-party discovery would inflict on those client relationships.

Plaintiffs' class definition only compounds these burdens. The proposed class definition is not anchored to any fixed or bounded class period, and neither are the 21 subpoenas Plaintiffs served. *See* Complaint at ¶ 303. Without fixed start and end dates, preservation and collection would sweep in years of technical and marketing data—source code and tag management histories, configuration records, logs and client communications—across hundreds of deployments and related non-party systems. That open-ended scope sharply increases cost and complexity, including privilege and PHI-handling disputes, and Rule 26(b) weighs against imposing such disproportionate discovery before the pleadings clarify what issues, if any, remain. These burdens are heightened because the discovery targets HIPAA-protected health information, an area in which Tennessee has recognized privacy protections more stringent than HIPAA's. *Cf. Wade v. Vabnick-Wener*, 922 F. Supp. 2d 679, 691-92 (W.D. Tenn. 2010) (holding Tennessee law more

stringent than HIPAA in barring defense counsel's *ex parte* interviews with a plaintiff's treating physicians). Additionally, a stay will conserve the resources of the Parties, non-parties, and the Court, prevent the unnecessary dissemination of sensitive patient-related information, and avoid irretrievable discovery costs before the Court rules on Unlock's Motion—thereby establishing good cause under Rule 26(c) and applied here, these authorities establish good cause.

This Court has recognized that a stay is appropriate "where the motion to dismiss is based on lack of jurisdiction." *Arjmandi v. RW Supply & Design, LLC*, No. 3:24-cv-00704, 2025 WL 4661830, at *1 (M.D. Tenn. Sept. 8, 2025). That is precisely this case: Unlock Health's Motion to Dismiss challenges Plaintiffs' Article III standing—a jurisdictional defect that, if sustained, would require dismissal that discovery could not cure. Resolving that threshold question first spares the Parties, the Court, and the non-party healthcare entities the expense of nationwide, privacy-sensitive discovery that may prove wholly unnecessary. Unlock Health also makes the "particular and specific demonstration of fact" that good cause requires, not the "stereotyped and conclusory statement" that will not suffice. *Diamond Resorts*, 2018 WL 4328257, at *2. The Declaration of Courtney Maul previously filed with this Court in support of Defendants' Motion for a Protective Order establishes concrete, case-specific harm: the requested discovery would compel disclosure of Unlock Health's confidential client list, its client-by-client implementations, and its proprietary tagging strategies—information that "show[s] exactly how it competes in the market"—the exposure of which would place Unlock Health at a competitive disadvantage, strain its client relationships, and risk lost business and reputational harm in a regulated industry built on confidentiality. Maul Decl. ¶¶ 4-7 (ECF No. 32-1). Those are not burdens that "could be made in virtually any" case, *Burges v. BancorpSouth, Inc.*, No. 3:14-1564, 2015 WL 13628132, at *4 (M.D.

Tenn. Oct. 26, 2015); they are specific to Unlock Health's business and to the front-loaded, third-party character of the discovery Plaintiffs seek.

Trial courts possess "broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined," *Hahn v. Star Bank*, 190 F.3d 708, 719 (6th Cir. 1999), and this Court weighs "the burden of proceeding with discovery ... against the hardship which would be worked by a denial of discovery," *Kelley v. Harr*, No. 3:21-cv-00790, 2023 WL 9424958, at *1 (M.D. Tenn. Apr. 14, 2023). A stay is "particularly appropriate" where the Court's jurisdiction is in question. *Id.* Because the Motion to Dismiss presents a threshold Article III standing challenge that turns on a pure question of law—one that discovery could not affect—the substantial burden of nationwide, third-party discovery decisively outweighs any hardship to Plaintiffs from a short, defined delay pending the Court's ruling.

