**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

---

JOHN DOE, JANE DOE, and JACK DOE, Individually and on behalf of all others similarly situated,

Plaintiffs,

v.

UNLOCK HEALTH, INC., MEDICOM DIGITAL, INC. d/b/a MEDICOM HEALTH INTERACTIVE and MEDICOM HEALTH,

Defendants.

Case No. 3:26-cv-00289

**CLASS ACTION**

**JURY TRIAL DEMANDED**

---

# PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO STAY, OR ALTERNATIVELY BIFURCATE, DISCOVERY

---

## INTRODUCTION

Without facing a single discovery request, Defendants have asked this Court to impose a blanket stay on all efforts to gather the facts. *See* ECF 44. "Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect." *Orzolek v. Eligo Energy, LLC*, No. 2:25-CV-78, 2026 WL 322736, at *3 (S.D. Ohio Feb. 6, 2026) (quoting older authority). But they don't. Defendants' request is premature and should be denied.

While the Court has the inherent discretionary power to stay proceedings as part of its ability to manage its docket, "it must 'tread carefully' in granting a motion to stay, because every party has a 'right to a determination of its rights and liabilities without undue delay.'" *D.H. by next friends A.H. v. Williamson Cnty. Bd. of Educ.*, No. 3:22-CV-00570, 2022 WL 22288493, at *1 (M.D. Tenn. Dec. 22, 2022) (quoting *Ohio Envtl. Council v. USDC S.D. of Ohio*, 565 F. 2d 393,

396 (6th Cir. 1977), in turn citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)); *accord Gray v. Bush*, 628 F. 3d 779, 785 (6th Cir. 2010). What is more, "the Local Rules of this District specifically advise that '[d]iscovery is not stayed, including during the pendency of dispositive motions . . .'" *D.H. by next friends A.H.*, 2022 WL 22288493, at *1 (quoting LR 16.01(g)). The same applies to a request for bifurcation of discovery, which, in effect, stays a subset of discovery. *Cf. Arjmandi v. Rw Supply & Design, LLC*, No. 3:24-CV-00704, 2025 WL 4661830, at *1 (M.D. Tenn. Sept. 8, 2025) (referring to bifurcation as a "stay of class discovery"). Defendants have not carried their heavy burden of demonstrating why this case is the exception. Discovery should not be postponed.

## RELEVANT BACKGROUND

Defendants' flagship Health Risk Assessment ("HRA") product is an online tool that patients are encouraged to use for evaluating their risk of conditions such as cancer, heart disease, and mental health issues. Patients who use the HRA tool fill out detailed health quizzes online, which then generate a health risk assessment "score" such as high, medium, or low risk of a patient suffering from heart disease. *See generally* ECF 1 ¶¶ 1–20.

This case arises from Defendants' use of hidden tracking technology embedded in their HRA tool, which surreptitiously collected and disclosed to third parties the protected health information ("PHI") of thousands of patients using the product, all without their knowledge or consent. *Id*. Defendants did so by deploying Google tracking technologies on their online HRA forms, including Google Analytics and Google Double Click. *Id.* ¶¶ 55, 202. By embedding these technologies in online HRAs, Defendants captured and transmitted patients' health communications in "real time," giving advertisers the data they needed to identify patients and their health conditions for the purpose of selling targeting advertising. *Id.* ¶¶ 10–12, 51, 175–176.

The PHI Defendants shared with Google included data such as patients' names, email addresses, IP addresses, cookies identifying patients' Google account, the hospitals where they were being treated, the specific HRA forms patients accessed and filled out, and patients' HRA scores. *Id.* ¶¶ 21–23, 97, 175–175, 186, 196, 198. Defendants deployed tracking technologies on their HRAs knowing that Google would use patient data for advertising. *Id.* ¶¶ 10, 51, 158, 328–329. In return, Defendants received advertising and analytics benefits. *Id.* ¶¶ 118, 328, 461.

In addition, Defendants also encouraged their healthcare clients to deploy their own tracking technologies on HRA forms. *Id*. ¶ 49. Defendants configured their HRA forms to enable clients to deploy these technologies via Google Tag Manager, allowing clients to share patients' PHI with a variety of tech companies, including Facebook, Tik Tok, LinkedIn, and Google. *Id.* ¶¶ 10, 204. Defendants also provided detailed guidance and assistance to clients regarding how they could deploy additional tracking pixels on the HRAs. *Id*. ¶¶ 204, 380.

