**UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF TENNESSEE (NASHVILLE)**

| | |
|---|---|
| JOHN DOE, et al., individually and on behalf of all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>UNLOCK HEALTH, INC. MEDICOM DIGITAL, INC. d/b/a MEDICOM HEALTH INTERACTIVE and MEDICOM HEALTH,<br><br>*Defendants.* | Case No. 3:26-cv-00289<br><br>**JOINT DISCOVERY DISPUTE STATEMENT**<br>**Re: Subpoenas**<br><br>District Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Lynda M. Hill |

Plaintiffs John Doe, Jane Doe, and Jack Doe ("Plaintiffs") and Defendants Unlock Health, Inc. and Medicom Digital, Inc. ("Unlock Health" or "Defendants," and together with Plaintiffs, "the Parties"), hereby jointly file this discovery letter relating to the timing and scope of the subpoenas served upon Unlock Health's clients. The Parties have met and conferred pursuant to the Court's August 24, 2026 Order and remain at an impasse. Below, please find the Parties' respective positions prior to the October 1, 2026 discovery dispute hearing.

## I. Plaintiffs' Position

In this privacy case, Plaintiffs allege Defendants secretly deployed tracking technology in their flagship software product, Health Risk Assessments ("HRAs"), which illegally shared patients' Protected Health Information and Personally Identifiable Information with companies such as Google and TikTok, all without Plaintiffs' consent. ECF 1 ¶¶ 1–20. Plaintiffs contend the surreptitious collection and disclosure of their personal, private information without their consent violates multiple statutes and Defendants' duty to maintain their privacy. *See id*. ¶¶ 19, 359–517.

To substantiate their claims,[1] Plaintiffs issued narrow subpoenas, comprised of only three document requests, to healthcare entities believed to have relevant information regarding the tracking technologies embedded by Defendants.[2] The subpoenas seek three things: (1) documents identifying the tracking technologies, (2) documents showing how the tracking technologies were configured, and (3) the data collected by the tracking technologies.[3] Defendants repeat the refrain

---

[1] As numerous courts have found in similar contests, Plaintiffs have Article III standing for injuries to intangible privacy interests. *See* ECF 43 at 5–7. Defendants' motion to dismiss is unlikely to succeed on that basis.

[2] One example of the subpoenas, which are substantively identical, is attached as **Exhibit 1**.

[3] As reflected in Exhibit 1, the three document requests, verbatim, are as follows:

1. Produce DOCUMENTS sufficient to identify all Google Universal Analytics and Google Analytics 4 accounts, properties, views, data streams, tracking IDs, and measurement IDs configured to collect data from or in connection with any Evalia Health, Medicom, or Unlock Health HRA ("Health Risk Assessment").
2. Produce all DOCUMENTS sufficient to show the configuration of the Google Universal Analytics and Google Analytics 4 accounts, properties, views, and data streams identified in response to Request No. 1, including, but not limited to, triggers, rules, variables, events, event parameters, user properties, custom dimensions, custom metrics, enhanced measurement settings, and any mappings or other configuration materials sufficient to show what data was collected from or in connection with any Evalia Health, Medicom, or Unlock Health HRA.
3. Produce all data collected by the Google Universal Analytics and Google Analytics 4 accounts, properties, views, and data streams identified in response to Request No. 1 from or in connection with any Evalia Health, Medicom, or Unlock Health HRA , including, but not limited to, pageviews, screenviews, user engagement events, custom events, event parameters, user properties, custom dimensions,

that the subpoenas are "190 pages," but this is a misleading red herring. Aside from the federal form subpoena and the three aforementioned document requests, the subpoena packets include instructions and definitions (5 pages), instructional guides on how to compile the requested data (31 pages), and a copy of Plaintiffs' complaint in this action (148 pages). The subpoenas are neither overly broad nor unduly burdensome merely because they contain supporting documents.

Issuing the subpoenas – and doing so early – was necessary because Plaintiffs have preservation concerns, and neither party possesses the requested documentation.[4] The subpoenas are not premature. The data sought by the subpoenas is subject to automatic deletion after a period of time, and Plaintiffs would have no recourse in this action for spoliation by a non-party. Nor have Defendants claimed to be in possession of the requested discovery. Moreover, the information sought in the subpoenas goes to the heart of this lawsuit. Identifying the tracking technologies and their configurations (requests 1 and 2) is integral to Plaintiffs' claims, namely that Defendants surreptitiously installed trackers to collect and disclose Plaintiffs' private information in a software product they distributed across the country to numerous healthcare providers. Collecting the data itself (request 3) will enable Plaintiffs to carry their burden at class certification of showing their claims and injuries are typical and common across the proposed class. *See* Fed. R. Civ. P. 23(a). Thus, the information sought is highly relevant and well within the scope of discovery prescribed by Fed. R. Civ. P. 26(b)(1) – it is relatively inexpensive to produce, inaccessible to the parties, and integral to resolving issues at the heart of a case with a significant amount in controversy.

