**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| JOHN DOE, JANE DOE, and JACK DOE, individually, and on behalf of all others similarly situated<br><br>Plaintiffs,<br>v.<br><br>UNLOCK HEALTH, INC., MEDICOM DIGITAL, INC. d/b/a MEDICOM HEALTH INTERACTIVE and MEDICOM HEALTH,<br><br>Defendants. | Case No. 3:26-cv-00289<br><br>District Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Lynda M. Hill<br><br>CLASS ACTION<br>JURY DEMANDED |

# PLAINTIFFS' MEMORANDUM OF LAW REGARDING PRODUCTION OF HIPAA-PROTECTED INFORMATION

## INTRODUCTION

Given the nature of this case and what is alleged, Plaintiffs here are entitled to the discovery of protected health information ("PHI"), governed by the Health Insurance Portability and Accountability Act ("HIPAA"), regarding absent class members in addition to the named Plaintiffs. Not only is such discovery within the scope defined by Fed. R. Civ. P. 26 and relevant case law, but HIPAA expressly provides for the production of PHI in civil litigation. Indeed, such data has been routinely produced—subject to protective orders—in dozens of cases involving similar allegations.

HIPAA does not bar the discovery of PHI. Rather, HIPAA provides a protective framework for producing PHI, including non-party PHI. Under 45 C.F.R. § 164.512(e), PHI may be produced in response to a court order, or to a subpoena or discovery request coupled with a qualified protective order covering the PHI. Such an order limits use of the PHI and requires its return or

destruction at the end of the litigation. Courts have ordered production of non-party PHI under this framework. *See, e.g.*, *Rose v. Matrixx Initiatives, Inc.*, No. 07-2404, 2008 WL 11153079 (W.D. Tenn. July 7, 2008). In short, discovery in this case will in no way, shape, or form run afoul of HIPAA.

## ANALYSIS

### I. Non-party PHI is discoverable because it is relevant to the claims, defenses and class certification, and it is proportional to the needs of the case.

This case necessarily involves the production of PHI due to the nature of Defendant's alleged privacy violations. Under Rule 26, "[p]arties may obtain discovery regarding ***any*** nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1) (emphasis added). Here, Plaintiffs seek to certify a class of patients whose PHI Defendants shared with Google. Defendants deny they shared this PHI. The data evidencing the *contrary* is therefore directly relevant to the claims in the case. It is similarly required in order for Plaintiffs to satisfy the requirements for class certification by showing that Defendant disclosed the class's PHI to Google.

Plaintiffs allege that Defendants deployed Google Analytics, Google DoubleClick, and related code on their online Health Risk Assessment ("HRA") forms, which their hospital clients then offered to their patients. ECF 1 ¶¶ 21–23, 95–100, 173, 202–04. Plaintiffs allege that this code surreptitiously sent patients' HRA form entries to Google, including sensitive health information, risk scores, names, email addresses, and device and account identifiers. Plaintiffs' claims turn on their ability to prove that this conduct occurred on a class-wide basis. For example, Plaintiffs' claim that Defendants' conduct violated the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510, relies at least in part on Plaintiffs' ability to show that Defendants disclosed Plaintiffs' and class members' "individually identifiable health information to another person," i.e.,

Google. ECF 1 ¶ 329. Likewise, Plaintiffs' claims under the California Medical Information Act ("CMIA"), Cal. Civ. Code § 56.101, require Plaintiffs to show that Defendants negligently maintained and preserved Plaintiffs' and class members' "medical information" by sharing it with Google. *Id.* ¶ 402. And Plaintiffs' negligence and unjust enrichment claims require proof of what was taken and how it was used. The most relevant evidence that Defendants disclosed Plaintiffs' and class members' PHI to Google is the evidence showing exactly what information about Plaintiffs and class members Defendants disclosed to Google. Thus, discovery of non-party PHI is necessary to prove Plaintiffs' claims.

Defendants have made clear that their defenses depend on this same information, i.e., *what was disclosed* to Google. As Defendants stated in the Initial Case Management Order: "[Defendants] deny they surreptitiously disclosed Plaintiff's protected health information to Google or any third party for marketing or other improper purposes, and deny that any use or configuration of analytics tools on [HRA] webpages resulted in unlawful interception, disclosure, or use of PHI." ECF 42 at 3. It is Defendants' right to deny those allegations – but those denials must be proven. The most relevant proof to rebut these denials (or to validate Plaintiffs' claims) is the evidence showing exactly what patient information Defendants sent to Google. It would be a catch-22 to require Plaintiffs to prove that Defendants shared Plaintiffs' and class members' PHI was shared with Google while simultaneously preventing Plaintiffs from obtaining the evidence showing what PHI Defendants and their healthcare clients shared with Google. Rule 26 does not contemplate such a Catch-22.

