**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| JOHN DOE, JANE DOE, and JACK DOE, individually, and on behalf of all others similarly situated<br><br>Plaintiffs,<br>v.<br><br>UNLOCK HEALTH, INC., MEDICOM DIGITAL, INC. d/b/a MEDICOM HEALTH INTERACTIVE and MEDICOM HEALTH,<br><br>Defendants. | Case No. 3:26-cv-00289<br><br>District Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Lynda M. Hill<br><br>CLASS ACTION<br>JURY DEMANDED |

**PLAINTIFFS' MEMORANDUM OF LAW REGARDING GOOGLE ANALYTICS DATA REQUESTS**

## INTRODUCTION

In this lawsuit, Plaintiffs allege that Defendants and their healthcare clients deployed Google Analytics tracking technology in HRA forms to collect and illegally share patients' health information with third parties. Accordingly, consistent with Rule 26 and by right, Plaintiffs filed their case and then issued subpoenas to healthcare providers believed to be clients of Unlock Health, asking them to produce the Google Analytics data they gathered from Unlock HRAs. As discussed in more detail below, Plaintiffs are entitled to request this data and it does not require custom coding or the creation of new evidence. It is necessary proof that Plaintiffs need to prepare to try their claims.

Plaintiffs' requests are permissible under FRCP 26(a), 34(a), and 45. The federal rules contemplate no stay of subpoenas at the outset of a case. The requests seek highly relevant information—the HRA-derived Google Analytics data at the heart of every claim. They are not

unduly burdensome. They ask third parties (and later Defendants) to export data meeting defined parameters from accounts where the data is routinely stored. Courts in this Circuit and around the country have found such discovery permissible, and the Court should do so here.

## FACTUAL BACKGROUND

Unlock Health, Inc. and its subsidiary, Medicom Health, Inc. (collectively, "Unlock Health" or "Defendants") are healthcare-focused digital marketing agencies, whose clients are hospitals and health systems across the country. ECF 1 ¶¶ 4, 34. Defendants' flagship products are health risk assessment (HRA) forms. *Id.* ¶ 5. Defendants' clients encourage patients to fill out these forms, which require patients to enter detailed medical histories . *Id.* ¶¶ 5, 161–171. After completing the HRAs, patients receive a health risk "score," which typically evaluates a patient's potential risk for a medical condition. *Id.* ¶ 6. The data patients enter into these forms and the scores themselves are protected PHI under HIPAA, *see* 45 CFR § 160.103, with which Unlock has promised to comply. ECF 1 ¶ 8.

However, Unlock Health routinely disclosed Plaintiffs' and other patients' HRA data to Google. *Id.* ¶¶ 9–11, 47–48. It did so by deploying Google tracking technologies on its online HRA forms, including Google Analytics and Google Double Click. *Id.* ¶¶ 55, 202. In return, Unlock Health received advertising and the benefit of accessing Google Analytics. *Id.* ¶¶ 118, 328, 461. Defendants have also encouraged their healthcare clients—including third parties like Temecula Valley Hospital, Inova Health, and Ochsner Health—to deploy their own tracking technologies on HRA forms, including their own Google pixels. *See id.* ¶¶ 21–23; 49; 159–197, 204, 380. Defendants' conduct violates numerous state and federal laws, giving rise to this lawsuit. *See generally* ECF 43.

As a result of Defendants' conduct, Google—an unauthorized third party—now possesses Plaintiffs' and Class Members' personal health information. The PHI Defendants shared with Google includes data such as patients' names, email addresses, IP addresses, cookies identifying patients' Google accounts, the hospitals where they were being treated, the specific HRA forms patients accessed and filled out, and patients' HRA scores. ECF 1 ¶¶ 21–23, 97, 175–175, 186, 196, 198. Google uses this data for targeted advertising—both by offering ads directly and by selling Plaintiffs' data to additional third parties.

Plaintiffs now seek to determine the exact extent and nature of the data Defendants' HRA forms disclosed to Google. To this end, Plaintiffs have sent subpoenas to certain of Defendants' healthcare clients requesting the Google Analytics data they have tracked and stored via Defendants' HRAs.

