**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

---

| | |
|---|---|
| JOHN DOE, JANE DOE, and JACK DOE,<br><br>Plaintiffs,<br>v.<br><br>UNLOCK HEALTH, INC., MEDICOM DIGITAL, INC. d/b/a MEDICOM HEALTH INTERACTIVE and MEDICOM HEALTH,<br><br>Defendants. | Case No. 3:26-cv-00289<br>District Judge Crenshaw<br>Magistrate Judge Hill<br><br>**CLASS ACTION**<br>**JURY DEMANDED** |

---

**DEFENDANTS' AMENDED RESPONSE TO PLAINTIFFS' MEMORANDUM OF LAW REGARDING PRODUCTION OF HIPAA-PROTECTED INFORMATION**

---

## I. INTRODUCTION

Plaintiffs' memorandum answers a question the Court did not ask. The Court directed Plaintiffs to explain why they are "entitled to request from Defendants or third-parties" HIPAA-protected data "for parties other than the putative class representatives." Second Case Management Order, ECF No. 59, ¶ 9. Instead, Plaintiffs devote their memorandum to a proposition Defendants do not contest: that HIPAA "does not bar the discovery of PHI" and supplies a framework for producing it under a qualified protective order. Plaintiffs' Memorandum of Law Regarding Production of HIPAA-Protected Information, ECF No. 61 ("Mem.") at 1. That is true but beside the point. HIPAA's permissive disclosure framework does not make absent class members' protected health information ("PHI") relevant, proportional, or discoverable; Rule 26 and this Court's orders govern those questions, and Plaintiffs' Memorandum does not attempt to carry the burden each imposes.

A threshold premise defeats the request before Rule 26 is even reached: Defendants transmit no PHI. Plaintiffs' contrary assumption conflates PHI with the de-identified website-navigation and behavioral analytics data actually at issue. Three further points control. First, 45 C.F.R. § 164.512(e) permits—but does not compel—disclosure of PHI in litigation and does not expand the scope of discovery; the agreed qualified protective order is a confidentiality safeguard, not a determination of relevance. Second, the PHI of absent members of a putative nationwide class is premature and outside the scope the Court set when it stayed all discovery and limited the Rule 26(f) plan to "merits-based discovery of the putative class representatives." ECF No. 59, ¶¶ 3, 5. Such precertification discovery is disfavored and requires a particularized showing Plaintiffs have not attempted. Third, Plaintiffs' two authorities do not support the wholesale production they seek. As the Court recognized, this is not "like a data breach case," and whether "all of those fields" of PHI are even "necessary" remains open. Transcript of October 1, 2026 Hearing ("Tr.") at 36:2-3; 64:10-16. The Court should decline to declare Plaintiffs entitled to absent members' PHI now.

## II. ARGUMENT

### A. Plaintiffs' Request Rests on a Flawed Premise: Defendants Transmit No PHI.

Plaintiffs' request assumes what they never establish—that Defendants transmit "PHI" at all. HIPAA protects only "protected health information," the subset of "individually identifiable health information" transmitted or maintained in electronic or other media. 45 C.F.R. § 160.103. That predicate term is conjunctively defined: the information must both "[r]elate[] to" an individual's "past, present, or future physical or mental health or condition," health care, or payment, and either "identif[y] the individual" or supply "a reasonable basis to believe the information can be used to identify the individual." *Id.* As the court held in vacating HHS's online-tracking guidance, "information must satisfy both the 'relates to' clause and the 'identifies' clause" to qualify. *Am. Hosp. Ass'n v. Becerra*, 738 F. Supp. 3d 780, 801 (N.D. Tex. 2024). Generic

identifiers untethered to any health condition are not PHI. Plaintiffs blur that line, lumping together "health information, risk scores, names, email addresses, and device and account identifiers" as if each were PHI. Mem. at 2.

