**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

---

| | |
|---|---|
| JOHN DOE, JANE DOE, and JACK DOE,<br><br>Plaintiffs,<br>v.<br><br>UNLOCK HEALTH, INC., MEDICOM DIGITAL, INC. d/b/a MEDICOM HEALTH INTERACTIVE and MEDICOM HEALTH,<br><br>Defendants. | Case No. 3:26-cv-00289<br>District Judge Crenshaw<br>Magistrate Judge Hill<br><br>**CLASS ACTION**<br>**JURY DEMANDED** |

---

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MEMORANDUM OF LAW REGARDING GOOGLE ANALYTICS DATA REQUESTS**

---

## I. INTRODUCTION

The Court's Second Case Management Order (ECF No. 59) directed Plaintiffs to explain why they are entitled to request "custom-generated reports from Defendants or third parties as reflected in Doc No. 50-2." ECF No. 59 at 3. Plaintiffs' Memorandum of Law Regarding Google Analytics Data Requests ("Plaintiffs' Memorandum" or "Mem.") does not answer that question, and it does not carry their burden. Plaintiffs argue only that the Google Analytics data is "relevant" and that exporting it is easy. Mem. at 6. However, the question the Court posed was not relevance: it was whether Plaintiffs may compel Defendants and non-parties to build reports that do not exist.

These requests arise from Plaintiffs' core theory that Unlock Health's HRA forms used Google tracking technologies to disclose patient information to Google. To develop that theory, Plaintiffs served identical, three-request subpoenas on a group of Unlock Health's non-party hospital clients, with no temporal limitation. *See* October 1, 2026 Hearing Transcript ("Tr.") at

32:14-19. The first two requests seek configuration information; the third—the subject of Plaintiffs' Memorandum—demands the analytics data itself, to be extracted through one of two routes. Under Exhibit 1, the recipient must determine whether its account is connected to BigQuery and, if so, run Plaintiffs' prewritten SQL query after substituting its own domain, Cloud project, and dataset values. Mem. at 4-5; Declaration of Zubair Shafiq in Support of Plaintiffs' Memorandum of Law Regarding Google Analytics Data Requests ("Shafiq Decl.") at ¶¶ 13, 15-16. Under Exhibit 2, the recipient must build a Google Analytics 4 "Explore" report by selecting Plaintiffs' specified parameters and entering a prewritten "expression" into a text field. Mem. at 4, 6; Shafiq Decl. at ¶¶ 18-19. Examining those very instructions at the October 1, 2026 hearing, the Court found "a little bit of custom coding in here" and that "this [was] not an off-the-shelf query." Tr. at 33:19-23.

That observation frames the dispute. The Court stayed all discovery pending a Rule 26(f) plan and limited that plan "to merits-based discovery of the putative class representatives," then directed the briefing now before the Court. ECF No. 59 ¶¶ 2, 5. On the question actually posed, the governing law runs against Plaintiffs at every turn. The Federal Rules do not require a party—much less a non-party—to create documents that do not exist; binding Sixth Circuit authority protects these non-party clients from this precise burden; and the data is not within Unlock Health's possession or control in any event. Defendants also do not concede the premise underlying these requests—that the analytics data is Plaintiffs' or the class's PHI. As explained in Defendants' concurrent response regarding the production of HIPAA-protected information, the data at issue is behavioral analytics, not protected health information. The requests should be denied.

## II. ARGUMENT

### A. Plaintiffs May Not Compel Defendants Or Third Parties To Build And Run Custom Queries And Generate Reports That Do Not Exist.

