**UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF TENNESSEE (NASHVILLE)**

| | |
|---|---|
| JOHN DOE, et al., individually and on behalf of all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>UNLOCK HEALTH, INC. MEDICOM DIGITAL, INC. d/b/a MEDICOM HEALTH INTERACTIVE and MEDICOM HEALTH,<br><br>*Defendants.* | Case No. 3:26-cv-00289<br><br>Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Lynda M. Hill |

**JOINT DISCOVERY DISPUTE STATEMENT**
**RE: DEFENDANTS' RENEWED MOTION FOR ENTRY OF A PROTECTIVE ORDER**

Pursuant to Local Rule 37.01 and the Court's Third Case Management Order (ECF No. 73 or (the "Third CMO")), Plaintiffs John Doe, Jane Doe, and Jack Doe ("Plaintiffs") and Defendants Unlock Health, Inc., Medicom Digital, Inc. d/b/a Medicom Health Interactive, and Medicom Health (collectively, "Defendants" or "Unlock Health," and together with Plaintiffs, the "Parties") submit this Joint Discovery Dispute Statement to accompany Defendants' Renewed Motion for Entry of a Protective Order. Defendants' original Motion for Protective Order (ECF No. 32) was denied without prejudice, and the Third CMO permitted a renewed motion by November 19, 2026, with Plaintiffs' response due December 10, 2026, and any reply due December 17, 2026. Third CMO at ¶¶ 3-4.

The dispute presented is whether "entry of a protective order relating to the issuance and scope of third-party subpoenas to Defendants customers is appropriate." *Id.* at ¶ 4. The subpoenas at issue, served on Unlock Health's current and former non-party healthcare clients, contain three requests: (1) documents identifying Google Analytics accounts, properties, and data streams

connected to any Evalia Health, Medicom, or Unlock Health HRA; (2) documents showing their configuration; and (3) "all data collected" by those accounts. [See ECF No. 50-2 (exemplar subpoena) – confirm whether to attach as an exhibit per L.R. 37.01(b)(2).] Enforcement remains stayed pending the Court's ruling. *Id.* at ¶¶ 1, 5.

**CERTIFICATION:**

Pursuant to Local Rule 37.01(b) and Section J.3 of the Initial Case Management Order (ECF No. 42), the undersigned certify that lead counsel for all parties have met and conferred in good faith to resolve the dispute presented, but have been unable to do so.

**DEFENDANTS' POSITION:**

Defendants respectfully request that the Court enter a protective order under Rule 26(c) barring service and enforcement of Plaintiffs' subpoenas to Unlock Health's non-party clients to prevent disclosure of confidential business information and undue burden on non-parties.

**A. The Procedural Posture Supports Protection.**

Defendants' Motion to Dismiss (ECF No. 23), which raises a threshold Article III standing challenge, remains undecided. Plaintiffs nonetheless served subpoenas of roughly 190 pages each on Unlock Health's clients. The Court has since limited discovery to the putative class representatives and barred new or revised subpoenas to the non-parties. ECF No. 59 ¶¶ 2-6. At the October 1, 2026 hearing, the Court found "this [was] not an off-the-shelf query," observed that this case is not "like a data breach case," and questioned whether it is "necessary that you actually extract" "all of" the information Plaintiffs demand. Oct. 1, 2026 Hr'g Tr. 33:19-23; 36:2-3; 64:10-16.

### B. Good Cause Exists Because the Subpoenas Would Cause Specific, Serious Harm.

Good cause requires "specific facts showing clearly defined and serious injury resulting from the discovery sought." *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001). Rule 26(c) permits a party to seek protection against non-party subpoenas. *Diamond Resorts Int'l, Inc. v. Phillips*, No. 3:17-CV-01124, 2018 WL 4328257, at *2 (M.D. Tenn. July 16, 2018). Courts in Tennessee have entered protective orders where disclosure of customer identities would reveal sensitive commercial information and cause competitive injury. *See Westgate Resorts, Ltd. v. Wesley Fin. Grp., LLC*, No. 3:20-cv-00599 (M.D. Tenn.); *Diamond, Resorts U.S. Collection Dev., LLC v. Wesley Fin. Grp., LLC*, No. 3:20-CV-251-DCLC-DCP, 2021 WL 8443797, at *3 (E.D. Tenn. July 20, 2021).

Compliance would expose client identities and client-specific implementations that competitors use to poach clients and undercut pricing. Maul Decl. ¶¶ 4-5. This harm is not hypothetical. After this action was filed, a multi-facility client whose facilities account for at least ten of the subpoenaed non-parties paused its HRAs, and Unlock Health has forgiven $114,000 contractually owed fees to preserve that relationship, causing it financial harm. Second Harker Decl. ¶¶ 6-11. Enforcement would likely prompt other clients to do the same, and no later remedy can restore relationships lost. *Id.* Second Maul Decl. ¶¶ 11,13.

The Agreed Protective Order (ECF No. 72) limits dissemination; it does not undo the client-relationship harm that service and compelled compliance inflict.

