Docusign Envelope ID: 149406C8-9D4C-8B74-81CA-9EF8C4C0CC7F

**UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE (NASHVILLE)**

| | |
|---|---|
| JOHN DOE, et al., individually and on behalf of all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>UNLOCK HEALTH, INC. MEDICOM DIGITAL, INC. d/b/a MEDICOM HEALTH INTERACTIVE and MEDICOM HEALTH,<br><br>*Defendants.* | Case No. 3:26-cv-00289<br><br>Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Lynda M. Hill |

**DECLARATION OF ALAN HARKER IN SUPPORT OF DEFENDANTS' RENEWED MOTION FOR ENTRY OF A PROTECTIVE ORDER**

I, Alan Harker, declare as follows:

## I. Background and Basis of Knowledge

1. I am over 18 years of age and am authorized to make this Declaration on behalf of Defendants Unlock Health, Inc., Medicom Digital, Inc. d/b/a Medicom Health Interactive, and Medicom Health (collectively, "Defendants" or "Unlock Health"). I have personal knowledge of the facts stated in this Declaration and, if called as a witness, I could and would testify competently to them.

2. I am currently employed by Unlock Health, and my current titles are Chief Financial Officer and Chief Compliance Officer. I have held these positions for three months. My responsibilities include day-to-day oversight of Unlock Health's compliance program.

3. I am familiar with Unlock Health's Master Services Agreements ("MSAs") and Statements of Work ("SOWs") with its healthcare clients, including the client relationship described in Part II below.

4. The facts in this Declaration are based on my personal knowledge, or my review of Unlock Health's business records maintained in the ordinary course of its business, including client contracts, account records, and invoicing records.

5. I submit this Declaration in support of Defendants' Renewed Motion for Entry of a Protective Order. It supplements my prior Declaration (ECF Nos. 68-1 and 69-1) and is limited to a single subject: the harm Unlock Health has already suffered in its relationship with one of the subpoenaed clients, referred to below as "Client A."

## II. Concrete Harm Already Suffered: Client A's Relationship with Unlock Health

6. One of Unlock Health's clients is a multi-facility health system referred to here as "Client A." Client A is among Unlock Health's significant client relationships and its facilities account for at least ten of the twenty-one non-party clients that Plaintiffs subpoenaed.

7. Client A asked Unlock Health to pause its HRAs. At Client A's request, Unlock Health paused those HRAs on March 27, 2026. They have remained paused, or "dark," since that date.

8. Client A's subscriptions have remained available for its use throughout the pause, and Unlock Health has remained ready to restore the HRAs whenever Client A chooses. The pause was not the result of any problem with the performance of Unlock Health's platform. To my knowledge, the only intervening event was this litigation.

9. At the time of the pause, Client A indicated that it might seek a refund for the current HRA service subscription term depending on how long they remained out of service. Unlock Health's agreements with Client A provide that the services are non-cancellable and non-refundable during the subscription term. Unlock Health therefore had no contractual obligation to issue any refund.

10. Unlock Health nonetheless concluded that preserving Client A's relationship required a concession. Because of this litigation, and specifically to maintain good relations with a client whose facilities have been drawn into it, Unlock Health has agreed to forgive the $114,000 Client A owes Unlock Health under its agreements in exchange for resolving the refund request.

11. Client A's pause, refund request, and the resulting concession have caused Unlock Health financial harm. For approximately eight months, Unlock Health has received no use-based value from Client A's HRA service subscription, and it is now foregoing contractually owed fees that it otherwise would have collected.

12. This harm arose before Plaintiffs' subpoenas have even been enforced. The Court has stayed enforcement, and Client A has not yet been required to produce anything. If merely being named in connection with this litigation led a ten-facility client to take its HRAs offline for nearly eight months and to demand a refund that its contract did not require, compelled compliance with roughly 190-page subpoenas requiring each facility to run queries and produce analytics data would materially deepen that harm.

13. Public identification of the subpoenaed clients would compound the harm that is already unfolding. Unlock Health keeps the identities of its clients and the terms of its client agreements confidential. For that reason, this Declaration refers to the client by a neutral designation, and Unlock Health will provide its identity and the supporting records to the Court under seal or for in camera review if the Court would find that helpful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 19th day of November, 2026, in New York.

Signed by:
B60F996A725345E...
_______________________________
Alan Harker