**B. Defendants' Merits Discovery is Not Intermingled with Class Discovery and Can be Easily Segregated.**

Alternatively, should the Court not be inclined to stay all discovery, Defendants request that the Court phase discovery to first address any threshold issues and any surviving individual claims, deferring class-wide and third-party discovery until the pleadings and case scope are resolved. Federal Rule of Civil Procedure 42(b) permits the Court to order separate proceedings "to avoid prejudice, or to expedite and economize," and in assessing bifurcation of individual and class discovery this Court considers (1) the overlap between individual and class discovery, (2) whether bifurcation will promote an early Rule 23 determination, (3) judicial economy, and (4) any prejudice likely to flow from granting or denying the requested relief. Fed. R. Civ. P. 42(b); *Arjmandi v. Rw Supply & Design, LLC*, No. 3:24-cv-00704, 2025 WL 4661830, at *1-2 (M.D. Tenn. Sept. 8, 2025).

Here, merits discovery is readily distinct from class discovery because Plaintiffs' class theories turn on issues that are broader in scope—and different in kind—than what would be needed to litigate any individual plaintiff's claims. Individual merits discovery can be confined to what each named Plaintiff did and experienced, such as: which HRA(s) they accessed; when they accessed them; what information they entered; what disclosure or consent language they saw; and what (if any) transmissions occurred in connection with those specific sessions. That discovery is narrow, plaintiff-specific, and can be obtained from a limited set of custodians and targeted technical records tied to Plaintiffs' interactions without opening the door to discovery across Defendants' entire client base. By contrast, class discovery would immediately expand to questions that are unnecessary to resolve individual liability and damages and that are inherently class wide such as: how HRAs were configured across hundreds or thousands of healthcare provider clients; what tags/pixels were deployed client-by-client and how those deployments changed over time; whether any alleged transmissions were uniform or varied by client, HRA type, time period, and third-party vendor; and whether common issues predominate given individualized consent flows, disclosures, and technical implementations. That class-focused inquiry would also drive extensive third-party discovery to non-party health systems and vendors, along with broad ESI untethered to the named Plaintiffs' experiences. The fact that Plaintiffs' class definition lacks a fixed class or time period further underscores that class discovery would be open-ended and sprawling, while individual merits discovery remains bounded.

Because these two tracks seek different information from different sources at different scales, they can be cleanly segregated through a phased order. The Court can permit limited merits discovery directed only to the named Plaintiffs' HRAs and sessions (and any threshold issues such as standing and jurisdiction), while staying class discovery—defined to include discovery about

other users, other HRAs, other provider clients, other time periods, and third-party subpoenas—until after the Court rules on the Motion to Dismiss (and, if necessary, until class certification briefing). This sequencing avoids the disproportionate burden of nationwide, third-party, multi-client discovery while preserving Plaintiffs' ability to pursue individualized merits discovery that is genuinely necessary and not intermingled with classwide issues. The governing factors confirm that phased discovery is appropriate here.

Although the court in *Arjmandi* declined to stay or bifurcate, it did so because the defendants there had not moved to dismiss for lack of standing—inviting the court to raise the issue *sua sponte*—and had made no rigorous, factor-by-factor showing. *Id.* at *1-2. Here, by contrast, Unlock Health has moved to dismiss for lack of Article III standing, and it makes the particularized, factor-by-factor showing that *Arjmandi* found wanting. Unlock Health does not dispute that courts decline to bifurcate where individual and class discovery substantially overlap. *See, e.g., Burges v. BancorpSouth, Inc.*, No. 3:14-1564, 2015 WL 13628132 (M.D. Tenn. Oct. 26, 2015) (declining to bifurcate where doing so "would likely lead to unnecessary disputes concerning what is merits discovery versus what is class certification discovery"). No such overlap exists, however, for the narrow, plaintiff-specific discovery Unlock Health would allow to proceed: each named Plaintiff's own HRA sessions, the disclosures and consent language he or she encountered, and any transmissions in those sessions can be developed from a limited set of custodians without opening class-wide, client-by-client discovery into other providers, other HRAs, and other time periods. Nor does the overlap between class and merits proof that attends any class action, defeat phasing here: the individualized discovery Unlock Health would permit is bounded and readily distinguishable from the classwide, client-by-client inquiry Plaintiffs' theories require. *See Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 351 (2011).