Plaintiffs, current and former patients of Defendants' clients, allege Defendants' conduct violates numerous federal and state privacy laws, including HIPAA. *Id*. ¶¶ 10–14, 41, 268–287, 296, 313–415. Plaintiffs were never told that their PHI was being shared with Google. *Id.* ¶¶ 173, 186, 196. Nonetheless, their PHI is now in the hands of multiple tech companies, which continue to sell and resell this information for advertising purposes. *Id.* ¶¶ 211–252, 384, 406.

## **ARGUMENT**

### **A. A stay of discovery is wholly inappropriate in this case.**

Discovery stays "should be used sparingly." *D.H. by next friends A.H.*, 2022 WL 22288493, at *2. Indeed, "the mere fact a party has filed a case-dispositive motion is usually deemed insufficient to support a stay of discovery." *Id*. at *1 (internal citations and quotations omitted); *see also Burges v. BancorpSouth, Inc.*, No. 3:14-1564, 2015 WL 13628132, at *4 (M.D. Tenn. Oct.

26, 2015) ("Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision for that effect. In fact, such a notion is directly at odds with the need for expeditious resolution of litigation." (internal citations omitted). "And where a motion to dismiss for lack of personal jurisdiction appears 'fairly debatable,' courts have 'routinely declined to grant a stay.'" *BF 3 Rivers JD SPV, LLC v. Lynchburg Renewable Fuels, LLC*, No. 4:24-CV-82, 2025 WL 3127091, at *2 (E.D. Tenn. July 3, 2025) (quoting *Sills v. S. Baptist Convention*, No. 3:23-cv-478, 2023 WL 11970504, at *2 (M.D. Tenn. Nov. 22, 2023)). Defendants' motion to dismiss is a traditional kitchen sink motion: no standing, no jurisdiction, and then a lengthy series of 12(b)(6) arguments. D.E. 23.

Consequently, "[a] party seeking a stay of discovery carries a heavy burden of making a 'strong showing' why discovery should be denied." *Burges*, 2015 WL 13628132, at *4 (quoting *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)). Defendants come nowhere close to making such a showing here.

"To show good cause the moving party must articulate specific facts that show a clearly defined and serious injury resulting from the discovery sought; mere conclusory statements will not be sufficient." *Am. Addiction Centers, Inc. v. Nat'l Ass'n of Addiction Treatment Providers*, No. 3:19-CV-376, 2019 WL 13125499, at *1 (M.D. Tenn. Nov. 7, 2019). "Good cause will not be shown merely because the disputed discovery may be inconvenient or expensive." *Id.*

In determining whether to stay discovery, courts consider the following factors: "the type of motion pending; the nature and complexity of the action; whether some or all the defendants join in the motion; the stage of litigation; the extent of the discovery and the complexity of the issues in the case; and other relevant circumstances." *In re Copper Tubing Litig.*, No. 04-2771 DV, 2006 WL 8434911, at *3 (W.D. Tenn. Oct. 3, 2006). The Court must weigh "the burden of

proceeding with discovery upon the party from whom discovery is sought against the hardship which would be worked by a denial of discovery and take into account any societal interests which are implicated by either proceeding or postponing discovery." *Kelley v. Harr*, No. 3:21-CV-00790, 2023 WL 9424958, at *1 (M.D. Tenn. Apr. 14, 2023); *accord BF 3 Rivers JD SPV, LLC*, 2025 WL 3127091, at *1.

Here, Defendants have identified no real concerns other than cost and confidentiality. ECF 44 at 5–8. It is neither burdensome nor harassing to begin taking discovery after a complaint is filed, as the Federal Rules expressly permit. *Groupwell Int'l (HK) Ltd. v. Gourmet Exp., LLC*, 277 F.R.D. 348, 361 (W.D. Ky. 2011) ("Groupwell's bare assertion that there are a significant number of documents covered by the requests is not a sufficient showing of burdensomeness to garner protection from the Court."). Nor is a stay justified simply because discovery may cost money. *See*, *e.g.*, *Hoopes Vineyard LLC v. Cnty. of Napa,* 2025 WL 41929, at *1 (N.D. Cal. Jan. 6, 2025) (denying stay because defendant failed "to identify a particular or specific need for a protective order, asserting only that a stay will promote efficiency for the Court and the parties and conserve the parties' resources. Such blanket concerns, which are true in the mine run of litigation, do not establish good cause for a protective order."); *Smith v. Levine Leichtman Cap. Partners Inc.*, 2011 WL 13153189, at *2 (N.D. Cal. Feb. 11, 2011) ("The expense of discovery alone does not amount to good cause to stay discovery based on Defendant's argument that they are likely to succeed on the pending motions and could therefore avoid unnecessary expenses."); *see also Kor Media Grp., LLC v. Green*, 294 F.R.D. 579, 583 (D. Nev. 2013) ("The fact that discovery may involve inconvenience and expense is not sufficient, standing alone, to support a stay of discovery."). And as discussed in more detail below, concerns for confidentiality are more appropriately addressed in a narrowly tailored protective order, not a stay of discovery altogether.