Defendants have not established good cause by showing a "'clearly defined and serious injury' resulting from the discovery sought." *Cabinets To Go, LLC v. Qingdao Haiyan Real Est.*

---

custom metrics, and any captured URL values collected from HRA pages or postback URLs containing HRA result details.

[4] Plaintiffs did not issue the subpoenas until the Parties had conducted a Rule 26(f) conference.

*Grp. Co.*, No. 3:21-CV-00711, 2023 WL 3933343, at *1 (M.D. Tenn. Mar. 1, 2023) (quoting *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir 2001)). Defendants' "competitive injury" concerns, *ante* § II.B, can be alleviated with confidentiality designations through the Parties' agreed protective order, not broadly preventing the gathering of facts altogether. And complying with the subpoenas does not require publicly revealing Defendant's entire client list, as they would have the Court believe. What's more, Defendants' commercial-injury position belies their own arguments for dismissal. Defendants emphatically maintain throughout their motion to dismiss, including in their standing argument, that they did not install any tracking technology in the HRAs, and that any tracking technology present therein was installed by their clients, who provide the HRAs directly to patients. *See* ECF 23 at 3–5, 6, 10, 14, 15–16, 17, 21, 22. Now, in its discovery dispute statement, Defendants claim the information sought by the subpoenas – the identity and configuration of the tracking technologies, and the data they transmitted – would reveal Defendants' own "client-specific implementation and tagging strategies," *ante* § II.B. Defendants cannot have it both ways. If only Defendants' clients implemented tracking technology in the HRAs, as argued in their motion to dismiss, the information sought by the subpoenas could not divulge Defendants' own implementation and tagging strategies.

Plaintiffs' efforts to gather the facts necessary to prosecute their claims should not be stymied. Plaintiffs are willing to narrow the temporal scope of the subpoenas, as they represented while meeting and conferring. Plaintiffs are further willing to treat the information produced as confidential and take steps to ameliorate Defendants' competitive harm concerns. But Defendants have not proffered any remedy that would preserve the data absent the subpoenas. Plaintiffs should be allowed to pursue discovery of probative evidence that may be lost with each passing day.

## II. Defendants' Position

Defendants' respectfully submit that Plaintiffs' subpoenas to Unlock Health's non-party clients should not be enforced. The Court has already stayed their enforcement (ECF No. 34), and that stay should remain in place pending resolution of Unlock Health's Motion to Dismiss. If any enforcement is later permitted, it should proceed only subject to the protections described below.

### A. The Subpoenas Are Premature

Unlock Health's pending Motion to Dismiss (ECF. No. 23) raises a threshold Article III standing challenge that, if sustained, would dispose of or substantially narrow this action. Because personal jurisdiction and venue are not disputed, standing is the operative threshold question, and a stay of discovery is appropriate where, as here, a motion to dismiss challenges the Court's jurisdiction on a pure issue of law that no discovery could cure. *See* Defendants' Motion and Memorandum of Law in Support of Their Motion to Stay, or Alternatively, to Bifurcate Discovery, ECF No. 44 ("Motion to Stay") at 5-6; *Kelley v. Harr*, No. 3:21-cv-00790, 2023 WL 9424958 at *1 (M.D. Tenn. Apr. 14, 2023) (quoting *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 451 (6th Cir. 2008)). Nonetheless, Plaintiffs served 21 subpoenas—roughly 190 pages each—on non-party healthcare entities that are current or former clients of Unlock Health. *Id.* That front-loaded, third-party discovery would impose immediate and substantial costs that cannot be unwound if the Motion to Dismiss is granted, and it therefore should be deferred until the pleadings are settled. *Kelley, supra*, at *1.