Likewise, to achieve class certification, Plaintiffs bear the burden of proving the elements of Rule 23. Doing so requires proof of numerosity, commonality, typicality, adequacy, predominance, and superiority. These elements are necessarily tied to showing that Defendants

shared both the Plaintiffs' and the class members' PHI with Google. Indeed, courts have recognized that discovery of information about putative class members—even information that may contain PHI—can be "indispensable to the class certification inquiry." *Bagley v. New York State Dep't of Health*, No. 15 CV 4845 (FB) (CLP), 2017 WL 11922423, at *1 (E.D.N.Y. Dec. 7, 2017).

Because whether Defendants sent Plaintiffs' and class members' PHI to Google is the very subject matter of the litigation, it is relevant and proportional to the needs of the case. Therefore, it is discoverable under Rule 26(b)(1).

## II. HIPAA contemplates the production of HIPAA-protected data in civil litigation and provides a framework to protect the data and limit its use.

HIPAA does not bar the discovery of PHI in civil cases. Rather, HIPAA expressly contemplates that PHI will be produced in civil litigation and provides a framework for doing so that protects the information by limiting its use and requiring its later destruction or return. Specifically, 45 C.F.R. § 164.512 provides the framework under which "a covered entity may use or disclose protected health information without the written authorization of the individual . . . or the opportunity for the individual to agree or object."

Subsection (e) covers "[d]isclosures for judicial and administrative proceedings." 45 C.F.R. § 164.512(e). Subsection (e)(1) provides two paths for disclosure.

First:

> A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:
>
> (i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order . . . .

45 C.F.R. § 164.512(e)(1)(i).

Second:

> A covered entity may disclose protected health information in the course of any judicial or administrative proceeding: . . .
>
> (ii) In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if: . . . .
>
>> (B) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.

45 C.F.R. § 164.512(e)(1)(ii)(B).

The regulation then defines "satisfactory assurances":

> [A] covered entity receives satisfactory assurances from a party seeking protected health information, if the covered entity receives from such party a written statement and accompanying documentation demonstrating that:
>
>> (A) The parties to the dispute giving rise to the request for information have agreed to a qualified protective order and have presented it to the court or administrative tribunal with jurisdiction over the dispute; or
>>
>> (B) The party seeking the protected health information has requested a qualified protective order from such court or administrative tribunal.

45 C.F.R. § 164.512(e)(1)(iv).

And it defines a "qualified protective order":

> [A] qualified protective order means . . . an order of a court or of an administrative tribunal or a stipulation by the parties to the litigation or administrative proceeding that:
>
>> (A) Prohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested; and
>>
>> (B) Requires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding.

45 C.F.R. § 164.512(e)(v).

Under HIPAA's framework, courts around the country have approved the production of PHI, including non-party PHI. For example, in *Rose*, the Western District of Tennessee entered a qualified protective order under which PHI from non-parties was disclosed to the defendant. 2008 WL 11153079, at *1. In that case, the plaintiff sued the manufacturer of a nasal spray, claiming that use of the spray had caused her to lose her sense of smell. *Rose v. Matrixx Initiatives, Inc.*, No. 07-2404, 2009 WL 902311, at *4 (W.D. Tenn. Mar. 31, 2009). In support, the plaintiff relied on an expert report from a doctor, which was based in part on a case study of patients. *Id.* at *15. The defendant then sought, and the court entered, a qualified protective order requiring the expert doctor to produce to the defendant: (1) notes the doctor made from non-party patient interviews about their experience with the nasal spray; and (2) "all underlying patient care records, data collection sheets and author notes relative to patients upon whose treatment in his clinic [the doctor] relied upon in preparing his expert report in this case[.]" *Rose*, 2008 WL 11153079, at *1. The notes the expert doctor was required to produce included:

> any and all identifying information, medical reports, medical reports, prescription records, x-rays, doctor's orders, nurses' notes, therapy orders and reports, bills or other materials compiled and/or kept as a record by doctors, nurses, pharmacists, x-ray technicians, therapists, or other medical personnel, health care providers or health care facility in the care and/or treatment of these patients, data collection sheets, notes, including, but not limited to Protected Health Information.