Defendants and their healthcare clients have access to this information through their own "Google Analytics 4" accounts. Each Defendant or healthcare system has embedded pixels in an HRA through a Google Analytics 4 account. Google Analytics 4 is an online service offered by Google that enables a business user (e.g., a hospital) to gather data for advertising purposes. The hospital gains access to Google's tracking technologies when it signs up for the account. The hospital then places the tracking technologies on any website they control where they want to gather data, e.g., inside of an online HRA form. The hospital can then view the tracked data directly in their Google Analytics 4 account. Indeed, this is the primary benefit of having a Google Analytics 4 account—being able to access tracked user data for marketing insights and advertising.

Plaintiffs' subpoenas include three requests that are narrowly tailored to obtaining Google Analytics data sourced from Unlock Health HRAs. The first two requests seek documents

sufficient to identify the Google Analytics accounts from which third parties have collected data in connection with Defendants' HRAs. The third request seeks the data itself.

Plaintiffs' third request comes with detailed instructions to export electronically stored information from two sources:

(1) **Subpoena Exhibit 1** provides instructions to extract "BigQuery" data. BigQuery is Google's database platform. Some Google Analytics 4 accounts are configured to automatically export data to BigQuery. Subpoena recipients who have connected their accounts in this way are instructed to export the data from BigQuery. *See* ECF 50-2 at 10.

(2) **Subpoena Exhibit 2** provides instructions to extract Google Analytics 4 data directly from a Google Analytics 4 account. Subpoena recipients with a Google Analytics 4 account not connected with BigQuery are instructed to follow these steps. *See* ECF 50-2 at 11.

Each set of instructions contemplates the export of electronically stored information in the producing party's possession, custody, and control. Neither set of instructions requires the producing party to generate new data or write custom code. *See* Shafiq Decl., attached hereto as **Exhibit A**. Instead, they are straightforward steps to export data that already exists in the producing party's own account. A typical user of a Google Analytics account routinely exports data by precisely this method.

First, the producing party accesses their own Google Analytics account. ECF 50-2 at 13. Second, the producing party determines if their account is linked with BigQuery. ECF 50-2 at 14–16.

If the producing party's account is connected with BigQuery, then the recipient starts a query in BigQuery. ECF 50-2 at 17–19. BigQuery is searched using "SQL" (Structured Query Language), a standard format for requesting records from a database. The SQL query is not software. It is an instruction that tells the database which records are being requested, similar to a Boolean search. Plaintiffs have provided the ***exact*** query the producing party will enter. ECF 50-2 at 20. The only information they need to provide is their own website, project number, and the date range associated with their HRA—they can simply copy-paste this information into the identified query fields—before running the query. ECF 50-2 at 21. This is the entire process. Once the query is run, the producing party downloads the data and produces it. ECF 50-2 at 22.

If the account is not connected to BigQuery, the producing party is instructed to export it directly from their Google Analytics 4 account using the account's "Explore" feature. ECF 50-2 at 24–26. The producing party selects the relevant search parameters, which Plaintiffs have identified. ECF 50-2 at 27–42. All of the search parameters are button clicks and drop-down selections except the final one. At this step, the producing party enters pre-written text (again, provided in full by Plaintiffs and amenable to copy-paste) into a text field. ECF 50-2 at 42. The producing party then simply exports the data that matches the parameters. ECF 50-2 at 43. As with the steps laid out in Exhibit 1, the steps in Exhibit 2 do not ask the producing party to ***create*** anything at all. They ask the producing party to export data that meets predefined parameters relevant to the allegations in Plantiffs' complaint.

The Court has asked Plaintiffs to submit a memorandum of law explaining why Plaintiffs are entitled to request this data from Defendants and third parties. ECF 59 at 3. As explained in detail below, the data is highly relevant, easy for Defendants and third parties to produce, of a type that is regularly found to be discoverable, and likely to be lost if Defendants and third parties do

not produce it. The requests are therefore well within the scope of discovery and should be permitted.

## ANALYSIS

### I. The Google Analytics data Plaintiffs have requested is both relevant and discoverable.

A party is entitled to discovery of any matter that is relevant, nonprivileged, and, even if not admissible at trial, "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Relevance is defined very broadly for discovery purposes. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n. 12 ("[T]he court should and ordinarily does interpret 'relevant' very broadly to mean matter that is relevant to anything that is or may become an issue in the litigation."); *U.S. v. Leggett & Platt, Inc.*, 542 F.2d 655, 657 (6th Cir. 1976) (Rule 26 authorizes "extremely broad" discovery). These are cardinal rules of our system.