The data actually at issue satisfies neither prong. On Unlock Health's platform, "the only data transmitted to clients is a fixed set of event fields—such as 'full-disclaimer-view,' 'start-page-viewed,' 'back-button-clicked,' and 'contact-page-viewed.'" Declaration of Alan Harker in Support of Defendants' Responses to Plaintiffs' Memoranda of Law ("Harker Decl."), attached hereto as Exhibit A, ¶ 12. Those fields capture how a user moves through a webpage—not any diagnosis, condition, treatment, or payment. "No custom code and no personally identifiable information about any individual is collected or transmitted," and the data is "encrypted when transmitted, then stored in an encrypted database," inaccessible to Unlock Health "without explicit authorization from the client." *Id.* ¶¶ 11-12. Website-navigation metadata of this kind is "inherently de-identified." *Becerra*, 738 F. Supp. 3d at 803-04 (quoting 45 C.F.R. § 164.514(a)). And even if such event data could be tied to a person, it would show only that an identifiable visitor viewed a page—not the reason for the visit: "Identity (Person A) + Query (Condition B) ≠ IIHI (Person A has Condition B)." *Id.* at 801-02.

The party asserting that information is PHI bears the burden of showing it. *Love v. Med. Coll. of Wis.*, No. 15-CV-650, 2016 WL 3064095, at *2 (E.D. Wis. May 31, 2016). Plaintiffs do not carry that burden; they assume it, branding as "PHI" every data point their analytics theory touches. The Court need not resolve that merits dispute now. It is enough that Plaintiffs' entitlement theory rests on an unproven equation of de-identified behavioral analytics data with PHI, which only sharpens why the relevance, proportionality, and sequencing limits below must be satisfied first.

### B. HIPAA's Permissive Framework Does Not Establish Absent Class Members' PHI Is Relevant, Proportional, or Discoverable.

Plaintiffs' central premise—that HIPAA "expressly contemplates" production of PHI in civil litigation—proves nothing about whether the PHI they seek is discoverable. Mem. at 4. The regulation provides only that a covered entity "may disclose protected health information in the course of any judicial or administrative proceeding" in response to a court order or, for a discovery request, upon satisfactory assurance that the parties have secured a qualified protective order. 45 C.F.R. § 164.512. The operative word is permissive. A qualified protective order is defined solely as one that prohibits use of the PHI outside the litigation and requires its return or destruction at the end of the case. *Id.* Those are confidentiality requirements; nothing in the regulation speaks to relevance, proportionality, or the scope of permissible discovery.

Courts in this Circuit recognize the distinction. HIPAA creates no physician-patient privilege; it regulates the methods of disclosure, not the substance of what is discoverable. *Wade v. Vabnick-Wener*, 922 F. Supp. 2d 679, 691 (W.D. Tenn. 2010). PHI is therefore treated like any other evidence: if it is "relevant to [a] party's claim or defense" under Rule 26(b)(1), it is discoverable. If not, no protective order can make it so, because the question turns on Rule 26, not HIPAA. *Berry v. Specialized Loan Servicing, LLC*, No. 218CV02721SHLDKV, 2019 WL 9103421 at *3 (W.D. Tenn. June 24, 2019); *Shabazz v. Centurion*, No. 117CV01051JDTCGC, 2020 WL 1442976 *2 (W.D. Tenn. Mar. 24, 2020) (Rule 26(b)(1) reaches only matter that is both relevant and "proportional to the needs of the case"). Section 164.512(e) thus prescribes how PHI may be obtained—by subpoena with satisfactory assurance and a qualified protective order—not whether a given request is proper. *Berry*, 2019 WL 9103421 at *3. Even with such an order in place, "there must be an independent determination of the reasonable relevance, scope, breadth,

and necessity of the requested non-party protected health information before appropriate production under the law can be made." *Tyree v. Seven Hills Anaesthesia LLC*, No. 1:23-CV-325, 2025 WL 1993529 (S.D. Ohio July 17, 2025).