Rule 34 "imposes no duty to create documents just to respond to discovery requests," and Rule 45 does not "contemplate that a non-party will be forced to create documents that do not exist." *Shapira v. Rare Character Whiskey Co.*, LLC, No. 3:23-CV-00602-RGJ, 2025 WL 4055407 at *5 (W.D. Ky. Oct. 14, 2025); *McGlone v. Centrus Energy Corp.*, No. 2:19-CV-2196, 2020 WL 4462305 at *3 (S.D. Ohio Aug. 4, 2020). This Court has applied that principle directly: Rule 34 "only requires a party to produce documents that are already in existence," and parties "are not required to create new documents simply to produce them in discovery." *Gipson Mech. Contractors, Inc. v. >U.a. Loc. 572 of the United Assoc*, No. 3:18-CV-00768, 2020 WL 8254820 at *4 (M.D. Tenn. Apr. 10, 2020). A request forcing a responding entity to assemble a new compilation that does not already exist—such as a "list" of information extracted and arranged to the requester's specification—is improper for the same reason. *Harris v. Advance Am. Cash Advance Centers*, Inc., 288 F.R.D. 170, 172 (S.D. Ohio 2012); *accord In re Porsche Cars North America, Inc.*, No. 2:11-md-2233, 2012 WL 4361430 at *9 ("Defendants [] need not create documents in order to respond to a request for production."). The reports Plaintiffs demand do not exist. By Plaintiffs' own description, each recipient must take Plaintiffs' prewritten SQL, substitute account-specific values, run the query, and download the output—or construct a GA4 "Explore" report to Plaintiffs' parameters and enter a prewritten expression into a text field. Shafiq Decl. at ¶ 16; Mem. at 4, 6. The Court itself recognized that this is "custom coding," and "not an off-the-shelf query." Tr. at 33:19-23.

### 1. **Plaintiffs' Cases Are Only Persuasive, And Each Cuts Against Them On Its Own Facts.**

Plaintiffs stake their position on just three decisions—*McGlone*, *Shapira*, and *MultiPlan*. Mem. at 8-9. None binds this Court, and none ordered what the Plaintiffs demand here: that non-parties build reports that do not yet exist.

*McGlone* is Plaintiffs' lead authority, and it was a defense win. Although the court accepted that querying an existing database is not always "creation" of a new document, it quashed the non-party subpoena under Rule 26(b)(2)(C)(i) because the requesting party could obtain the same data itself and had simply chosen not to; thus the subpoena was "premature" and "unnecessary." *McGlone v. Centrus Energy Corp.*, No. 2:19-CV-2196, 2020 WL 4462305 at *5 (S.D. Ohio Aug. 4, 2020). *MultiPlan* and *Shapira* are weaker still for Plaintiffs because both involved a party querying its *own* database, not a non-party. *N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, 325 F.R.D. 36, 51–52 (E.D.N.Y. 2018); *Shapira v. Rare Character Whiskey Co., LLC*, No. 3:23-CV-00602-RGJ, 2025 WL 4055407 at *5 (W.D. Ky. Oct. 14, 2025). Even then, both decisions enforced proportionality. *MultiPlan* held that relevant database data is still "not proportional" and "not discoverable" where the query sweeps in information beyond the parties and subject matter of the dispute, and directed a cost estimate for possible cost-shifting. *MultiPlan*, 325 F.R.D. at 49, 52-53. *Shapira* permitted a report only because the request described the records "with reasonable particularity" and was "not …a blanket request for the entirety of" the database—distinguishing cases that rejected wholesale database demands as "excessive." *Shapira*, 2025 WL 4055407 at *4. Plaintiffs' subpoenas are the opposite: identical, open-ended, untethered to any class period, and aimed at exporting entire tracking datasets from non-parties' accounts—datasets the Court recognized "would include PHI" of non-parties. Tr. at 35:23-35.

### 2. The Shafiq Declaration Does Not Change The Analysis.

Dr. Shafiq opines, in the abstract, that "any entity" can export Google Analytics in "less than ten minutes." Shafiq Decl. at ¶ 22; Mem. at 8. However, he reviewed only the Complaint and the Ochsner subpoena; he has no knowledge of any recipient's actual Google Analytics configuration. Shafiq Decl. at ¶ 10. That matters, because each of Unlock Health's clients "independently configures and controls its own HRA environment," choosing whether and how to deploy analytics or tracking tools, so that "tracking behavior depends on that client's own configuration rather than a uniform Unlock Health deployment." Declaration of Alan Harker in Support of Defendants' Responses to Plaintiffs' Memoranda of Law Regarding Production of HIPAA-Protected Information and Google Analytics Data Requests ("Harker Decl."), attached hereto as Exhibit A, at ¶¶ 8, 13. Dr. Shafiq cannot opine on burden for accounts he has never seen. Moreover, his own description confirms the requests call for construction, not mere export: the recipient must supply account-specific values and enter a prewritten expression into the query. Shafiq Decl. at ¶¶ 16, 19. That is precisely the "custom coding" the Court has already identified. Tr. at 33:19-23.