### C. The Subpoenas Seek Non-PHI Data and Premature Absent-Class-Member Discovery.

As set out in ECF No. 68, the data Unlock Health transmits is not protected health information. HIPAA protects only information that both relates to an individual's health and could reasonably identify that individual. 45 C.F.R. § 160.103; *Am. Hosp. Ass'n v. Becerra*, 738 F. Supp.

3d 780, 801 (N.D. Tex. 2024). The data at issue, a fixed set of navigation events such as "start-page-viewed," satisfies neither prong. Harker Decl., ECF No. 69-1 at ¶ 12. Even if PHI were implicated, 45 C.F.R. § 164.512(e) permits but does not compel disclosure. *Wade v. Vabnick-Wener*, 922 F. Supp. 2d 679, 691 (W.D. Tenn. 2010). Non-party medical information "should not be ordered produced except upon a compelling showing of relevance." *Miller v. Fed. Express Corp.*, 186 F.R.D. 376, 384-85 (W.D. Tenn. 1999). No class certification motion is pending, and discovery is limited to the putative class representatives. ECF No. 59 ¶¶ 3, 5. Precertification discovery of absent class members requires a particularized showing Plaintiffs have not made. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-53 (1978).

**D. Non-Parties Cannot be Compelled to Create Custom Reports.**

As set out in ECF No. 69, the reports Plaintiffs demand do not exist; each recipient would have to run Plaintiffs' SQL query or build a custom Google Analytics 4 report to Plaintiffs' specifications. Rule 45 does not require a non-party to create documents that do not exist. *Shapira v. Rare Character Whiskey Co.*, No. 3:23-CV-00602-RGJ, 2025 WL 4055407, at *5 (W.D. Ky. Oct. 14, 2025); *Gipson Mech. Contractors, Inc. v. U.A. Loc. 572*, No. 3:18-CV-00768, 2020 WL 8254820, at *4 (M.D. Tenn. Apr. 10, 2020). Non-party status weighs in the burden analysis, and the Sixth Circuit has affirmed sanctions where a serving party failed to take reasonable steps to avoid undue burden. *In re Mod. Plastics Corp.*, 890 F.3d 244, 250-52 (6th Cir. 2018).

**E. Proposed Resolution.**

Defendants request that the Court bar service and enforcement of the subpoenas. Plaintiffs should first pursue party discovery of the named Plaintiffs' own HRA sessions; any later non-party discovery should proceed only with anonymization of client names, redaction of client-identifying information, an Attorneys' Eyes Only designation under the Agreed Protective Order (ECF No. 72), and targeted sampling across a defined time frame. *See Moore v. Westgate Resorts,* No. 3:18-

CV-410-DCLC-HBG, 2020 WL 113352, at *6 (E.D. Tenn. Jan. 9, 2020) (limiting production to named plaintiffs' records because records for "over 73,000 accounts" were "not proportional prior to a motion for class certification").

**PLAINTIFFS' POSITION:**

In this privacy case, Plaintiffs allege Defendants secretly deployed tracking technology in their flagship software product, Health Risk Assessments ("HRAs"), which illegally shared patients' Protected Health Information and Personally Identifiable Information with companies such as Google and TikTok, all without Plaintiffs' consent. ECF 1 ¶¶ 1–20. Plaintiffs contend the surreptitious collection and disclosure of their personal, private information without their consent violates multiple statutes and Defendants' duty to maintain their privacy. *See id.* ¶¶ 19, 359–517.

To substantiate their claims,[1] Plaintiffs issued narrow subpoenas, comprised of only three document requests, to healthcare entities believed to have relevant information regarding the tracking technologies embedded by Defendants. *See* ECF 50-2. The subpoenas seek three things: (1) documents identifying the tracking technologies, (2) documents showing how the tracking technologies were configured, and (3) the data collected by the tracking technologies. *Id.* Defendants' refrain that the subpoenas are "190 pages" is a misleading red herring. Aside from the federal form subpoena and the three aforementioned document requests, the subpoena packets include instructions and definitions (5 pages), instructional guides on how to compile the requested data (31 pages), and a copy of Plaintiffs' complaint in this action (148 pages). The subpoenas are neither overly broad nor unduly burdensome merely because they contain supporting documents.

[1] As numerous courts have found in similar contests, Plaintiffs have Article III standing for injuries to intangible privacy interests. *See* ECF 43 at 5–7. Defendants' motion to dismiss is unlikely to succeed on that basis.

Issuing the subpoenas – and doing so early – was necessary because Plaintiffs have preservation concerns, and neither party possesses the requested documentation. The subpoenas are not premature.[2] The data sought by the subpoenas is subject to automatic deletion after a period of time, *see* ECF 62 at 9–10, and Plaintiffs would have no recourse in this action for spoliation by a non-party. Defendants even concede they do not have the data. *See* ECF 68 at 5 ("The data Plaintiffs seek resides with the non-party clients, not Unlock Health."). Moreover, the information sought in the subpoenas goes to the heart of this lawsuit. Identifying the tracking technologies and their configurations (requests 1 and 2) is integral to Plaintiffs' claims, namely that Defendants surreptitiously installed trackers to collect and disclose Plaintiffs' private information in a software product they distributed across the country to numerous healthcare providers. Collecting the data itself (request 3) will enable Plaintiffs to carry their burden at class certification of showing their claims and injuries are typical and common across the proposed class. *See* Fed. R. Civ. P. 23(a). Thus, the information sought is highly relevant and well within the scope of discovery prescribed by Fed. R. Civ. P. 26(b)(1) – it is relatively inexpensive to produce, inaccessible to the parties, and integral to resolving issues at the heart of a case with a significant amount in controversy.