### C. Good Cause Exists to Bifurcate and Phase Discovery to Promote Efficiency, Judicial Economy, and an Early Rule 23 Determination Without Prejudice.

Good cause exists to bifurcate and phase discovery because it promotes efficiency and judicial economy without prejudicing either side. As pleaded, this case would otherwise launch immediately into nationwide discovery across numerous provider-client implementations, vendors, and years of technical configurations—before the Court resolves threshold pleading issues or the Parties can meaningfully frame the class issues. Phasing avoids front-loading the most expensive and contentious discovery (third-party subpoenas, technical ESI, and PHI/PII disputes) and reduces the risk of wasted discovery and recurring motion practice.

Bifurcation is feasible because Plaintiffs' merits discovery can be cleanly separated from class discovery. Merits discovery can focus on the named Plaintiffs' specific HRA interactions, the disclosures/consent they encountered, and what (if any) transmissions occurred in those sessions. Class discovery, by contrast, would require broad, client-by-client and time-period-by-time-period discovery into variations in HRA configurations, tag/pixel deployments, and vendor relationships—issues central to Rule 23's commonality, typicality, predominance, and superiority requirements.

Further, phasing aligns with Rule 23's requirement that certification be decided "at an early practicable time" by sequencing the case so threshold, dispositive, issues are resolved first and any class-certification discovery is targeted and proportional to the claims that survive. Fed. R. Civ. P. 23(c)(1)(A); *see Randleman v. Fid. Nat'l Title Ins. Co.*, 646 F.3d 347, 355 (6th Cir. 2011); *In re Copper Tubing Litig.*, No. 04-2771 DV, 2006 WL 8434911, at *5 (W.D. Tenn. Oct. 3, 2006). It further avoids premature nationwide discovery—especially where Plaintiffs' class definition lacks a fixed class period and Plaintiffs have already served broad, untethered third-party subpoenas.

Finally, bifurcation creates no unfair prejudice: Plaintiffs can pursue targeted discovery needed for any surviving individual claims and later develop an appropriate class-certification record, while relevant information is preserved; Defendants and non-parties are protected from irretrievable, potentially unnecessary nationwide discovery burdens pending the Court's rulings. Nor does a stay or phased approach risk the loss of evidence: the parties remain subject to their independent preservation obligations, the Stipulated Protective Order (ECF No. 41) governs the handling of any sensitive materials, and enforcement of the third-party subpoenas is already stayed by the Court (ECF No. 34)—so no relevant discovery is lost in the interim.

## V. CONCLUSION

For the reasons discussed above, Unlock Health respectfully requests the Court stay or alternatively, bifurcate discovery in this matter as set forth herein.

Dated: Knoxville, Tennessee
August 28, 2026

**WOOD, SMITH, HENNING & BERMAN, LLP**

By: */s/ Christopher J. Seusing*
Christopher J. Seusing, Esq. (Admitted *Pro Hac Vice*)
William J. Roe, Esq.
Alesandra Greco, Esq. (*Pro Hac Vice* Forthcoming)
800 S. Gay Street, Ste. 700
Knoxville, TN 37929
Tel.: 865-267-8050
Fax.: 865-267-8051
cseusing@wshblaw.com
wroe@wshblaw.com
agreco@wshblaw.com

*Counsel for Defendants Unlock Health, Inc. Medicom Digital, Inc. d/b/a Medicom Health Interactive And Medicom Health*

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.01(a)(1), counsel for Defendants certifies that counsel conferred with counsel for Plaintiffs regarding the relief requested in this Motion, and that Plaintiffs oppose the requested relief.

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2026, a copy of the foregoing was filed through the Court's CM/ECF system, which will send notification to all counsel of record registered to receive electronic service.

*/s/ Christopher J. Seusing*
Christopher J. Seusing