### *1. Spoliation concerns counsel against delaying the discovery of important facts.*

Plaintiffs face substantial prejudice from a delay in discovery. Memories fade and valuable testimony will be lost. Probative information in the form of recorded data will be automatically overwritten and irretrievable. These concerns, which are often present in any case, have amplified importance here. This case is about tracking technologies, installed and implemented by humans, which automatically track and collect data subject to automatic deletion. Much of the data on which Plaintiffs must rely is also in the hands of third parties, meaning Plaintiffs will have no recourse in this action if valuable evidence is spoliated. To that end, Plaintiffs issued narrow subpoenas – comprised of only three document requests – to third parties who have used Defendants' HRAs and are likely in possession of relevant information. Further delay in the discovery of that information prejudices Plaintiffs.

By contrast, there is very little burden on Defendants by proceeding with discovery. In fact, Plaintiffs have yet to propound *any* discovery requests on Defendants from which they would need protection. There being no discovery requested of Defendants, there can be no "clearly defined and serious injury resulting from the discovery sought" for Defendants to demonstrate good cause supporting a stay. *Am. Addiction Centers, Inc.*, 2019 WL 13125499, at *1. Moreover, good cause for a stay is not established "merely because the disputed discovery may be inconvenient or expensive." *Id*. Defendants contends it would face "competitive and reputational harm" absent a stay. ECF 44 at 7. But that harm stems largely from being named in a lawsuit, not in engaging in discovery in that lawsuit. There is no basis for a stay of discovery that has not been issued.

### *2. Any judicial efficiency derived from a stay of discovery would require the wholesale dismissal of all of Plaintiffs' claims, an unlikely event.*

"While [Defendants] are certainly correct that if a motion to dismiss is granted, there is no need for discovery, the Court was aware of this when it adopted the Local Rule that discovery is

not stayed pending the resolution of dispositive motions." *D.H. by next friends A.H.*, 2022 WL 22288493, at *2. Indeed, Tennessee courts have declined to stay discovery even where a pending motion to dismiss is based on a lack of standing or lack of personal jurisdiction. *See Acad. of Allergy & Asthma in Primary Care v. Amerigroup Tennessee, Inc.*, No. 3:19-CV-00180, 2020 WL 8254263, at *3 (E.D. Tenn. Aug. 12, 2020) (denying stay of discovery where defendant challenged standing and subject matter jurisdiction); *Bridgestone Americas, Inc. v. Int'l Bus. Machines Corp.*, No. 3:13-CV-1196, 2016 WL 11786196, at *4 (M.D. Tenn. July 6, 2016) (denying stay of discovery where defendant challenged personal jurisdiction). "And where a motion to dismiss for lack of personal jurisdiction appears 'fairly debatable,' courts have 'routinely declined to grant a stay.'" *BF 3 Rivers JD SPV, LLC*, 2025 WL 3127091, at *2.

Defendants filed a sprawling motion to dismiss Plaintiffs' complaint on June 22, 2026, attacking each cause of action often with no more than a few sentences. *See generally* ECF 23. Discovery on any one of Plaintiffs' claims is likely to substantially overlap with discovery on any other claim. Accordingly, for a stay of discovery to promote judicial efficiency, Defendants must succeed in having the entire case dismissed. That is an unlikely outcome. As explained in Plaintiffs' response in opposition to the motion to dismiss, ECF 43, numerous courts across the country have upheld the claims Plaintiffs bring here on similar facts. Moreover, Defendants' arguments on jurisdiction are at least "fairly debatable." In such circumstances, the Court should decline to impose a stay of discovery. *BF 3 Rivers JD SPV, LLC*, 2025 WL 3127091, at *2.

***3. Issues regarding confidentiality, privacy, and trade secrets can all be resolved through a protective order, not a blanket stay of all discovery.***

In their Motion, Defendants raise numerous concerns about confidentiality, privacy, trade secrets, and their reputation in the marketplace. *See* ECF 44 at 7–8. These general concerns, however, do not make discovery itself unduly burdensome. Much less are they a justification for

foreclosing fact-gathering altogether. Rather, these concerns can be ameliorated by entry of a protective order allowing Defendants (and third parties) the ability to designate material confidential. To that end, the Parties have already engaged in discussions to enter an agreed-upon protective order providing Defendants with exactly the precautions they need to engage in discovery. *See* ECF 41. Accordingly, the prejudice to Plaintiffs of a stay substantially outweighs any burden on Defendants from proceeding to discovery.