### B. Good Cause Supports Protection under Rule 26(c)

Even setting prematurity aside, good cause exists to protect Unlock Health's confidential client information. Although Unlock Health could not move to quash these non-party subpoenas under Rule 45, Rule 26(c) permits it to seek a protective order to prevent the disclosure. *Diamond*

*Resorts Int'l, Inc. v. Phillips*, No. 3:17-CV-01124, 2018 WL 4328257, at *2 (M.D. Tenn. July 16, 2018); Fed. R. Civ. P. 26; Fed. R. Civ. P. 45. The subpoenas seek Google Analytics and related technical materials that would expose Unlock Health's client identities and their client-specific implementation and tagging strategies—the competitively valuable information rivals use to poach clients, undercut pricing, and infer strategy. Defendants' Motion for Protective Order, ECF No. 32 ("Motion for Protective Order") at 4. As the Maul Declaration establishes (ECF No. 32-1), disclosure would cause concrete, foreseeable harm: lost renewals and revenue, lost prospects, pricing pressure, and reputational injury in a confidentiality-dependent regulated industry. *Id.* at 5. Good cause requires exactly this kind of specific showing of a clearly defined and serious injury, not conclusory assertions. *Diamond Resorts*, 2018 WL 4328257, at *2. Courts in this District have entered protective orders on materially similar facts, recognizing that compelled disclosure of a party's client identities independently causes competitive injury. *See Westgate Resorts, Ltd v. Wesley Fin. Grp., LLC*, No. 3:20-CV-00599, 2020 WL 12990976 (M.D. Tenn. Dec. 1, 2020).

**C. The Subpoenas are also Disproportionate and Burdensome.**

Each of the 21 subpoenas runs approximately 190 pages, and the discovery targets HIPAA-protected health information of potentially thousands of patients—an area in which Tennessee recognizes private protections more stringent that HIPAA's. Motion to Stay at 7. Because Plaintiffs' proposed class is not anchored to any fixed class period, the subpoenas are untethered in time and would sweep in years of source code, tag-management histories, configuration records, logs, and client communications across numerous non-party systems. Litigating privilege and PHI issues across that universe of custodians—before the Court has determined whether any claim or class theory can proceed—is not proportional to the needs of the case under Rule 26(b)(1). Fed. R. Civ. P. 26.

### D. Proposed Resolution

Any relevant information can be obtained through more tailored and less intrusive means. Plaintiffs can and should first take party discovery from Unlock Health directed to the named Plaintiffs' own Health Risk Assessment sessions, without broadcasting client identities. Motion for Protective Order at 5. To the extent any non-party discovery is later warranted, it should proceed only with safeguards—anonymization of client names, redaction of client-identifying information, an Attorneys' Eyes Only designation, and targeted sampling across a defined time frame—which preserve any probative value while materially reducing the risk and burden. *Id.*

Respectfully submitted,


*/s/ J. Gerard Stranch*
J. Gerard Stranch
Grayson Wells
John C. Roberts
**STRANCH, JENNINGS, & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Telephone: (615) 254-8801
Facsimile: (615) 255-5419
gstranch@stranchlaw.com
gwells@stranchlaw.com
jroberts@stranchlaw.com

Foster C. Johnson (admitted *pro hac vice*)
Joseph Ahmad*
Mark Holden*
Hannah Price*
**AHMAD, ZAVITSANOS, & MENSING, PLLC**
1221 McKinney, Suite 2500
Houston, Texas 77010
Telephone: (713) 655-1101
Facsimile: (713) 655-0062

*/s/ Christopher Brown*
Christopher Brown
**WOOD SMITH HENNING & BERMAN LLP**
800 S Gay St., Suite 700
Telephone: (865)-267-8050
crbown@wshblaw.com

*/s/ Christopher J. Seusing*______________
Christopher J. Seusing (admitted *pro hac vice*)
Alesandra R. Greco*
**WOOD SMITH HENNING & BERMAN LLP**
33 Riverside Avenue, Suite 502
Westport, CT 06880
Telephone: (475) 245-9880
cseusing@wshblaw.com
agreco@wshblaw.com

*Counsel for Defendants*


* *Pro hac vice* forthcoming

fjohnson@azalaw.com
ahmad@azalaw.com
mholden@azalaw.com
hprice@azalaw.com

Lynn A. Toops (admitted *pro hac vice*)
Lisa M. LaFornara (admitted *pro hac vice*)
**COHEN MALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 636-6481
ltoops@cohenandmalad.com
llafornara@cohenmalad.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2026, a copy of the foregoing was filed through the Court's CM/ECF system, which will send notification to all counsel of record registered to receive electronic service.

*/s/ Christopher J. Seusing*
Christopher J. Seusing