*Id.* The court found that HIPAA authorized the disclosure of this non-party PHI, provided a qualified protective order had been entered. *Id.*

Similarly, in *Bagley*, the court ordered production of putative class member data containing PHI and rejected a suggestion that the data should be redacted. 2017 WL 11922423, at *1–2. In that case, the plaintiffs brought a class action alleging that the defendant had failed to adequately design and administer its Medicaid plan, thereby depriving class members of the ability to receive needed care in an at-home or community-based setting rather than in a nursing home. *Id.* The court

found that the requested information was "indispensable to the class certification inquiry." *Id.* at *1. And the court held that "the privacy interests of putative class members in the information sought . . . can be adequately addressed through a comprehensive protective order." *Id.* (citing *Babbitt v. Albertson's, Inc.*, No. 92 CV 1883, 1992 WL 605652, at *5 (N.D. Cal. Nov. 30, 1992); Federal Judicial Center, *Manual for Complex Litigation* § 21.14 (4th ed. 2004)). Noting that "HIPAA does not place medical records outside the reach of discovery," *id.*, the court ordered the defendant to produce the data, without redaction, subject to a HIPAA-qualified protective order and for attorneys' eyes only. *Id.* at *2. The court reiterated that "'federal courts routinely issue protective orders to ensure the confidentiality of medical records,' as the nature of the information sought and the protection and procedure provided by HIPAA and related regulations constitute a showing of 'good cause' within the meaning of Rule 26(c)(1) of the Federal Rules of Civil Procedure." *Id.* (quoting *Johnson v. Federal Bureau of Prisons*, No. 16CV3919, 2017 WL 5197143, at *2 (E.D.N.Y. Nov. 9, 2017)).

Here, the parties have agreed on, and submitted to the Court, such a protective order. *See* ECF 53-1. Under the parties' agreed protective order, a "producing party" includes non-parties producing discovery. *Id*. at 2–3, ¶ 2.11; *see also id*. at 10–11, ¶ 10. Producing parties may designate information as "Confidential" and "Confidential – Attorneys' Eyes Only." *Id*. at 4–7, ¶¶ 5, 6. When so designated, such information may only be used in this litigation. *Id*. at 8, ¶ 8.1. And when the litigation concludes, such information must be destroyed or returned to the producing party. *Id*. at 12–13, ¶ 14. The parties have therefore submitted an agreed protective order that satisfies the requirements of 45 C.F.R. § 164.512(e)(v) as a qualified protective order under HIPAA. Accordingly, the production of PHI of absent class members does not violate HIPAA and Plaintiffs are entitled to receive such information.

## CONCLUSION

For the foregoing reasons, Plaintiffs are entitled to request from Defendants or third-parties HIPAA-protected data for parties other than the putative class representatives because that information is relevant to the claims, defenses, and certification issues, proportional to the needs of the case, and discoverable within the framework provided by HIPAA.

Dated: October 15, 2026

Respectfully submitted,

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch (State Bar No. 023045)
Grayson Wells (State Bar No. 039658)
John C. Roberts (State Bar No. 042673)
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Telephone: (615) 254-8801
Facsimile: (615) 255-5419
gstranch@stranchlaw.com
gwells@stranchlaw.com
jroberts@stranchlaw.com

Foster C. Johnson (admitted *pro hac vice*)
Joseph Ahmad (*pro hac vice* forthcoming)
Mark Holden (*pro hac vice* forthcoming)
Hannah Price (*pro hac vice* forthcoming)
**AHMAD, ZAVITSANOS & MENSING, PLLC**
1221 McKinney Street, Suite 2500
Houston, TX 77010
Telephone: (713) 655-1101
fjohnson@azalaw.com
ahmad@azalaw.com
mholden@azalaw.com
hprice@azalaw.com

Lynn A. Toops (admitted *pro hac vice*)
Lisa M. LaFornara (admitted *pro hac vice*)
**COHEN MALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 636-6481

ltoops@cohenandmalad.com
llafornara@cohenmalad.com

*Counsel for Plaintiffs and the Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record via the Court's electronic filing system on this the 15th day of October, 2026.

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch (State Bar No. 023045)