The Google Analytics data is relevant. Plaintiffs' claims are based on the core allegation that Defendants and their healthcare clients wrongfully disclosed their PHI to Google using Google Analytics tracking technology built into Defendants' HRA forms. *See* ECF 1 ¶¶ 21–23; 49; 55; 159–197, 202, 204, 380. The subpoenas target this exact data. The search parameters and queries are calibrated to export the Google Analytics data extracted from Unlock Healthcare HRA forms and stored in Defendants' and their clients' accounts during the class period.

Plaintiffs must seek this information from Defendants' healthcare clients (as well as Defendants themselves) because Plaintiffs do not yet know which entities employed the actual Google pixels and extracted their data. They only know that certain providers used Unlock Health HRA forms, and that these forms contained tracking pixels. For instance, each hospital that provided an Unlock Health HRA to its patients did so on a webpage. Plaintiffs can view past snapshots of this webpage using public tools like Wayback Machine. The Wayback Machine shows the ".html" code at the time the HRA was live. The code associated with each of the subpoenaed

entities' HRA forms contained Google Analytics values that indicate tracking technology was active during the class period.[1] Plaintiffs' discovery requests are necessary to obtain evidence of what data was tracked and where it was sent. They are more than reasonably calculated to lead to discoverable evidence. They are carefully crafted to export the data that will be the core evidence in this case.

Plaintiffs' requests are also proportional because they involve minimal burden to Defendants or third parties. *See Nylander v. Unum Life Ins. Co. of Am.*, No. 3:16-1984, 2017 WL 10309297 (M.D. Tenn. June 8, 2017) (noting that discovery must be proportional to the needs of the case). Defendants and third parties merely need to follow the instructions in the subpoenas, and the data Plaintiffs seek will be automatically compiled into reports. The data is readily accessible to Defendants and the subpoenaed parties through their own Google accounts. For instance, generating the reports described in Exhibit 2 to the subpoena is one of the basic functions of Google Analytics. In counsel's experience, entities like Defendants and the subpoena recipients have been able to produce this exact same information in other cases with little difficulty. And as explained in more detail below, it is proper to request discovery by running a query in a pre-existing database.

## II. Plaintiffs' requests do not require Defendants or third parties to create new code, new information, or new evidence.

The Federal Rules expressly allow Plaintiffs to obtain electronically stored information from Defendants. Fed. R. Civ. P. 34(a). Discoverable forms of electronically stored information include "data or data compilations" stored "in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably

[1] It is therefore public information: (a) who Unlock's healthcare clients were, and (b) that their HRA forms contained tracking technology. Plaintiffs are relying on this public information—not disclosures from other lawsuits—as the basis for their discovery requests.

usable form." *Id.* Electronic data is likewise discoverable from third parties. *See* Fed. R. Civ. P. 45, Committee Notes on Rules—2006 Amendment ("[E]lectronically stored information, as defined in Rule 34(a), can also be sought by subpoena.").

Plaintiffs' subpoenas are directed to electronically stored information in the recipients' possession, custody, or control. As explained above, the BigQuery and Google Analytics 4 data already exists, is readily accessible to Defendants and the subpoena recipients through their own Google accounts, and can be automatically exported by entering the parameters or queries that Plaintiffs have provided.

Courts routinely order parties to query databases in response to discovery requests. *E.g.*, *McGlone v. Centrus Energy Corp.*, No. 2:19-CV-2196, 2020 WL 4462305, at *3 (S.D. Ohio Aug. 4, 2020) (compelling compliance with subpoena requesting a third party to query a database to produce time reports); *Shapira v. Rare Character Whiskey Co., LLC*, 2025 WL 4055407, at *5 (W.D. Ky., Oct. 14, 2025), *report and recommendation adopted*, 2025 WL 3460114 (W.D. Ky., Dec. 2, 2025) (compelling defendants to query a database of existing financial information and generate a report from that information); *N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, 325 F.R.D. 36, 51 (E.D.N.Y. 2018) ("To the extent [Defendant] can input search parameters and produce varying configurations of [its] raw data, and to the extent the data is otherwise discoverable, [Defendant] cannot avoid production without a more thorough showing that production would be unduly burdensome or costly"). While Rule 34 does not impose a duty to create new documents or evidence, "'requiring a party to query an existing database to produce reports for opposing parties' does not equate to requiring the creation of a new document." *McGlone*, 2020 WL 4462305, at *3.