The point is sharpest where, as here, the PHI belongs to non-parties. Records implicating non-parties' privacy "should not be ordered produced except upon a compelling showing of relevance," *Miller v. Fed. Express Corp.*, 186 F.R.D. 376, 384–385 (W.D. Tenn. 1999), and where production would sweep in their medical information, their privacy is of "paramount importance," *Shabazz*, 2020 WL 1442976 at *6. Even acknowledging the Section 164.512(e) framework, courts in this Circuit have narrowed or denied discovery of non-parties' PHI on relevance and overbreadth grounds. *Id.*; *Tyree*, 2025 WL 1993529 at *3. Plaintiffs' agreed protective order (ECF No. 53-1) thus resolves nothing: it establishes only that discoverable PHI, once produced, will be kept confidential. It does not relieve Plaintiffs of their threshold obligation to show that the absent class members' PHI they seek is relevant and proportional under Rule 26—which they have not done.

Nor could Plaintiffs cure these deficiencies by demanding absent-member PHI from Defendants directly. Unlock Health cannot produce what it does not possess or control: its clients independently configure their own HRA environments, and the underlying data remains encrypted and inaccessible to Unlock Health absent client authorization. *See* Harker Decl. ¶¶ 7, 8, 11, 13. Rule 34 reaches only documents within the "possession, custody or control of the party upon whom the request is served"; it does not require a party to create or extract data it does not hold. *Gipson Mech. Contractors, Inc. v. >U.a. Loc. 572 of the United Assoc*, No. 3:18-CV-00768, 2020 WL 8254820 at *4 (M.D. Tenn. Apr. 10, 2020). And as a business associate of each client covered entity, Unlock Health could not extract client-held PHI without conflicting with its own HIPAA obligations. The data Plaintiffs seek resides with the non-party clients, not Unlock Health.

### C. Discovery of Absent Class Members' PHI is Premature and Exceeds the Scope Set by the Court.

Even setting HIPAA aside, the relief Plaintiffs seek collides with the Court's sequencing of this case. The Court "STAYED" "[a]ll discovery, including third-party discovery," pending approval of a Rule 26(f) plan, and directed that the plan "be limited to merits-based discovery of the putative class representatives," with third-party discovery likewise confined to "the putative class representatives." ECF No. 59, ¶¶ 3, 5, 6. No motion for class certification is pending, and Defendants' threshold Article III standing challenge remains undecided. *See* ECF No. 44 at 5. A declaration that Plaintiffs are presently "entitled" to the PHI of every absent class member would invert the measured, phased approach the Court adopted on October 6.

The request also runs afoul of settled limits on precertification discovery of absent class members. In *Oppenheimer*, the Supreme Court held that a demand for absent members' identifying information "cannot be forced into the concept of 'relevancy'" under Rule 26(b)(1) where it is not sought "for any bearing that it might have on issues in the case," and may be obtained only "where [it] could be relevant to issues that arise under Rule 23." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350–353 (1978). Courts in this Circuit enforce that principle through a demanding gateway: a party seeking discovery from an unnamed class member "must first show a particularized need for said discovery and first seek permission from the court." *In re Skelaxin (Metaxalone) Antitrust Litig.*, 292 F.R.D. 544, 549–550 (E.D. Tenn. 2013). Such discovery is "disfavored" and "rarely permitted," and the party seeking it "bears the burden of demonstrating that it is appropriate and warranted"—a "heavy" burden requiring a showing that the discovery "is necessary, addressed to common issues/questions, and not designed to harass or unduly burden absent class members." *Stephenson v. Fam. Sols. of Ohio, Inc.*, No. 1:18CV2017, 2022 WL 597261

at *7 (N.D. Ohio Feb. 28, 2022); *Walker v. Bekaert Corp.*, No. 5:21-CV-01468-BMB, 2022 WL 541222 at *1 (N.D. Ohio Feb. 23, 2022).