### B. Binding Sixth Circuit Authority Independently Bars The Non-Party Subpoenas.

Even if the requested reports were treated as existing data, the subpoenas target non-parties, and binding authority protects them. The Sixth Circuit requires the serving party to "take reasonable steps to avoid imposing undue burden or expense" on a non-party, directs that a court "must enforce this duty and impose an appropriate sanction," and holds that in weighing the burden "the status of that person as a non-party is a factor." *In re: Mod. Plastics Corp.*, 890 F.3d 244, 250-251 (6th Cir. 2018). A broad, avoidable non-party subpoena imposes an undue burden, and the Sixth Circuit affirmed sanctions where the serving party failed to take reasonable steps to avoid it.

*Id.* When a non-party is nonetheless ordered to comply, the court "must protect a non-party from significant expense resulting from compliance." *Id.* at 250-252 (affirming awards of $104,700.00 and $61,417.50 in compliance costs against the serving party).

Those protections apply with full force here. Before conscripting a non-party, a requesting party "must first establish that it cannot obtain the discoverable information from its party-opponent." *In re CareSource Mgmt. Grp. Co.*, 289 F.R.D. 251, 254 (S.D. Ohio 2013) ("*CareSource*"). Plaintiffs have not even attempted that party discovery before turning to the non-parties. And courts guard non-parties against precisely this kind of compelled compilation. *Id.* at 253 (finding roughly 1,000 hours of employee time to prepare response materials is an undue burden). Consistent with that, a recipient's non-party status is "a factor that weighs against disclosure." *Id.*; *Trinity, Inc. v. A Quality Staffing*, No. 22-CV-10319, 2023 WL 9059648 at *2 (E.D. Mich. Dec. 6, 2023). Courts in this District and Circuit regularly apply these principles to quash or deny overbroad non-party discovery. *See Billiards & Brews, LLC v. City of Knoxville*, No. 3:23-CV-181-CLC-DCP, 2026 WL 1330951, at *4-5 (E.D. Tenn. May 13, 2026) (quashing non-party subpoenas as unduly burdensome under the *In re Modern Plastics* factors); *St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co.*, No. 3:18-CV-00988, 2024 WL 1342567, at *6 (M.D. Tenn. Mar. 28, 2024) (denying motion to compel where "the burden of production far outweighs any probative value").

Because Plaintiffs can attempt to develop their theory through party discovery and their own data—rather than by enlisting non-parties to build reports—the subpoenas impose exactly the kind of avoidable, non-party burden Rule 45 forbids, and the Court should decline to enforce them.

### C. Plaintiffs Do Not Need The Client-Held Datasets To Prove Their Theory.

Separately, Plaintiffs' third request fails Rule 26 because the client-held datasets it demands are unnecessary and disproportionate. Plaintiffs' stated objective is to obtain evidence of what data was tracked and where it was sent. Mem. at 7. However, Plaintiffs do not need the full analytics datasets—much less an event-by-event identification of which trackers fired—to make that showing. Which tracking tools a client deployed on a given HRA, and the periods during which they were active, are the subject of the first two subpoena requests and of Plaintiffs' own investigation. Plaintiffs concede that public Wayback Machine snapshots already reveal the "Google Analytics values that indicate tracking technology was active during the class period." Mem. at 6-7. From that configuration and timeframe information in conjunction with the named Plaintiffs' own HRA submissions, Plaintiffs can extrapolate when, and to whom, any transmission occurred. By contrast, the third request's demand that non-parties export every event-level record and all "captured URL values collected from HRA pages" adds cost, delay, and the wholesale disclosure of non-parties' private information, while contributing little that Plaintiffs cannot already derive from these less intrusive sources. ECF No. 50-2 (Req. 3). The third request is both cumulative of less burdensome sources and disproportionate to the needs of the case, and should be denied on either ground. Fed. R. Civ. P. 26(b)(1), (b)(2)(C)(i).