Defendants have not established good cause by showing a "'clearly defined and serious injury' resulting from the discovery sought." *Cabinets To Go, LLC v. Qingdao Haiyan Real Est. Grp. Co.*, No. 3:21-CV-00711, 2023 WL 3933343, at *1 (M.D. Tenn. Mar. 1, 2023) (quoting *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir 2001)). Defendants' "competitive injury" concerns, ECF 50-1 at 6, can be alleviated with confidentiality designations through the Parties' agreed protective order, not broadly preventing the gathering of facts altogether. And complying with the subpoenas

[2] Plaintiffs did not issue the subpoenas until the Parties had conducted a Rule 26(f) conference.

does not require publicly revealing Defendant's entire client list, as they would have the Court believe.[3] What's more, Defendants' commercial-injury position belies their own arguments for dismissal. Defendants emphatically maintain throughout their motion to dismiss, including in their standing argument, that they did not install any tracking technology in the HRAs, and that any tracking technology present therein was installed by their clients, who provide the HRAs directly to patients. *See* ECF 23 at 3–5, 6, 10, 14, 15–16, 17, 21, 22. In its prior discovery dispute statement, Defendants claim the information sought by the subpoenas – the identity and configuration of the tracking technologies, and the data they transmitted – would reveal Defendants' own "client-specific implementation and tagging strategies," ECF 50-1 at 6. Defendants cannot have it both ways. If the tracking technology in the HRAs was implemented only by Defendants' clients, as argued in their motion to dismiss, the information sought by the subpoenas could not divulge Defendants' *own* implementation and tagging strategies, as proffered in their discovery statement.

Nor do privacy concerns for the information of unnamed putative class members supply Defendants with the requisite good cause for a protective order. Defendants concede HIPAA provides no bar to the discovery of such information by Plaintiffs under a qualified protective order. *See* ECF 68 at 1. Instead HIPAA expressly contemplates the discovery of such data.

Plaintiffs' efforts to gather the facts necessary to prosecute their claims should not be stymied. Plaintiffs are willing to narrow the temporal scope of the subpoenas, as they represented while meeting and conferring. Plaintiffs are further willing to treat the information produced as confidential and take steps to ameliorate Defendants' competitive harm concerns. But Defendants have not proffered any remedy that would preserve the data absent the subpoenas. Plaintiffs should

[3] As the Court noted when it required Plaintiffs to submit a list identifying the subpoena recipients under seal, not even the Court knew who Defendants' clients were. The list remains under seal. ECF 64.

be allowed to pursue discovery of probative evidence that may be lost with each passing day. During Phase 1 of discovery, Plaintiffs should be allowed to pursue subpoenas to obtain information from healthcare providers with a connection to the named Plaintiffs. During future phases of Discovery, Plaintiffs should be able to pursue discovery of the same information for the putative class.

Respectfully submitted, this 19th day of November, 2026.

/s/ J. Gerard Stranch
J. Gerard Stranch
Grayson Wells
John C. Roberts
**STRANCH, JENNINGS, & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Telephone: (615) 254-8801
Facsimile: (615) 255-5419
gstranch@stranchlaw.com
gwells@stranchlaw.com
jroberts@stranchlaw.com

Foster C. Johnson (admitted *pro hac vice*)
Joseph Ahmad*
Mark Holden*
Hannah Price*
**AHMAD, ZAVITSANOS, & MENSING, PLLC**
1221 McKinney, Suite 2500
Houston, Texas 77010
Telephone: (713) 655-1101
Facsimile: (713) 655-0062
fjohnson@azalaw.com
ahmad@azalaw.com
mholden@azalaw.com
hprice@azalaw.com

Lynn A. Toops (admitted *pro hac vice*)
Lisa M. LaFornara (admitted *pro hac vice*)
**COHEN MALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 636-6481
ltoops@cohenandmalad.com
llafornara@cohenmalad.com

*Counsel for Plaintiffs*

/s/ William Roe
William Roe
**WOOD SMITH HENNING & BERMAN LLP**
800 S Gay St., Suite 700
Knoxville, TN 37929
Telephone: (865)-267-8050
wroe@wshblaw.com

/s/ Christopher J. Seusing
Christopher J. Seusing (Admitted Pro Hac Vice)
Drew T. Moore (Admitted Pro Hac Vice)
Alesandra R. Greco (Admitted Pro Hac Vice)
**WOOD SMITH HENNING & BERMAN LLP**
33 Riverside Avenue, Suite 502
Westport, CT 06880
Telephone: (475) 245-9880
cseusing@wshblaw.com
dmoore@wshblaw.com
agreco@wshblaw.com

*Counsel for Defendants*

* *Pro hac vice* forthcoming