**B. Bifurcation of discovery is unwarranted and infeasible here.**

When determining whether to bifurcate discovery, courts consider several factors, including: (1) the overlap between individual and class discovery, (2) whether bifurcation will promote Federal Rule of Civil Procedure 23's requirement that certification be decided at 'an early practicable time,' (3) judicial economy, and (4) any prejudice likely to flow from the grant or denial of a stay of class discovery. *Arjmandi*, 2025 WL 4661830, at *1; *see also In re Copper Tubing Litig.*, 2006 WL 8434911, at *5 ("The primary considerations to determine whether bifurcation of class certification discovery from discovery on the merits is fair and efficient are whether merits discovery is intermingled with class discovery and whether the litigation is likely to continue absent class certification."). None of these factors lend themselves to bifurcation in this case.

***1. Bifurcation is inappropriate because merits and class discovery are inextricably intertwined in this case.***

It is certainly true that "courts have recognized that allowing class-wide discovery on certification issues and postponing class-wide discovery on the merits is appropriate 'to make early class determination practicable and to best serve the ends of fairness and efficiency.'" *In re Copper Tubing Litig.*, 2006 WL 8434911, at *5. Defendants have cited cases to that effect. *See* ECF 44 at 4–5. But Defendants seek the opposite here – Defendants ask the Court to order merits discovery *before* engaging in class certification discovery, in direct contradiction of Rule 23's command. *See*

ECF 44 at 9–13. But class certification must be decided "[a]t an early practicable time." Fed. R. Civ. P. 23(c)(1)(A). This cannot be accomplished under Defendants' proposed plan of conducting merits discovery first – to the extent merits and class discovery can even be disentangled.

That Defendants have flipped the traditional bifurcation sequence in their request demonstrates why merits and class discovery are inextricably intertwined. Issues such as what information was tracked, where the information was sent, where tracking technology was installed on the HRAs, and the concomitant injuries to Plaintiffs concern not only the merits of the claims in the case but also class certification issues such as commonality, typicality, and adequacy of representation. Merits discovery cannot precede class discovery, and class discovery cannot precede merits discovery. Because they cannot easily be separated, bifurcation would be inappropriate.

***2. Bifurcation will inefficiently compound discovery disputes.***

When the line between merits and class discovery is blurry, as here, bifurcating discovery will likely lead to more disputes about what subjects are fair game (or not). As this Court has observed, "bifurcating in such a manner would likely lead to unnecessary disputes concerning what is merits discovery versus what is class certification discovery." *Burges v. BancorpSouth, Inc.*, 2015 WL 13628132, at *4. Thus, bifurcation in this matter is unlikely to lead to efficiency gains and instead prolongs the litigation. Balancing these considerations militates against bifurcating discovery.

## **CONCLUSION**

For all these reasons, the Court should deny Defendants' Motion to Stay, or Alternatively Bifurcate, Discovery.

Dated: September 11, 2026

Respectfully submitted,

*/s/ J. Gerard Stranch, IV*

J. Gerard Stranch, IV (State Bar No. 02045)
Grayson Wells (State Bar No. 039658)
John C. Roberts (State Bar No. 042673)
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Telephone: (615) 254-8801
Facsimile: (615) 255-5419
gstranch@strachlaw.com
gwells@stranchlaw.com
jroberts@stranchlaw.com

Foster C. Johnson *(admitted pro hac vice)*
Joseph Ahmad*
Mark Holden*
Hannah Price*
**AHMAD, ZAVITSANOS & MENSING, PLLC**
1221 McKinney Street, Suite 2500
Houston, TX 77010
Telephone: (713) 655-1101
fjohnson@azalaw.com
ahmad@azalaw.com
mholden@azalaw.com
hprice@azalaw.com

Lynn A. Toops *(admitted pro hac vice)*
Lisa M. LaFornara *(admitted pro hac vice)*
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 636-6481
ltoops@cohenandmalad.com
llafornara@cohenmalad.com

*** *Pro hac vice* forthcoming**

***Counsel for Plaintiffs, individually and on behalf of all others similarly situated***

**CERTIFICATE OF SERVICE**

I hereby certify that on September 11, 2026, a copy of Plaintiffs' Opposition to Defendants' Motion to Stay, or Alternatively Bifurcate, was filed through the Court's CM/ECF system, which will send notification to all counsel of record registered to receive electronic service.

*/s/ J. Gerard Stranch, IV*__________
J. Gerard Stranch, IV