Plaintiffs' requests are similar to those that courts in this Circuit and across the country have found permissible. In *McGlone*, for instance, plaintiffs in a class action subpoenaed a third party, asking them to enter custom queries into a database of nearly 1.5 million records. *Id.* at *1–2. The Court found that although "the information Plaintiffs seek does not currently exist in the format requested," the subpoena did not amount to a request to create new evidence because the data itself existed in the third party's database. *Id.* at *3.[2] Similarly, Plaintiffs have asked Defendants and the subpoena recipients to export existing data from a database. They have not asked Defendants to write new code, create new evidence, or generate new data. Plaintiffs have made the process as painless as possible by identifying the ***exact*** queries and search parameters Defendants and their clients should run.

Accordingly, the data requests in Plaintiffs' subpoenas are well within the scope of permissible discovery and the requested output is permitted by the rules.

## III. The Google Analytics Data will be automatically deleted if Defendants and third parties do not take steps to preserve it.

Not only are Plaintiffs' discovery requests permissible—they are time-sensitive. The data that Plaintiffs are seeking includes "user-level" and "event-level" data associated with Google's tracking cookies. According to Google, the Analytics account holder can set this data to be retained for either 2 or 14 months.[3] After the retention period ends, "user-level and event-level data stored by Google Analytics is automatically deleted from Analytics servers."[4] The data may nonetheless

[2] In *McGlone*, the Court nonetheless granted the motion to quash because the plaintiffs independently had the ability to search the same data, which was in a public database maintained by the Ohio Department of Health. 2020 WL 4462305, at *4. Here, in contrast, each Google Analytics account is privately held and accessible only to the Defendant or healthcare clients who owns it.
[3] *Data retention*, Analytics Help, https://support.google.com/analytics/answer/7667196 (accessed Oct. 9, 2026).
[4] *Id.*

remain in the hands of advertisers and data brokers to whom Defendants allowed their data to be transferred. *See* ECF 1 ¶¶ 51, 200–213, 252, 255. But Plaintiffs' ability to obtain evidence of Defendants' wrongdoing will be lost. Likewise, while certain of the subpoenaed third parties have preserved the relevant Google data as a consequence of prior litigation, pending settlements mean that many of those third parties—including Tenet Healthcare and Hoag Memorial Hospital—will be at liberty to delete the requested information in their possession unless the Court permits Plaintiffs to serve and to enforce subpoenas on such third parties. This would mean that years of relevant evidence would be permanently lost if Plaintiffs were not permitted to timely pursue subpoenas for this evidence. Because the loss of such critical evidence would be highly prejudicial to the Plaintiffs and the proposed Class Members, the Court should permit discovery to go forward.

## CONCLUSION

For all these reasons, the Court should permit Plaintiffs to request the information sought in its third-party subpoenas from Defendants and their healthcare clients.

Dated: October 15, 2026

Respectfully submitted,

*/s/ J. Gerard Stranch, IV*

J. Gerard Stranch (State Bar No. 023045)
Grayson Wells (State Bar No. 039658)
John C. Roberts (State Bar No. 042673)
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Telephone: (615) 254-8801
Facsimile: (615) 255-5419
gstranch@stranchlaw.com
gwells@stranchlaw.com
jroberts@stranchlaw.com

Foster C. Johnson (admitted *pro hac vice*)
Joseph Ahmad (*pro hac vice* forthcoming)
Mark Holden (*pro hac vice* forthcoming)

Hannah Price (*pro hac vice* forthcoming)
**AHMAD, ZAVITSANOS & MENSING, PLLC**
1221 McKinney Street, Suite 2500
Houston, TX 77010
Telephone: (713) 655-1101
fjohnson@azalaw.com
ahmad@azalaw.com
mholden@azalaw.com
hprice@azalaw.com

Lynn A. Toops (admitted *pro hac vice*)
Lisa M. LaFornara (admitted *pro hac vice*)
**COHEN MALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 636-6481
ltoops@cohenandmalad.com
llafornara@cohenmalad.com

*Counsel for Plaintiffs and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record via the Court's electronic filing system on this the 15th day of October, 2026.

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch (State Bar No. 023045)