Plaintiffs make none of these showings. They do not seek leave; they do not identify a particularized need tied to a specific Rule 23 element; and they do not explain why absent members' PHI—as opposed to the three named Plaintiffs' data the Court has authorized—is necessary now. *See generally* Mem. To the contrary, they frame their request around proving the merits—that Defendants shared class members' PHI with Google. *Id.* at 3. A request aimed at "individualized factual information" of absent members "runs directly contrary to the requirement that discovery of absent class members involve common (as opposed to individualized) issues." *Stephenson*, 2022 WL 597261 at *9. Precertification discovery must be "broad enough to give plaintiffs a realistic opportunity to satisfy the Rule 23 requirements, but narrow enough to prevent defendants from being unduly burdened by discovery that is irrelevant, privileged, or confidential[.]" *Moore v. Westgate Resorts*, No. 3:18-CV-410-DCLC-HBG, 2020 WL 113352 at *4 (E.D. Tenn. Jan. 9, 2020). Where requests sweep in individualized, merits-oriented material, the court limits production to what is proportional now and defers broader discovery until after certification. *Id.* at *6-7. Rule 26(b)(2)(C) independently requires the Court to limit discovery that is cumulative, obtainable from a more convenient source, or whose burden "outweighs its likely benefit." *In re Skelaxin*, 292 F.R.D. at 550. The orderly course is to defer any absent-member PHI discovery to the certification stage, as the Court's phased plan contemplates.

The demand independently founders on the non-party status of the data. Absent members' PHI sits not with Defendants but in the separate accounts of Unlock Health's non-party hospital clients, and binding Sixth Circuit authority protects those non-parties: courts must weigh the burden of compliance against the need for discovery, treat "the status of [the] person as a non-

party [as] a factor," and shield non-parties from undue burden and expense the serving party failed to take reasonable steps to avoid. *In re: Mod. Plastics Corp.*, 890 F.3d 244, 251–252 (6th Cir. 2018). A requesting party therefore "must first establish that it cannot obtain the discoverable information from its party-opponent." *In re CareSource Mgmt. Grp. Co.*, 289 F.R.D. 251, 254 (S.D. Ohio 2013). Plaintiffs cannot: the Court has authorized merits discovery of the three named Plaintiffs' own data, yet Plaintiffs have not begun—let alone exhausted—that discovery before demanding the PHI of thousands of absent patients from non-parties. That is precisely the avoidable, non-party burden the Rules forbid.

### D. Plaintiffs' Authorities Do Not Authorize The Wholesale Production of Absent Class Members' PHI They Seek.

Plaintiffs rest on two decisions, and neither supports their request. The *Rose* citation is not a reasoned relevance ruling at all—it is the agreed qualified protective order itself. *Rose v. Matrixx Initiatives, Inc.*, No. CV 07-2404-ML/P, 2008 WL 11153079 (W.D. Tenn. July 7, 2008). It ordered a narrow, targeted production—the "identity and ... medical records of patients upon whose treatment ... Dr. Terence Davidson relied upon in preparing his expert report," plus his patient-interview notes, *id.* at *1—i.e., non-party PHI directly underlying a specific testifying expert's opinion in a single-plaintiff product-liability case. That is worlds away from the PHI of thousands of absent members of a putative nationwide class before certification. If anything, *Rose* confirms Defendants' point: the order was a Rule 26(c) confidentiality supplement tracking § 164.512's procedural conditions, and did not adjudicate the relevance or scope of what could be discovered. *Id.*

*Bagley* is equally inapposite. *Bagley v. New York State Dep't of Health*, No. 15 CV 4845 (FB) (CLP), 2017 WL 11922423 (E.D.N.Y. Dec. 7, 2017). There, the court ordered unredacted production of putative-class-member data only after a case-specific finding—made on "familiarity

with the case gained through two years of pretrial supervision"—that the ESI was "indispensable to the issue of class certification" and sought "entirely for proper purposes." *Id.* at *2. Two features absent here drove that result: the case sought "only injunctive relief," which lessened the usual precertification circumspection, and the dispute was not whether to produce the data but only "whether the ESI should be redacted," where redaction would impose months of "undue burden and delay." *Id.* at *1-2. Here, by contrast, Plaintiffs seek damages, no certification motion is pending, no comparable necessity finding has been made, and the Court has already questioned whether "all of those fields" need be extracted at all. Tr. at 64:10-16. *Bagley* confirms that absent-member PHI becomes discoverable only after a demonstrated, certification-specific need—the showing Plaintiffs have not made.