These requests also rest on a premise Defendants do not concede: that the analytics data is Plaintiffs' or the class's PHI. HIPAA protects only "protected health information"—the subset of "individually identifiable health information" that both relates to an individual's health and identifies, or could reasonably identify, that individual. 45 C.F.R. § 160.103. The data these subpoenas target is neither. On Unlock Health's platform, "the only data transmitted to clients is a fixed set of event fields—such as 'full-disclaimer-view,' 'start-page-viewed,' 'back-button-

clicked,' and 'contact-page-viewed,'" and "[n]o custom code and no personally identifiable information about any individual is collected or transmitted." Harker Decl. ¶ 12. That is analytical behavioral activity—how a user navigated a page—not a diagnosis, condition, treatment, or payment, and courts have recognized that such website-navigation metadata is "inherently de-identified" and therefore not individually identifiable health information. *Am. Hosp. Ass'n v. Becerra*, 738 F. Supp. 3d 780, 803-04 (N.D. Tex. 2024). Plaintiffs' insistence on labeling this material "PHI" conflates protected health information with the de-identified behavioral analytics data actually at issue, and is one more reason the sweeping third request is disproportionate to any legitimate need.

### D. The Data Is Not Within Unlock Health's Possession, Custody, Or Control, And The Asserted Risk of Deletion Does Not Justify Compelled Production.

To the extent Plaintiffs seek this data from Defendants, Unlock Health cannot produce what it does not possess or control. Unlock Health "does not receive" its clients' tracking data or "retransmit it to third parties," and "[n]o individual HRA results or patient information are directly accessible to Unlock Health"—the data is "encrypted when transmitted, then stored in an encrypted database," and Unlock Health "does not access it as a matter of routine and cannot do so without explicit authorization from the client." Harker Decl. at ¶¶ 10, 11. And because Unlock Health holds only a business-associate relationship with each client covered entity, compelling it to reach into client accounts would conflict with the confidentiality and compliance obligations attendant to that limited role. Tr. at 45:12-16. Rule 34 and Rule 45 reach only what a responding entity actually controls; they cannot compel Unlock Health to produce data residing in, and controlled through, its clients' separate accounts. *Gipson,* 2020 WL 8254820 at *4.

Finally, Plaintiffs' urgency argument does not support ordering production now. Plaintiffs invoke Google's retention periods to argue the data will be "automatically deleted." Mem. at 9.

But the same data "is being created every day" the HRAs are used, undercutting the claim that evidence is being irretrievably lost. Tr. at 45:25-46:05. Thus, preservation does not require production. The subpoenas already served remain in place for preservation purposes under the Court's stay, and the Court has directed the Parties to pursue data-preservation agreements with the subpoenaed third parties. ECF No. 59 at ¶ 8. Those mechanisms protect against the loss Plaintiffs describe without compelling the premature, disproportionate production of custom-built reports from non-parties. *Trinity,* 2023 WL 9059648 at *3-4. Preservation, not production, is the answer Plaintiffs' own urgency argument calls for.

## III. CONCLUSION

For the foregoing reasons, and those set forth in the Response, Defendants respectfully request the Court decline to permit the Google Analytics data requests as framed in Plaintiffs' subpoenas. If any such discovery is to proceed, it should be limited to the three named Plaintiffs' own data and should not require Defendants or any non-party to construct custom queries or reports, with any preservation concerns addressed through the existing stayed subpoenas and the preservation agreements the Court has already directed.

Respectfully Submitted,

Dated: Knoxville, Tennessee
October 29, 2026

**WOOD, SMITH, HENNING & BERMAN, LLP**

By: */s/ Christopher J. Seusing*
Christopher J. Seusing, Esq. (Admitted Pro Hac Vice)
William J. Roe, Esq.
Alesandra Greco, Esq. (*pro hac vice* forthcoming)
800 S. Gay Street, Ste. 700
Knoxville, TN 37929
Tel.: 865-267-8050
Fax.: 865-267-8051
wroe@wshblaw.com
cseusing@wshblaw.com

*Counsel for Defendants Unlock Health, Inc. Medicom Digital, Inc. d/b/a Medicom Health Interactive And Medicom Health*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 29, 2026, a copy of DEFENDANTS' RESPONSE TO PLAINTIFFS' MEMORANDUM OF LAW REGARDING GOOGLE ANALYTICS DATA REQUESTS was filed through the Court's CM/ECF system, which will send notification to all counsel of record registered to receive electronic service.

/s/ *Christopher J. Seusing*
Christopher J. Seusing, Esq.