**E. The Non-Party Patients' Privacy Interests, Heightened under Tennessee Law, Counsel Against the Broad Relief Plaintiffs Seek.**

Finally, the interests of the absent patients themselves weigh against ordering their PHI be produced now. Courts hold that "the non-party patients' right to confidentiality outweighs" a requesting party's "proffered justification for accessing the non-party patient medical records [,]" and direct the requesting party to pursue "less intrusive means" — such as depositions—that do not implicate protected records before compelling production. *Kapp v. Jewish Hosp., Inc.*, No. 1:09-CV-949, 2011 WL 2669457 at *5-6 (S.D. Ohio July 7, 2011). Even where access to non-party records would be more efficient, the litigant's interest does not outweigh the patients' right to confidentiality. *Id.* Those interests carry particular force in this forum. HIPAA "does not preempt a state law which is 'more stringent,'" and the Western District of Tennessee has held that "the laws of Tennessee are more stringent than HIPAA" in protecting non-party patient health information. *Wade v. Vabnick-Wener*, 922 F. Supp. 2d 679, 686–687, 691-692 (W.D. Tenn. 2010). Tennessee patients' expectation that their medical records will remain private has "constitutional,

statutory, and decisional protection," reflected in statutes limiting disclosure and in the Tennessee Supreme Court's recognition of an implied covenant of confidentiality between physician and patient. *McNiel v. Cooper*, 241 S.W.3d 886, 894–895 (Tenn. Ct. App. 2007). Tennessee statutes "expressly require a physician and others to keep a patient's medical records and identifying information confidential." *Doe by Doe v. Brentwood Acad. Inc.*, 578 S.W.3d 50, 54 (Tenn. Ct. App. 2018).

Those protections reinforce the need for tailoring rather than the blanket entitlement Plaintiffs assert. The Court itself flagged the point at the October 1 hearing, observing that this is not a data-breach case in which the object is to recover "data that has escaped," and asking whether it is "necessary that you actually extract" "all of the personal health information." Tr. at 37:7, 64:13-14. Where absent-member data may eventually bear on certification, the answer is targeted, proportional discovery—limited fields, aggregation, or anonymization where the probative purpose allows—not production of the full PHI of every absent class member. These are the questions properly reserved for the Rule 26(f) plan and the November 5 conference, not resolved by the sweeping declaration of entitlement Plaintiffs request.

## III. CONCLUSION

Defendants do not contend that HIPAA forever bars discovery of PHI. Rather, they contend that HIPAA does not answer the question before the Court; and that under Rule 26 and this Court's phased-discovery orders, Plaintiffs are not entitled—at this stage—to the protected health information of absent class members. Any such discovery should await a demonstrated, certification-specific need and be narrowly tailored to it, consistent with the Rule 26(f) plan and the limits the Court has already set. Defendants respectfully request that the Court deny Plaintiffs' request for wholesale production of absent class members' PHI at this juncture.

Respectfully Submitted,

Dated: Knoxville, Tennessee
October 29, 2026

**WOOD, SMITH, HENNING & BERMAN, LLP**

By: */s/ Christopher J. Seusing*
Christopher J. Seusing, Esq. (Admitted Pro Hac Vice)
William J. Roe, Esq.
Alesandra Greco, Esq. (Admitted Pro Hac Vice)
800 S. Gay Street, Ste. 700
Knoxville, TN 37929
Tel.: 865-267-8050
Fax.: 865-267-8051
wroe@wshblaw.com
cseusing@wshblaw.com

*Counsel for Defendants Unlock Health, Inc. Medicom Digital, Inc. d/b/a Medicom Health Interactive And Medicom Health*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 29, 2026, a copy of DEFENDANTS' AMENDED RESPONSE TO PLAINTIFFS' MEMORANDUM OF LAW REGARDING PRODUCTION OF HIPAA-PROTECTED INFORMATION was filed through the Court's CM/ECF system, which will send notification to all counsel of record registered to receive electronic service.

/s/ *Christopher J. Seusing*
Christopher J. Seusing, Esq.